#37398                                                        File No.:  4448

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| JOHN GILBODY, RAPHAEL ZILCH, ERIK HOHLER, ROMMY HENLEY, SEAN BERNHARDT, KIM MITCHELL, EDWARD STOROZUK, JOHN DARBY, HENRY ZUMBRUN, DAN GOSSETT and BRIAN SHERMAN, et al.<br>**Plaintiffs,**<br><br>v.<br><br>JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation,<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **2015 M1 110181**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### THIRD AMENDED COMPLAINT

**NOW COME** the Plaintiffs,  JOHN GILBODY, RAPHAEL ZILCH, ERIK HOHLER, ROMMY HENLEY, SEAN BARHNARDT, KIM MITCHELL, EDWARD STOROZUK, JOHN DARBY, HENRY SUMBRUN, DAN GOSSETT, BRIAN SHERMAN, JOE NEWHART, CHRISTOPHER WRIGHT, MICHAEL ENGEL, GAVIN WONG, ALIAN MUELLER, RICHARD STUHLSATZ, STEPHAN MULLER, MARK WILLIAMS, JR., RONALD BARBAGALLO, TREVOR GRAW and JUSTIN KELLY by and through thier attorneys, ZANE D. SMITH & ASSOCIATES, LTD., and complaining of the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation, states as follows:

### COUNT I

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, John Gilbody entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine and a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "1"*).

5.      That Plaintiff, John Gilbody paid Defendants a total of $20,245.00.

6.      That despite receiving payments from Plaintiff, John Gilbody, in the amount of $20,245.00Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, John Gilbody was damaged.

WHEREFORE, Plaintiff, JOHN GILBODY, respectfully requests this Court enter judgment in favor of Plaintiff , JOHN GILBODYand against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Twenty Thousand Two Hundred Forty Five and no/100 ($20,245.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

### COUNT II

1 – 7    Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count I as the allegations in Paragraphs 1 through 7 of Count II as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, John Gilbody is entitled to  the return of the $20,245.00 deposit.

9.      Defendants took the $20,245.00 deposit and have converted same to their own use.

10.     That Plaintiff, John Gilbody has  demanded the return of the $20,245.00deposit

11.     That despite Plaintiff, John Gilbody's demand for the immediate return of the $30,000.00 deposit, Defendants refuse to return the money to Plaintiff, John Gilbody

12.     Defendants refusal to return the $20,245.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, JOHN GILBODY, respectfully requests this Court enter judgment in favor of Plaintiff, JOHN GILBODY and against Defendants, JOHN A. POPADIUK,

indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

<b>COUNT III</b>

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count II as the allegations in Paragraphs 1 through 12 of Count III as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $20,245.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, JOHN GILBODY, respectfully requests this Court enter judgment in favor of Plaintiff, JOHN GILBODY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

<b>COUNT IV</b>

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Raphael Zilch entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland and a Alice in Wonderland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "2"*).

5.      That Plaintiff, Raphael Zilch paid Defendants a total of $6,895.00.

6.      That despite receiving payments from Plaintiff, Raphael Zilch, in the amount of $6,895.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Raphael Zilch was damaged.

WHEREFORE, Plaintiff, RAPHAEL ZILCH, respectfully requests this Court enter judgment in favor of Plaintiff , RAPHAEL ZILCH and against the Defendants, JOHN A.

3

POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Six Thousand Eight Hundred Ninety Five and no/100 ($6,895.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT V

1 – 7    Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count IV as the allegations in Paragraphs 1 through 7 of Count V as though fully set forth herein.

8.    That because of Defendants' failure to perform under the Agreement, Plaintiff, Raphael Zilch is entitled to the return of the $6,895.00 deposit.

9.    Defendants took the $6,895.00 deposit and have converted same to their own use.

10.    That Plaintiff, Raphael Zilch has demanded the return of the $6,895.00 deposit

11.    That despite Plaintiff, Raphael Zilch's demand for the immediate return of the $6,895.00 deposit, Defendants refuse to return the money to Plaintiff, Raphael Zilch,

12.    Defendants refusal to return the $6,895.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, RAPHAEL ZILCH, respectfully requests this Court enter judgment in favor of Plaintiff, RAPHAEL ZILCH and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT VI

1 – 12    Plaintiff restates the allegations contained in Paragraphs I through 13 of Count V as the allegations in Paragraphs 1 through 12 of Count VI as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $6,895.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Raphael Zilch.

WHEREFORE, Plaintiff, RAPHAEL ZILCH, respectfully requests this Court enter judgment in favor of Plaintiff, RAPHAEL ZILCH and against Defendants, JOHN A.

POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT VII

1. That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2. That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3. That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4. That Plaintiff, Erik Hohler entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine (*Plaintiff is attempting to locate all supporting documents he may have in his possession*).

5. That Plaintiff, Erik Hohler paid Defendants a total of $4,200.00    That    despite receiving payments from Plaintiff, Erik Hohler, in the amount of $4,200.00 Defendants have failed to perform under the Agreement.

7. That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Erik Hohler was damaged.

WHEREFORE, Plaintiff, ERIK HOHLER, respectfully requests this Court enter judgment in favor of Plaintiff , ERIK HOHLER and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Four Thousand Two Hundred and no/100 ($4,200.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT VIII

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count VII as the allegations in Paragraphs 1 through 7 of Count VII as though fully set forth herein.

8. That because of Defendants' failure to perform under the Agreement, Plaintiff, Erik Hohler is entitled to the return of the $4,200.00 deposit.

9. Defendants took the $4,200.00 deposit and have converted same to their own use.

10.    That Plaintiff, Erik Hohler has  demanded the return of the $4,200.00 deposit

11.    That despite Plaintiff, Erik Hohler's demand for the immediate return of the $6,895.00 deposit, Defendants refuse to return the money to Plaintiff, Erik Hohler,

12.    Defendants refusal to return the $4,200.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, ERIK HOHLER, respectfully requests this Court enter judgment in favor of Plaintiff, ERIK HOHLER and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

### COUNT IX

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count VII as the allegations in Paragraphs 1 through 12 of Count IX as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $4,200.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Erik Hohler.

WHEREFORE, Plaintiff, ERIK HOHLER, respectfully requests this Court enter judgment in favor of Plaintiff, ERIK HOHLER and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

### COUNT X

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, Rommy Henley entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Hecks Zombie Advertureland custom pinball machine

*(Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "3").*

5.     That Plaintiff, Rommy Henley paid Defendants a total of $6,500.00.

6.     That despite receiving payments from Plaintiff, Rommy Henley, in the amount of $6,500.00 Defendants have failed to perform under the Agreement.

7.     That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Rommy Henley was damaged.

WHEREFORE, Plaintiff, ROMMY HENLEY, respectfully requests this Court enter judgment in favor of Plaintiff , ROMMY HENLEY and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Six Thousand Five Hundred  and no/100 ($6,500.00) Dollars plus attorney's  fees and costs and such other relief that this Court deems just.

## COUNT XI

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count X as the allegations in Paragraphs 1 through 7 of Count XI as though fully set forth herein.

8.     That because of Defendants' failure to perform under the Agreement, Plaintiff, Rommy Henley is entitled to  the return of the $6,500.00 deposit.

9.     Defendants took the $6,500.00 deposit and have converted same to their own use.

10.     That Plaintiff, Rommy Henley has  demanded the return of the $6,500.00 deposit

11.     That despite Plaintiff, Rommy Henley's demand for the immediate return of the $6,500.00 deposit, Defendants refuse to return the money to Plaintiff, Rommy Henley,

12.     Defendants refusal to return  the $6,500.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, ROMMY HENLEY, respectfully requests this Court enter judgment in favor of Plaintiff, ROMMY HENLEY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XII

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XI as the allegations in Paragraphs 1 through 12 of Count XII as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $6,500.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Rommy Henley.

WHEREFORE, Plaintiff, ROMMY HENLEY, respectfully requests this Court enter judgment in favor of Plaintiff, ROMMY HENLEY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

## COUNT XIII

1.     That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.     That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.     That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.     That Plaintiff, Sean Bernhardt entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Hecks Zombie Adventureland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "4"*).

5.     That Plaintiff, Sean Bernhardt paid Defendants a total of $4,750.00.

6.     That despite receiving payments from Plaintiff, Sean Bernhardt, in the amount of $4,750.00 Defendants have failed to perform under the Agreement.

7.     That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Sean Bernhardt was damaged.

WHEREFORE, Plaintiff, SEAN BERNHARDT, respectfully requests this Court enter judgment in favor of Plaintiff , SEAN BERNHARDT and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of   Four

Thousand Seven Hundred  Fifty and no/100 ($4,750.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

## COUNT XIV

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XIII as the allegations in Paragraphs 1 through 7 of Count XIV as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Sean Bernhardt is entitled to  the return of the $4,750.00 deposit.

9.      Defendants took the $4,750.00 deposit and have converted same to their own use.

10.      That Plaintiff, Sean Bernhardt has  demanded the return of the $4,750.00 deposit

11.      That despite Plaintiff, Sean Bernhardt's demand for the immediate return of the $4,750.00 deposit, Defendants refuse to return the money to Plaintiff, Sean Bernhardt,

12.      Defendants refusal to return the $4,750.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, SEAN BERNHARDT, respectfully requests this Court enter judgment in favor of Plaintiff, SEAN BERNHARDT and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

## COUNT XV

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XIV as the allegations in Paragraphs 1 through 12 of Count XV as though fully set forth herein.

13.      That as a direct result of Defendants refusal to return the $4,750.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Sean Bernhardt.

WHEREFORE, Plaintiff, SEAN BERNHARDT, respectfully requests this Court enter judgment in favor of Plaintiff, SEAN BERNHARDT and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

## COUNT XVI

1.     That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.     That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.     That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.     That Plaintiff, Kim Mitchell entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Magic Girl custom pinball machine and Ben Hecks Zombie Adventureland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "5"*).

5.     That Plaintiff, Kim Mitchell paid Defendants a total of $22,745.00.

6.     That despite receiving payments from Plaintiff, Kim Mitchell, in the amount of $22,745.00 Defendants have failed to perform under the Agreement.

7.     That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Kim Mitchell was damaged.

WHEREFORE, Plaintiff, KIM MITCHELL, respectfully requests this Court enter judgment in favor of Plaintiff , KIM MITCHELL and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Twenty Two Thousand Seven Hundred Forty Five and no/100 ($22,745.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT XVII

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XVI as the allegations in Paragraphs 1 through 7 of Count XVII as though fully set forth herein.

8.     That because of Defendants' failure to perform under the Agreement, Plaintiff, Kim Mitchell is entitled to  the return of the $22,745.00 deposit.

9.     Defendants took the $22,745.00 deposit and have converted same to their own use.

10.     That Plaintiff, Kim Mitchell has demanded the return of the $22,745.00 deposit

11.     That despite Plaintiff, Kim Mitchell's demand for the immediate return of the $22,745.00 deposit, Defendants refuse to return the money to Plaintiff, Kim Mitchell,

12.     Defendants refusal to return the $22,745.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, KIM MITCHELL, respectfully requests this Court enter judgment in favor of Plaintiff, KIM MITCHELL and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XVIII

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XVII as the allegations in Paragraphs 1 through 12 of Count XVIII as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $22,745.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Kim Mitchell.

WHEREFORE, Plaintiff, KIM MITCHELL, respectfully requests this Court enter judgment in favor of Plaintiff, KIM MITCHELL and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XIX

1.     That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.     That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.     That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.     That Plaintiff, Edward Storozuk entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Hecks Zombie Adventureland custom pinball

machine (*Plaintiff is member of the US Military and has been stationed overseas and is currently attempting to locate any documents which support his claims that may have been placed in storage during his deployment*).

5.      That Plaintiff, Edward Storozuk paid Defendants a total of $6,500.00.

6.      That despite receiving payments from Plaintiff, Edward Storozuk, in the amount of $6,500.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Edward Storozuk was damaged.

WHEREFORE, Plaintiff, EDWARD STOROZUK, respectfully requests this Court enter judgment in favor of Plaintiff , EDWARD STOROZUK and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Six Thousand Five Hundred and no/100 ($6,500.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT XX

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XIX as the allegations in Paragraphs 1 through 7 of Count XX as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Edward Storozuk is entitled to the return of the $6,500.00 deposit.

9.      Defendants took the $6,500.00 deposit and have converted same to their own use.

10.     That Plaintiff, Edward Storozuk has demanded the return of the $6,500.00 deposit 11.     That despite Plaintiff, Edward Storozuk's demand for the immediate return of the $6,500.00 deposit, Defendants refuse to return the money to Plaintiff, Edward Storozuk,

12.     Defendants refusal to return the $6,500.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, EDWARD STOROZUK, respectfully requests this Court enter judgment in favor of Plaintiff, EDWARD STOROZUK and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a

ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

**COUNT XXI**

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XX as the allegations in Paragraphs 1 through 12 of Count XXI as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $6,500.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Edward Storozuk.

WHEREFORE, Plaintiff, EDWARD STOROZUK, respectfully requests this Court enter judgment in favor of Plaintiff, EDWARD STOROZUK and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

**COUNT XXII**

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, John Darby entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Hecks Zombie Adventureland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "6"*)..

5.    That Plaintiff, John Darby paid Defendants a total of $6,500.00.

6.    That despite receiving payments from Plaintiff, John Darby, in the amount of $6,500.00 Defendants have failed to perform under the Agreement.

7.    That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, John Darby was damaged.

WHEREFORE, Plaintiff, JOHN DARBY, respectfully requests this Court enter judgment in favor of Plaintiff , JOHN DARBY and against the Defendants, JOHN A. POPADIUK, indv.

and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Six Thousand Five Hundred and no/100 ($6,500.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT XXIII

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XXII as the allegations in Paragraphs 1 through 7 of Count XXIII as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, John Darby is entitled to the return of the $6,500.00 deposit.

9.      Defendants took the $6,500.00 deposit and have converted same to their own use.

10.     That Plaintiff, John Darby has demanded the return of the $6,500.00 deposit

11.     That despite Plaintiff, John Darby's demand for the immediate return of the $6,500.00 deposit, Defendants refuse to return the money to Plaintiff, John Darby,

12.     Defendants refusal to return the $6,500.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, JOHN DARBY, respectfully requests this Court enter judgment in favor of Plaintiff, JOHN DARBY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXIV

1 – 12   Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXIII as the allegations in Paragraphs 1 through 12 of Count XXIV as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $6,500.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, John Darby.

WHEREFORE, Plaintiff, JOHN DARBY, respectfully requests this Court enter judgment in favor of Plaintiff, JOHN DARBY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and

ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXV

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Henry Zumbrun entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Hecks Zombie Adventureland custom pinball machine (*Plaintiff is attempting to locate documents that support his claims. All payments made by Plaintiff were made through Cointaker*).

5.      That Plaintiff, Henry Zumbrun paid Defendants a total of $6,500.00.

6.      That despite receiving payments from Plaintiff, Henry Zumbrun, in the amount of $6,500.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Henry Zumbrun was damaged.

WHEREFORE, Plaintiff, HENRY ZUMBRUN, respectfully requests this Court enter judgment in favor of Plaintiff , HENRY ZUMBRUN and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Six Thousand Five Hundred and no/100 ($6,500.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

## COUNT XXVI

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XXV as the allegations in Paragraphs 1 through 7 of Count XXVI as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Henry Zumbrun is entitled to  the return of the $6,500.00 deposit.

9.      Defendants took the $6,500.00 deposit and have converted same to their own use.

10.    That Plaintiff, Henry Zumbrun has demanded the return of the $6,500.00 deposit

11.    That despite Plaintiff, Henry Zumbrun's demand for the immediate return of the $6,500.00 deposit, Defendants refuse to return the money to Plaintiff, Henry Zumbrun,

12.    Defendants refusal to return the $6,500.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, HENRY ZUMBRUN, respectfully requests this Court enter judgment in favor of Plaintiff, HENRY ZUMBRUN and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXVII

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXVI as the allegations in Paragraphs 1 through 12 of Count XXVII as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $6,500.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Henry Zumbrun.

WHEREFORE, Plaintiff, HENRY ZUMBRUN, respectfully requests this Court enter judgment in favor of Plaintiff, HENRY ZUMBRUN and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXVIII

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.       That Plaintiff, Dan Gossett entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "7"*)..

5.       That Plaintiff, Dan Gossett paid Defendants a total of $6,500.00.

6.       That despite receiving payments from Plaintiff, Dan Gossett, in the amount of $6,500.00 Defendants have failed to perform under the Agreement.

7.       That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Dan Gossett was damaged.

WHEREFORE, Plaintiff, DAN GOSSETT, respectfully requests this Court enter judgment in favor of Plaintiff , DAN GOSSETT and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Six Thousand Five Hundred and no/100 ($6,500.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

## COUNT XXIX

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XXVIII as the allegations in Paragraphs 1 through 7 of Count XXIX as though fully set forth herein.

8.       That because of Defendants' failure to perform under the Agreement, Plaintiff, Dan Gossett is entitled to  the return of the $6,500.00 deposit.

9.       Defendants took the $6,500.00 deposit and have converted same to their own use.

10.      That Plaintiff, Dan Gossett has  demanded the return of the $6,500.00 deposit

11.      That despite Plaintiff, Dan Gossett's demand for the immediate return of the $6,500.00 deposit, Defendants refuse to return the money to Plaintiff, Dan Gossett,

12.      Defendants refusal to return the $6,500.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, DAN GOSSETT, respectfully requests this Court enter judgment in favor of Plaintiff, DAN GOSSETT and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC.,

and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXX

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXIX as the allegations in Paragraphs 1 through 12 of Count XXX as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $6,500.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Dan Gossett.

WHEREFORE, Plaintiff, DAN GOSSETT, respectfully requests this Court enter judgment in favor of Plaintiff, DAN GOSSETT and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXXI

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, Brian Sherman entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "8"*)..

5.    That Plaintiff, Brian Sherman paid Defendants a total of $4,250.00.

6.    That despite receiving payments from Plaintiff, Brian Sherman, in the amount of $4,250.00 Defendants have failed to perform under the Agreement.

7.    That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Brian Sherman was damaged.

18

WHEREFORE, Plaintiff, BRIAN SHERMAN, respectfully requests this Court enter judgment in favor of Plaintiff , BRIAN SHERMAN and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Four Thousand Two Hundred Fifty and no/100 ($4,250.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

<h3 style="text-align:center">COUNT XXXII</h3>

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XXXI as the allegations in Paragraphs 1 through 7 of Count XXXII as though fully set forth herein.

8.   That because of Defendants' failure to perform under the Agreement, Plaintiff, Brian Sherman is entitled to the return of the $4,250.00 deposit.

9.   Defendants took the $4,250.00 deposit and have converted same to their own use.

10.   That Plaintiff, Brian Sherman has demanded the return of the $4,250.00 deposit

11.   That despite Plaintiff, Brian Sherman's demand for the immediate return of the $4,250.00 deposit, Defendants refuse to return the money to Plaintiff, Brian Sherman,

12.   Defendants refusal to return the $4,250.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, BRIAN SHERMAN, respectfully requests this Court enter judgment in favor of Plaintiff, BRIAN SHERMAN and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

<h3 style="text-align:center">COUNT XXXIII</h3>

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXXII as the allegations in Paragraphs 1 through 12 of Count XXXIII as though fully set forth herein.

13.   That as a direct result of Defendants refusal to return the $4,250.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff, Brian Sherman.

WHEREFORE, Plaintiff, BRIAN SHERMAN, respectfully requests this Court enter judgment in favor of Plaintiff, BRIAN SHERMAN and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT LXVII

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, Joe Newhart entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventure and custom pinball machine and a Alice in Wonderland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "9"*)..

5.    That Plaintiff, Joe Newhart paid Defendants a total of $9,145.00.

6.    That despite receiving payments from Plaintiff, JOE NEWHART, in the amount of $9,145.00 Defendants have failed to perform under the Agreement.

7.    That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Joe Newhart was damaged.

WHEREFORE, Plaintiff, JOE NEWHART, respectfully requests this Court enter judgment in favor of Plaintiff , JOE NEWHART and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Nine Thousand One Hundred Forty Five and no/100 ($9,145.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT XXXV

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count LXVII as the allegations in Paragraphs 1 through 7 of Count XXXV as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Joe Newhart is entitled to the return of the $9,145.00 deposit.

9.      Defendants took the $9,145.00 deposit and have converted same to their own use.

10.     That Plaintiff, Joe Newhart has demanded the return of the $9,145.00 deposit

11.     That despite Plaintiff, JOE NEWHART's demand for the immediate return of the $9,145.00 deposit, Defendants refuse to return the money to Plaintiff, JOE NEWHART

12.     Defendants refusal to return the $9,145.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, JOE NEWHART, respectfully requests this Court enter judgment in favor of Plaintiff, JOE NEWHART and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

### COUNT XXXVI

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count XXXV as the allegations in Paragraphs 1 through 12 of Count XXXVI as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $9,145.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, JOE NEWHART, respectfully requests this Court enter judgment in favor of Plaintiff, JOE NEWHART and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

### COUNT XXXVII

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Christopher Wright entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventure and custom pinball machine and a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "10"*)..

5.      That Plaintiff, Christopher Wright paid Defendants a total of $21,245.00.

6.      That despite receiving payments from Plaintiff, CHRISTOPHER WRIGHT , in the amount of $21,245.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Christopher Wright was damaged.

WHEREFORE, Plaintiff, CHRISTOPHER WRIGHT , respectfully requests this Court enter judgment in favor of Plaintiff , CHRISTOPHER WRIGHT  and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Twenty One Thousand Two Hundred Forty Five and no/100 ($21,245.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT XXXVIII

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XXXVII as the allegations in Paragraphs 1 through 7 of Count XXXVIII as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Christopher Wright is entitled to  the return of the $21,245.00deposit.

9.      Defendants took the $21,245.00deposit and have converted same to their own use.

10.     That Plaintiff, Christopher Wright    has    demanded   the return  of  the $21,245.00deposit    11.     That despite Plaintiff, CHRISTOPHER WRIGHT 's demand for the immediate return of the $21,245.00 deposit, Defendants refuse to return the money to Plaintiff, CHRISTOPHER WRIGHT

12.     Defendants refusal to return the $21,245.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, CHRISTOPHER WRIGHT , respectfully requests this Court enter judgment in favor of Plaintiff, CHRISTOPHER WRIGHT  and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a

ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XXXIX

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count XXXVIII as the allegations in Paragraphs 1 through 12 of Count XXXIX as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $21,245.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, CHRISTOPHER WRIGHT , respectfully requests this Court enter judgment in favor of Plaintiff, CHRISTOPHER WRIGHT and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XL

1.     That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.     That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.     That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.     That Plaintiff, Michael Engel  entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventure custom pinball machine and a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "11"*)..

5.     That Plaintiff, Michael Engel  paid Defendants a total of $19,250.00.

6.     That despite receiving payments from Plaintiff, MICHAEL ENGEL  , in the amount of $19,250.00 Defendants have failed to perform under the Agreement.

7.     That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Michael Engel  was damaged.

WHEREFORE, Plaintiff, MICHAEL ENGEL  , respectfully requests this Court enter judgment in favor of Plaintiff , MICHAEL ENGEL  and against the Defendants, JOHN A.

POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in the amount of Nineteen Thousand Two Hundred Fifty and no/100 ($19,250.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

<b>COUNT XLI</b>

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XL as the allegations in Paragraphs 1 through 7 of Count XLI as though fully set forth herein.

8.     That because of Defendants' failure to perform under the Agreement, Plaintiff, Michael Engel is entitled to the return of the $19,250.00deposit.

9.     Defendants took the $19,250.00deposit and have converted same to their own use.

10.    That Plaintiff, Michael Engel has demanded the return of the $19,250.00deposit

11.    That despite Plaintiff, MICHAEL ENGEL's demand for the immediate return of the $19,250.00 deposit, Defendants refuse to return the money to Plaintiff, MICHAEL ENGEL

12.    Defendants refusal to return the $19,250.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, MICHAEL ENGEL, respectfully requests this Court enter judgment in favor of Plaintiff, MICHAEL ENGEL and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

<b>COUNT XLII</b>

1 – 12   Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count XLI as the allegations in Paragraphs 1 through 12 of Count XLII as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $19,250.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, MICHAEL ENGEL , respectfully requests this Court enter judgment in favor of Plaintiff, MICHAEL ENGEL and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XLIII

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Gavin Wong   entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Space Mission X custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "12"*)..

5.      That Plaintiff, Gavin Wong   paid Defendants a total of $2750.00.

6.      That despite receiving payments from Plaintiff, GAVIN WONG   , in the amount of $2750.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Gavin Wong   was damaged.

WHEREFORE, Plaintiff, GAVIN WONG   , respectfully requests this Court enter judgment in favor of Plaintiff , GAVIN WONG   and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and   ZIDWARE, INC., an Illinois Corporation in the amount of   Two Thousand Seven Hundred Fifty and no/100 ($2750.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

## COUNT XLIV

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XLIII as the allegations in Paragraphs 1 through 7 of Count XLIV as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Gavin Wong   is entitled to  the return of the $2750.00deposit.

9.      Defendants took the $2750.00deposit and have converted same to their own use.

10.     That Plaintiff, Gavin Wong    has  demanded the return of the $2750.00 deposit

11.     That despite Plaintiff, GAVIN WONG    's demand for the immediate return of the $2750.00 deposit, Defendants refuse to return the money to Plaintiff, GAVIN WONG

12.     Defendants refusal to return the $2750.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, GAVIN WONG    , respectfully requests this Court enter judgment in favor of Plaintiff, GAVIN WONG    and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XLV

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count XLIV as the allegations in Paragraphs 1 through 12 of Count XLV as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $2750.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, GAVIN WONG    , respectfully requests this Court enter judgment in favor of Plaintiff, GAVIN WONG    and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XLVI

1.     That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.     That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.     That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.     That Plaintiff, Alain Mueller entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventure custom pinball machine (*Copies*

*of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "13").*

5.    That Plaintiff, Alain Mueller  paid Defendants a total of $10,000.00.

6.    That despite receiving payments from Plaintiff, ALAIN MUELLER , in the amount of $10,000.00 Defendants have failed to perform under the Agreement.

7.    That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Alain Mueller    was damaged.

WHEREFORE, Plaintiff, ALAIN MUELLER , respectfully requests this Court enter judgment in favor of Plaintiff , ALAIN MUELLER  and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Ten Thousand and no/100 ($10,000.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

## COUNT XLVII

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XLVI as the allegations in Paragraphs 1 through 7 of Count XLVII as though fully set forth herein.

8.    That because of Defendants' failure to perform under the Agreement, Plaintiff, Alain Mueller    is entitled to  the return of the $10,000.00deposit.

9.    Defendants took the $10,000.00deposit and have converted same to their own use.

10.    That Plaintiff, Alain Mueller   has  demanded the return of the $10,000.00deposit

11.    That despite Plaintiff, ALAIN MUELLER 's demand for the immediate return of the $10,000.00 deposit, Defendants refuse to return the money to Plaintiff, ALAIN MUELLER

12.    Defendants refusal to return the $10,000.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, ALAIN MUELLER, respectfully requests this Court enter judgment in favor of Plaintiff, ALAIN MUELLER and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

## COUNT XLVIII

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count XLVII as the allegations in Paragraphs 1 through 12 of Count XLVIII as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $10,000.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, ALAIN MUELLER , respectfully requests this Court enter judgment in favor of Plaintiff, ALAIN MUELLER  and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT XLIX

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, Richard Stuhlsatz entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "14"*).

5.    That Plaintiff, Richard Stuhlsatz    paid Defendants a total of $15,995.00.

6.    That despite receiving payments from Plaintiff, RICHARD STUHLSATZ , in the amount of $15,995.00 Defendants have failed to perform under the Agreement.

7.    That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Richard Stuhlsatz    was damaged.

WHEREFORE, Plaintiff, RICHARD STUHLSATZ , respectfully requests this Court enter judgment in favor of Plaintiff , RICHARD STUHLSATZ  and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Fifteen

Thousand Nine Hundred Ninety Five and no/100 ($15,995.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT L

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count XLIX as the allegations in Paragraphs 1 through 7 of Count L as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Richard Stuhlsatz   is entitled to  the return of the $15,995.00deposit.

9.      Defendants took the $15,995.00deposit and have converted same to their own use.

10.     That   Plaintiff,  Richard  Stuhlsatz      has     demanded  the  return  of  the $15,995.00deposit     11.     That despite Plaintiff, RICHARD STUHLSATZ 's demand for the immediate return of the $15,995.00 deposit, Defendants refuse to return the money to Plaintiff, RICHARD STUHLSATZ

12.     Defendants refusal to return the $15,995.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, RICHARD STUHLSATZ, respectfully requests this Court enter judgment in favor of Plaintiff, RICHARD STUHLSATZ and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT LI

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count L as the allegations in Paragraphs 1 through 12 of Count LI as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $15,995.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff. WHEREFORE, Plaintiff, RICHARD STUHLSATZ , respectfully requests this Court enter judgment in favor of Plaintiff, RICHARD STUHLSATZ  and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

### COUNT LII

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Stephan Muller entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "15"*).

5.      That Plaintiff, Stephan Muller    paid Defendants a total of $9,995.00.

6.      That despite receiving payments from Plaintiff, STEPHAN MULLER , in the amount of $9,995.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Stephan Muller    was damaged.

WHEREFORE, Plaintiff, STEPHAN MULLER , respectfully requests this Court enter judgment in favor of Plaintiff , STEPHAN MULLER  and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Nine Thousand Nine Hundred Ninety Five and no/100 ($9,995.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

### COUNT LIII

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count LII as the allegations in Paragraphs 1 through 7 of Count LIII as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Stephan Muller   is entitled to  the return of the $9,995.00deposit.

9.      Defendants took the $9,995.00deposit and have converted same to their own use.

10.     That Plaintiff, Stephan Muller   has demanded the return of the $9,995.00deposit

11.     That despite Plaintiff, STEPHAN MULLER 's demand for the immediate return

of the $9,995.00 deposit, Defendants refuse to return the money to Plaintiff, STEPHAN MULLER

## COUNT LV

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Mark Williams, Jr. entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "16"*).

5.      That Plaintiff, Mark Williams, Jr.    paid Defendants a total of $15,000.00.

6.      That despite receiving payments from Plaintiff, MARK WILLIAMS, JR. , in the amount of $15,000.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Mark Williams, Jr.    was damaged.

WHEREFORE, Plaintiff, MARK WILLIAMS, JR. , respectfully requests this Court enter judgment in favor of Plaintiff , MARK WILLIAMS, JR. and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Fifteen Thousand and no/100 ($15,000.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.


## COUNT LVI

1 − 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count LV as the allegations in Paragraphs 1 through 7 of Count LVI as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Mark Williams, Jr.  is entitled to  the return of the $15,000.00deposit.

9.      Defendants took the $15,000.00deposit and have converted same to their own use.

10.    That Plaintiff, Mark Williams, Jr.    has    demanded the return of the $15,000.00deposit    11.    That despite Plaintiff, MARK WILLIAMS, JR. 's demand for the immediate return of the $15,000.00 deposit, Defendants refuse to return the money to Plaintiff, MARK WILLIAMS, JR.

12.    Defendants refusal to return the $15,000.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, MARK WILLIAMS, JR., respectfully requests this Court enter judgment in favor of Plaintiff, MARK WILLIAMS, JR. and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT LVII

1 – 12 Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count LVI as the allegations in Paragraphs 1 through 12 of Count LVII as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $15,000.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, MARK WILLIAMS, JR. , respectfully requests this Court enter judgment in favor of Plaintiff, MARK WILLIAMS, JR. and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT LVIII

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, Ronald Barbagallo entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball

machine and a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "17"*).

5.      That Plaintiff, Ronald Barbagallo paid Defendants a total of $17,250.00.

6.      That despite receiving payments from Plaintiff, Ronald Barbagallo, in the amount of $17,250.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Ronald Barbagallo was damaged.

WHEREFORE, Plaintiff, RONALD BARBAGALLO, respectfully requests this Court enter judgment in favor of Plaintiff , RONALD BARBAGALLO   and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and   ZIDWARE, INC., an Illinois Corporation in the amount of Seventeen Thousand Two Hundred Fifty  and no/100 ($17,250.00) Dollars plus attorney's  fees and costs and such other  relief that this Court deems just.

## COUNT LIX

1 – 7   Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count LVIII as the allegations in Paragraphs 1 through 7 of Count LIX as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Ronald Barbagallo is entitled to  the return of the $17,250.00 deposit.

9.      Defendants took the $17,250.00 deposit and have converted same to their own use.

10.      That Plaintiff, Ronald Barbagallo has  demanded the return of the $17,250.00 deposit

11.      That despite Plaintiff, Ronald Barbagallo's demand for the immediate return of the $17,250.00 deposit, Defendants refuse to return the money to Plaintiff, Ronald Barbagallo.

12.      Defendants refusal to return the $17,250.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, RONALD BARBAGALLO, respectfully requests this Court enter judgment in favor of Plaintiff, RONALD BARBAGALLO and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other  relief that this Court deems just.

## COUNT LX

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count LIX as the allegations in Paragraphs 1 through 12 of Count LX as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $17,250.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, RONALD BARBAGALLO, respectfully requests this Court enter judgment in favor of Plaintiff, RONALD BARBAGALLO and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT LXI

1.    That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.    That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.    That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.    That Plaintiff, Trevor Graw entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine and a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "18"*).

5.    That Plaintiff, Trevor Graw paid Defendants a total of $6,500.00.

6.    That despite receiving payments from Plaintiff, Trevor Graw, in the amount of $6,500.00 Defendants have failed to perform under the Agreement.

7.    That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Trevor Graw was damaged.

WHEREFORE, Plaintiff, TREVOR GRAW, respectfully requests this Court enter judgment in favor of Plaintiff , TREVOR GRAW   and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and   ZIDWARE, INC., an Illinois Corporation in the amount of   Six

Thousand Five Hundred and no/100 ($6,500.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT LXII

1 – 7    Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count LXI as the allegations in Paragraphs 1 through 7 of Count LXII as though fully set forth herein.

8.    That because of Defendants' failure to perform under the Agreement, Plaintiff, Trevor Graw is entitled to the return of the $6,500.00 deposit.

9.    Defendants took the $6,500.00 deposit and have converted same to their own use.

10.    That Plaintiff, Trevor Graw has demanded the return of the $6,500.00 deposit

11.    That despite Plaintiff, Trevor Graw demand for the immediate return of the $6,500.00 deposit, Defendants refuse to return the money to Plaintiff, Trevor Graw.

12.    Defendants refusal to return the $6,500.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, TREVOR GRAW, respectfully requests this Court enter judgment in favor of Plaintiff, TREVOR GRAW and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.


## COUNT LXIII

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count LXII as the allegations in Paragraphs 1 through 12 of Count LXIII as though fully set forth herein.

13.    That as a direct result of Defendants refusal to return the $6,500.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff.

WHEREFORE, Plaintiff, TREVOR GRAW, respectfully requests this Court enter judgment in favor of Plaintiff, TREVOR GRAW and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.


## COUNT LIV

1.      That at all times material herein, Defendant, John A. Popadiuk was a resident of the County of Cook, State of Illinois.

2.      That at all times material herein, Defendant, Michelle Popadiuk was a resident of the County of Cook, State of Illinois.

3.      That at all times material herein Defendant, Zidware, Inc., was an Illinois Corporation.

4.      That Plaintiff, Justin Kelly entered into an Agreement ("AGREEMENT") with Defendants for the purchase of a Ben Heck's Zombie Adventureland custom pinball machine and a Magic Girl custom pinball machine (*Copies of all documents in Plaintiff's possession supporting Plaintiff's claim are attached hereto as Exhibit "19"*).

5.      That Plaintiff, Justin Kelly paid Defendants a total of $14,100.00.

6.      That despite receiving payments from Plaintiff, Justin Kelly, in the amount of $14,100.00 Defendants have failed to perform under the Agreement.

7.      That as a direct result of Defendants failure to perform under the Agreement, Plaintiff, Justin Kelly was damaged.

WHEREFORE, Plaintiff, JUSTIN KELLY, respectfully requests this Court enter judgment in favor of Plaintiff , JUSTIN KELLY  and against the Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and  ZIDWARE, INC., an Illinois Corporation in the amount of  Fourteen Thousand One Hundred and no/100 ($14,100.00) Dollars plus attorney's fees and costs and such other relief that this Court deems just.

## COUNT LXV

1 – 7    Plaintiff restates the allegations contained in Paragraphs 1 through 7 of Count LIV as the allegations in Paragraphs 1 through 7 of Count LXV as though fully set forth herein.

8.      That because of Defendants' failure to perform under the Agreement, Plaintiff, Justin Kelly is entitled to  the return of the $14,100.00 deposit.

9.      Defendants took the $14,100.00 deposit and have converted same to their own use.

36

10.     That Plaintiff, Justin Kelly has demanded the return of the $14,100.00 deposit

11.     That despite Plaintiff, Justin Kelly demand for the immediate return of the $14,100.00 deposit, Defendants refuse to return the money to Plaintiff, Justin Kelly

12.     Defendants refusal to return the $14,100.00 deposit is willful, wanton and malicious and justifies the awarding of punitive damages.

WHEREFORE, Plaintiff, JUSTIN KELLY, respectfully requests this Court enter judgment in favor of Plaintiff, JUSTIN KELLY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

## COUNT LXVI

1 – 12  Plaintiff restates the allegations contained in Paragraphs 1 through 12 of Count LXV as the allegations in Paragraphs 1 through 12 of Count LXVI as though fully set forth herein.

13.     That as a direct result of Defendants refusal to return the $14,100.00 deposit, Defendants have been unjustly enriched and have benefited at the direct expense of Plaintiff. WHEREFORE, Plaintiff, JUSTIN KELLY, respectfully requests this Court enter judgment in favor of Plaintiff, JUSTIN KELLY and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.


## COUNT LXVII

1 – 13      Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count III as the allegations in Paragraphs 1 through 13 of Count LXVII as though fully set forth herein.

14- 26      Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count VI as the allegations in Paragraphs 14 through 26 of Count LXVII as though fully set forth herein.

27 - 29        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count IX as the allegations in Paragraphs 27 through 29 of Count LXVII as though fully set forth herein.

30 – 42        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XII as the allegations in Paragraphs 30 through 42 of Count LXVII as though fully set forth herein.

43 – 55        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XV as the allegations in Paragraphs 43 through 55 of Count LXVII as though fully set forth herein.

56 – 68        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XVIII as the allegations in Paragraphs 56 through 68 of Count LXVII as though fully set forth herein.

69 – 81        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXI as the allegations in Paragraphs 69 through 81 of Count LXVII as though fully set forth herein.

82 – 94        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXIV as the allegations in Paragraphs 82 through 94 of Count LXVII as though fully set forth herein.

95 – 107        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXVII as the allegations in Paragraphs 95 through 107 of Count LXVII as though fully set forth herein.

108 – 120        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXX as the allegations in Paragraphs 108  through 120 of Count LXVII as though fully set forth herein.

121 – 133        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXXIII as the allegations in Paragraphs 121 through 133 of Count LXVII as though fully set forth herein.

134 – 146        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXXVI as the allegations in Paragraphs 134 through 146 of Count LXVII as though fully set forth herein.

147 – 159        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XXXIX as the allegations in Paragraphs 147 through 159 of Count LXVII as though fully set forth herein.

160 – 172        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XLII as the allegations in Paragraphs 160 through 172 of Count LXVII as though fully set forth herein.

173 – 185        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XLV as the allegations in Paragraphs 173 through 185 of Count LXVII as though fully set forth herein.

186 – 198        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count XLVIII as the allegations in Paragraphs 186 through 198 of Count LXVII as though fully set forth herein.

199 – 211        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count LI as the allegations in Paragraphs 199 through 211 of Count LXVII as though fully set forth herein.

212 – 224        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count LIV as the allegations in Paragraphs 212 through 224 of Count LXVII as though fully set forth herein.

225 – 237        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count LVII as the allegations in Paragraphs 225 through 237 of Count LXVII as though fully set forth herein.

238 - 250        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count LX as the allegations in Paragraphs 238 through 250 of Count LXVII as though fully set forth herein.

251- 263        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count LXIII as the allegations in Paragraphs 251 through 263 of Count LXVII as though fully set forth herein.

264 - 276        Plaintiff restates the allegations contained in Paragraphs 1 through 13 of Count LXVI as the allegations in Paragraphs 264 through 276 of Count LXVII as though fully set forth herein.

277.    That Defendants created a blog as a means to communicate with purchasers of the Ben Heck's Zombie Adventureland custom pinball machine such as Plaintiff.

278.    That on October 14, 2014 Defendants posted the following to the blog:

> New news here.   We were able to solidify an ongoing working arrangement with Mission Pinball and Fast Pinball guys from Seattle last week.

279    That the statement contained in the October 14, 2014 blog was false.

280.    That the statement contained in the October 14, 2014 blog was known to be false by Defendants at the time it was made.

281.    That the false statement contained in the October 14, 2014 blog was made with the intent to deceive and defraud the purchasers of the Ben Heck's Zombie Adventureland custom pinball machine including Plaintiff.

282.    That Plaintiff actually and justifiably relied on the false statement contained in the October 14, 2014 blog and was damaged as a direct and proximate result of the false statement contained in the October 14, 2014 blog in an amount according to proof.

283.    That the false statement contained in the October 14, 2014 blog was made with oppression, fraud, and malice.

284.    That on October 23, 2014 Defendants posted the following to the blog:

> We have set a date to show magic girl, on a rug, for mid december and I will work on the raza schedule and report back soon which will be after that.

285.    That the statement contained in the October 23, 2014 blog was false.

286.    That the statement contained in the October 23, 2014 was known to be false by Defendants at the time it was made.

287.    That the false statement contained in the October 23, 2014 blog was made with the intent to deceive and defraud the purchasers of the Ben Heck's Zombie Adventureland custom pinball machine including Plaintiff.

288.    That Plaintiff actually and justifiably relied on the false statement contained in the October 23, 2014 blog and was damaged as a direct and proximate result of the false statement contained in the October 23, 2014 blog in an amount according to proof.

289.     That the false statement contained in the October 23, 2014 blog was made with oppression, fraud, and malice.

290.     That on January 17, 2015 Defendants posted the following to the blog:

> Currently, still on track to show a fully built Zombie Adventureland game in February. - - John Popadiuk.

291.     That the statement contained in the January 17, 2015 blog was false.

292.     That the statement contained in the January 17, 2015 blog was known to be false by Defendants at the time it was made.

293.     That the false statement contained in the January 17, 2015 blog was made with the intent to deceive and defraud the purchasers of the Ben Heck's Zombie Adventureland custom pinball machine including Plaintiff.

294.     That Plaintiff actually and justifiably relied on the false statement contained in the January 17, 2015 blog and was damaged as a direct and proximate result of the false statement contained in the January 17, 2015 blog in an amount according to proof.

295.     That the false statement contained in the January 17, 2015 blog was made with oppression, fraud, and malice.

WHEREFORE, Plaintiffs, JOHN GILBODY, ERIK HOHLER, ROMMY HENLEY, RAPHAEL ZILCH, SEAN BERHNARDT, KIM MITCHELL, EDWARD STOROZUK, JOHN DARBY, HENRY SUMBRUN, DAN GOSSETT, BRIAN SHERMAN, JOE NEWHART, CHRISTOPHER WRIGHT, MICHAEL ENGEL, GAVIN WONG, ALAIN MUELLER, RICHARD STUHLSATZ, STEPHAN MULLER, MARK WILLIAMS, JR. RONALD BARBAGALLO, TREVOR GRAW and JUSTIN KELLY, and each of them , respectfully requests this Court enter judgment in their favor and against Defendants, JOHN A. POPADIUK, indv. and d/b/a ZIDWARE, INC., MICHELLE POPADIUK, indv. and d/b/a ZIDWARE, INC., and ZIDWARE, INC., an Illinois Corporation in an amount to be proven at trial and for such other relief that this Court deems just.

Respectfully submitted,

Zane D. Smith

ZANE D. SMITH & ASSOCIATES, LTD.
415 N. La Salle Street - Suite 501
Chicago, Illinois 60654
(312) 245-0031

## CERTIFICATE OF SERVICE

I, Patricia A. Meinke, a non-attorney, on oath state that I served the foregoing document to all attorneys of record by placing a true and correct copy of same in the U.S. Mail located at 400 N. LaSalle, Chicago, Illinois on September 22, 2015, before the hour of 5:00 P.M. with proper postage prepaid. Under the penalties of perjury, I certify that the above statements set forth herein are true and correct.

Patricia A. Meinke

## PURCHASE AGREEMENT — CONFIDENTIAL



BHZA - Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:

John Gilbody (BHZA#2)
1 Rookswood Close
HookHampshire
RG27 9EU United Kingdom



EXHIBIT
1

**Agreement**
This Purchase Agreement was prepared to describe certain features or aspects of the Ben Heck's Zombie Adventureland™ pinball machine project, and to specify certain terms and conditions relating to the purchase of the game from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

**Project Overview**
The project involves the creation of a full-sized custom pinball machine called Ben Heck's Zombie Adventureland™, including both a Limited Edition and a Special Cointaker Edition (collectively, "BHZA") made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of professional pinball designer, John A. Popadiuk, Jr., with the added creativity and hackspertise of Ben Heckendorn.

**The Pinball Team**
John A. Popadiuk, Jr. is a celebrated pinball designer, vintage pinball collector, mobile software developer and bagatelle historian with many years immersed in the world of pinball. Some of his designs include: Bally's Theatre of Magic, Marvel Heroes vs. Villains, World Cup Soccer, Star Wars: Episode I, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and team building philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and new to be explored and incorporated into the BHZA pinball game alongside fellow modding genius and pin-geek Ben Heck and other talented designers, artists and creative engineers required to create a quality custom. pinball.

**The Timeline**
Ben Heck's Zombie Adventureland™ pinball will follow a normal pinball development schedule of approximately 14 months at a minimum. You are invited to visit the design team in the studio, when appropriate, to view the progress and see the current full-size hand-made pinball mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this custom project in a reasonable amount of time as stated herein. Any compressions, delays or extensions to the planned schedule, will be communicated in a timely manner.

**Art Direction & Theme**
The Ben Heck's Zombie Adventureland™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on hip atomic 1960's retro zombie amusement park theme. The online trailer was created to capture the "verve" or general game concept.

**Pinball Game Features**
The Ben Heck's Zombie Adventureland™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen pinball designs. Some of the basic features planned to be included at this time are located here on the website:

**http://pinballinventor.org/benheck/**

Other details will be finalized as the game design process progresses, and all such details are subject to modification or change at the sole discretion of the Company.

© 2012 – Zidware, Inc. – CONFIDENTIAL

**Construction Techniques and Components**

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques, performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the BHZA pinball machine based on specifications to be determined by the Company.

**Usage and Operation**

The Ben Heck's Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The BHZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are planned at this time.

**Basic Development Cost Schedule**

The initial pre-order cost of a custom-designed limited-edition BHZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any BHZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 30, 2012, along with the second refundable deposit of $2,250.00. This will reserve your serial number and get the custom pinball development and production rolling. This deposit (along with the initial $750.00 deposit, or $3,000.00 in total) will be fully refundable within 45 days of receipt of the second deposit by the Company, if you so desire.

The remaining balance due of $6,995 (or $7,995 for the DIY option) will follow in easy-stepped payments during the development cycle. All scheduled payments (except for the second refundable deposit of $2,250.00), will be spread out over the expected development cycle and must be submitted to the Company by the Purchaser within 45 days of their indicated due dates as outlined below. Payment in full will be due on or before the shipment date of your machine.

The basic payment schedule with certain milestones, subject to modification as noted above, is as follows:

| DATE | ITEM/MILESTONE | AMOUNT |
|------|----------------|--------|
| 3/1/2012 | Pre-Order Deposit (100% refundable) | $750 |
| 5/1/2012 | Owner Packages Mailed | |
| 6/1/2012 | Installment One (100% refundable) | $2,250 |
| 11/1/2012 | Installment Two Design Phase | $1,250 |
| 12/1/2012 | Game Review & Refinement | |
| 3/1/2013 | Installment Three Engineering Phase | $2,250 |
| 5/1/2013 | Final Game Evaluation Phase | |
| 6/1/2013 | Prototype Start Estimate | $3,000 |
| 9/1/2013 | Build Node Phase | $495 |
| 10/1/2013 | Build Node Phase 2 | |
| 11/1/2013 | DIY Surcharge (or due on Delivery if earlier) | $1,000 |

**TOTAL:** $9,995.00 (or $10,995.00 for the DIY Option)

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the BHZA pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

### Production Run

The production run of the Ben Heck's Zombie Adventureland™ pinball machine will be limited to a total of 99 numbered Limited Editions and 25 numbered Special Cointaker Editions that will be offered for sale by the Company to the public. The games will be constructed in nodes of a minimum 25 games at a time.

### Non-Disclosure

An **optional** Non-Disclosure Agreement ("NDA") accompanies this Purchase Agreement. Purchasers who sign this NDA and return it along with this signed Purchase Agreement and second refundable deposit will be granted limited access to the Company's internal design process. You will be able to visit the Company's design studio, see the various stages of the project, and work with the design team as available. **Please note that Purchasers who do not sign the NDA will not be granted this "behind-the-scenes" access and will only receive general information regarding progress, along with other details as they are revealed to the general public.** The Company may, at its sole discretion, allow individual Purchasers to sign the NDA at a future date and gain this access to the development information, if they choose not sign and return the NDA along with this Purchase Agreement.

**For Purchasers who sign the NDA and submit it to the Company:** Please note that the Ben Heck's Zombie Adventureland™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion. The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party (including other Purchasers who have not signed the NDA) or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and this Purchase Agreement will be canceled (although the terms and conditions of the NDA will continue to remain in effect). The Company may, at its reasonable discretion, retain some or all of the cumulative monetary deposits made by the breaching party as of the date of the breach.

### Customization

The Ben Heck's Zombie Adventureland™ pinball machines will be manufactured as special custom-made games, and not mass-produced. You, the Purchaser, will have an opportunity in the design process to create, select and/or change certain features, decorative parts, mechanics and/or artwork to make your game unique. These options will be presented to you by the Company as the development schedule proceeds. John Popadiuk and Ben Heck also encourage you, the Purchaser, to suggest options and take part in the design process (subject to receipt of a signed NDA as described above).

### Development Collectibles

The game development process creates an extraordinary amount of collateral sketches, designs, paperwork, models, test fixtures, art, samples and playfield mechanisms. These items will be made available at the end of the project to buyers at the discretion of the Company.

© 2012 – Zidware, Inc. – CONFIDENTIAL

## Warranty

The Company will provide a One-Year Limited Warranty for the BHZA pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation, modification or setup will VOID the warranty. This warranty does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement. Requested parts will be made available for purchase after the games are delivered to respective owners at project completion.

## Liability Information

This product was designed to be delivered and installed into specific HOME LOCATIONS only! Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

## Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the BHZA pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all Purchasers' ideas, comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the BHZA pinball machine will be at the sole discretion and control of the Company.

## Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished BHZA pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at the time of cancellation will be refunded in full. No interest shall be paid on any returned deposits. These same cancellation terms shall apply if the Company terminates this Purchase Agreement with the Purchaser under any of the relevant clauses herein.

## Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

**Severability**

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

**Entire Agreement**

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

**Governing Law**

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Ben Heck's Zombie Adventureland™ pinball machine will be their sole responsibility.  Instructions on packing and crating will be forwarded when the BHZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.


Signed: (Purchaser)      _John Gilbody_

Name (print):      JOHN GILBODY

Date:      17 MAY 2012

Serial Number:      #2.



**Magic Girl™ - Custom Pinball Machine Design**



## PURCHASE AGREEMENT

Date                August 9, 2011

Prepared by:        Zidware Inc. (the Company)
                    John A. Popadiuk, Jr., President
                    722 Chestnut Court
                    Bartlett, IL 60103
                    (224) 532-0639
                    pop@zidware.com

Prepared for:       John Gilbody
                    1 Rookswood Close
                    HookHampshire
                    RG27 9EU
                    United Kingdom

### Agreement

This Purchase Agreement was prepared for the Purchaser to describe certain features and aspects of the Magic Girl™ pinball machine project, and to specify certain terms and conditions relating to the purchase of this pinball machine from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

### Project Overview

The project involves the creation of a full-sized custom pinball machine called Magic Girl™, made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of a professional pinball designer, John A. Popadiuk, Jr.

### The Pinball Designer

John A. Popadiuk, Jr. is a celebrated pinball designer, antique pinball collector, and game historian with over 30 years of experience. John has designed many pinball machines, including: Bally's Theatre of Magic, Marvel Heroes vs. Villains, World Cup Soccer, Star Wars: Episode I, Tales of the Arabian Nights, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and the new, to be explored and incorporated into this new Magic Girl™ pinball game.

### The Timeline

The Magic Girl™ pinball machine is expected to follow a "typical" pinball development schedule of about 12 months. You may also be invited to visit the designer in his workshop, at his discretion, to view the progress and see the current full-size hand-made pinball samples, mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this project in a reasonable amount of time as stated herein. Any delays or extensions to the planned schedule, which may be due to suppliers, illness, or other acts or events, will be communicated in a timely manner.

### Art Direction & Theme

The Magic Girl™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on the magic/fantasy theme that has been chosen.

### Pinball Game Features

The Magic Girl™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen effects, cabinet engineering, integrated software, digital technology, and amazing play mechanisms.

### Construction Techniques and Components

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. Major components that are fastened to the playfield shall be crafted using parts similar to those found on a 1990s pinball machine. Common "era" hardware such as fasteners, electrical parts, flipper assemblies, ball scoops, brackets, motors, ball shooter devices, etc., may be fabricated or procured from current suppliers of 1990s-style parts to complete the look and feel of the pinball machine.

### Non-Disclosure

The Magic Girl™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion.

The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to execute the NDA together with this Purchase Agreement (collectively, the "Agreements") and to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and cumulative monetary deposits made as of the date of the breach.

### Early Notice for Future Games

The Purchaser shall receive early notification on any "up and coming" new pinball machine titles that may be developed and offered for sale by the Company in the future. Purchasers may exercise their option to reserve a serial number for future releases by submitting the stated deposit within the purchasing time limits described for each new game title.

**Usage and Operation**

The Magic Girl™ pinball machine is designed for HOME USE ONLY and is not intended for commercial installation, tournaments, or public display. The Magic Girl™ pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, with no other country settings will be available at this time.

**Cost Schedule**

The initial pre-order cost of a custom-designed limited-edition MAGIC GIRL™ pinball machine (FOB Chicago IL) is $15,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional.

Upon receipt by the Company of an initial refundable deposit of $500.00, the Company will reserve your serial number for the limited run of the MAGIC GIRL™ pinball machine (for the period of time referenced in the next sentence) and send you this Purchase Agreement along with the NDA referenced above. You, the Purchaser, will be required to send back—or deliver personally—this signed Purchase Agreement and the executed NDA along with a second deposit of $7500.00 within 14 days of receiving these Agreements. This will reserve your serial number and get the custom pinball development and production rolling.

The remaining balance due of $7995.00 (USD) will follow in easy-stepped payments during the development cycle. All scheduled payments, which will be spread out over the expected development cycle, must be submitted to the Company by the Purchaser within 30 days of their indicated due dates as outlined below.

The basic payment schedule, subject to modification as noted above, is as follows:

| | | |
|---|---|---|
| 7/21/2011 | Initial Deposit | $500.00 |
| | (fully refundable within 14 days of receiving this Purchase Agreement) | |
| 8/25/2011 | Secure Deposit | $7500.00 |
| | (fully refundable within 30 days of submission to the Company) | |
| 10/25/2011 | Final design brief and master docs completed | $1000.00 |
| 12/25/2011 | Game concepts Pencil Sketches | $1000.00 |
| 2/25/2012 | Cabinet and Playfield Sketch Model | $2000.00 |
| 4/25/2012 | Game artwork development & colors | $1000.00 |
| 6/25/2012 | Working game maquette | $2000.00 |
| 8/25/2012 | Completed final part review & assembly | $995.00 |
| 10/25/2012 | Estimated completion date for game for delivery | |

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the Magic Girl™ pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

## Production Extension

The official production run of Magic Girl™ pinball machine will be limited to a total of 19 numbered units (perfect), and 2 prototype samples (imperfect), that will be offered for sale by the Company to the public. No other produced units of the Magic Girl™ pinball machine will be offered for sale to the public.

## Development Collectibles

The game development process yields extraordinary large amount of collateral paperwork, designs, maquettes, art, samples and test mechanisms. These items will be made available at the end of the project to all buyers at the discretion of the Company.

## Warranty

The Company will provide a 1-Year Limited Warranty for the Magic Girl™ pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation or setup will VOID the warranty. This warranty does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement.

## Liability Information

This product was designed to be delivered and installed into specific home locations only. Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

## Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the Magic Girl™ pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all customers' ideas,

comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the Magic Girl™ pinball machine will be at the sole discretion and control of the Company.

### Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished Magic Girl™ pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at the time of cancellation will be refunded in full.

### Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

### Severability

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

### Entire Agreement

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

**Governing Law**

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Magic Girl™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the Magic Girl™ pinball machine is completed and ready to be delivered to the Purchaser. John A. Popadiuk, Jr. may be available to personally deliver and assist in setup at the Purchaser's request and expense.

**Counterparts**

This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement. No counterpart shall be effective until each party has executed at least one counterpart.

Signed: (Purchaser)    _John Gilroy_

Name (print):    JOHN GILROY

Date:    4 SEPTEMBER 2011

Serial Number:    MG0005 —

© 2011 - Zidware, Inc. – CONFIDENTIAL



CitiPhone 0800 00 55 00
Outside the UK +44 2075 00 55 00
www.citibank.co.uk

# CURRENT ACCOUNTS

**STERLING CURRENT ACCOUNT** ▓▓▓▓▓ **GBP**
**JOHN GILBODY**
IBAN for payments from abroad: GB 09 CITI ▓▓▓▓▓

The interest rate(s) applicable to this account at the date of this statement are detailed below.  For more information, including whether the interest rate is fixed or variable, please refer to Citibank Rates & Charges Information at www.citibank.co.uk

|  | Gross % p.a. |
|---|---|
| GBP 0 - 1,999.99 | 0 % |
| GBP 2,000.00 - 19,999.99 | 0 % |
| GBP 20,000.00 - 49,999.99 | 0 % |
| GBP 50,000.00 + | 0 % |

Interest can be earned on all balances.

| Overdraft Interest Rates: | To 30 Sep 2011 / Gross % p.a. |
|---|---|
| GBP 0 - 500.00 | 0.00 |
| GBP 501.00 - 9,500.00 | 15.72 |
| Any value, unarranged overdraft | 26.40 |

## Transactions

| Date | Description | Withdrawals | Deposits | Balance |
|---|---|---|---|---|
| ░░ | ░░░░░░░░ | | ▓▓▓▓ | ▓▓▓▓ |
| | ░G BUSINESS | | | |
| 05 Sep | ░░░░░░░ | ▓▓▓ | | ▓▓▓ |
| | ░░░░░░ DEBIT TO | | | |
| 05 Sep | ░░░░░░░ | ▓▓▓ | | ▓▓▓ |
| | ░░░░░░ | | | ▓▓▓ |
| 05 Sep | ░░░░░░░ OK | ▓ | | ▓▓▓ |
| | SW░░░░░░ T01500 | | | |
| 05 Sep | FUNDS SENT. SWIFT ZIDWARE INC  US FX1.5818 USD7500  3104197047 | 4,741.29  GBP | | ▓▓▓ |
| 05 Sep | FUNDS TRANSFER FEE 3104197047 | 25.00  GBP | | ▓▓▓ |
| | | 25.00 | | |
| 06 ░░ | ░░░░░░░ | | ▓▓▓ | ▓▓▓ |
| | ░░ PERSONAL | | | |



# CURRENT ACCOUNTS

**STERLING CURRENT ACCOUNT**
**JOHN GILBODY** ... continued from previous page

Transactions



| Date | Description | Withdrawals | Deposits | Balance |
|------|-------------|-------------|----------|---------|
| 13 Apr | FUNDS SENT<br>SWIFT ZIDWARE FX1:5541 US USD 750<br>3201897046 | | 482.58 | |
| 13 Apr | FUNDS TRANSFER FEE<br>3201897046 | | 25.00 | |



RE: Magic Girl Statement

Hello,

Please find enclosed your current statement of account for your MG pinball machine. If you see any errors or omissions, please let us know right away. We have a new office assistant Mike who is handling the accounts and paperwork. Future emails should go to (accounts@zidware.com) as well as my personal email (pop@zidware.com).

**\*\*YOUR ACCOUNT IS PAST DUE \*\***

July 17, 2012

Also take note your past due status, as we have not received contact nor up to date scheduled payments from you. Contact me personally if you have any questions or want to change your order, as we will require all owner accounts brought current within 10 days of receipt of this letter.

Our current development blog is here for the project. I will be locking it down soon from public viewing and will only work once I activate your email.

**http://magicgirl.posterous.com**

Appreciate your patience and support and please call, write or visit as best fits your schedule. We are in our new design studio now and things are moving much faster as we are beginning to build the first few prototype games.

Best,


John A. Popadiuk, Jr.
VP of Product Development
Zidware, Inc
Chicago, IL USA
pinballinventor.org
224-532-0639

PINBALLINVENTOR.ORG

**Reinventing Pinball**

• from the desk of JOHN A POPADIUK JR



722 Chestnut Court • Bartlett, IL • 60103

## Payment Schedule

### Amount Due    $5000

|      |                   |        | Date  | Amt |
|------|-------------------|--------|-------|-----|
| 2011 | Initial Deposit   | $500   | 8/1   |     |
|      | Deposit           | $7500  | 9/1   |     |
|      | Installment #1    | $1000  | 10/25 |     |
|      | Installment #2    | $1000  | 12/25 |     |
| 2012 | Installment #3    | $2000  | 2/25  |     |
|      | Installment #4    | $1000  | 4/25  |     |
|      | Installment #5    | $2000  | 6/25  |     |
|      | Installment #6    | $995   | 8/25  |     |
|      | Final Installment | $0     | 10/25 |     |

Delivery – extra
Sales Tax – extra

Please remit
& Thanks!

ZIDWARE INC
722 CHESTNUT COURT
BARTLETT, IL 60103

accounts@zidware.com



| Bill To |
|---|
| John Gilbody |
| 1 Rookswood Close |
| HookHampshire |
| RG27 9EU |

| Date | Description | Amount | Balance |
|---|---|---|---|
| 07/31/11 | Balance forward | | 0.00 |
| | MAGIC GIRL | | |
| 08/01/11 | | 15,995.00 | 15,995.00 |
| 08/01/11 | PMT | -500.00 | 15,495.00 |
| 09/01/11 | PMT | -7,500.00 | 7,995.00 |
| 01/04/12 | PMT #pp | -2,000.00 | 5,995.00 |

Sales Tax and Delivery are additional

**Subject:** MG Pinball Statements
**From:** "John A. Popadiuk, Jr." <pop@zidware.com>
**Date:** 7/19/12 1:53 PM
**To:** John Gilbody <john@johngilbody.com>, John Popadiuk <john@zidware.com>

Hi John,

We found this for MG. Please confirm.

— 1/4/2012 ($2000) your last payment
— 2/25 ($2000) past due
— 4/25 ($1000) past due
— 6/25 ($2000) past due

We found this for BHZA. Please confirm
— 4/13 ($750) was your only payment
— 6/30 ($2250) past due

Please **excuse us** if we have missed a payment, Mike our
new account assistant is bringing everything up to date and it's
taking a while! Talk soon about pinball!!

John



# Purchase Order

**Buyer**

August 9, 2011
John Gilbody (#005)
1 Rookswood Close
Hook Hampshire
RG27 9EU
United Kingdom

| 1 | Custom "Magic Girl" Pinball Machine | $15,995.00 (usd) |

Basic Features Known At This Time*
- arcade full-size game
- 21" x 46" playfield size
- silk screened panels
- multi-level ball play
- realistic ball physics
- kicking rubber parts
- brilliant style backglass
- 3-5 ball game play
- pop action bumpers
- independent flippers
- touch control buttons
- led panel illumination
- rod spring plunger
- custom play features
- led dot display & more!

| Initial Deposit | $500. (usd) |
| Secure Deposit (please remit this amount today) | $7500. (usd) ✓ 5/9/11 (C/b) |
| Remaining Payments Due Per Schedule | $7995. (usd) |

✓ $2,000 sent paypal 4/1/2012

# ZIDWARE

Zidware, Inc
722 Chestnut Court
Bartlett, Illinois
60103 USA

EIN Number
26-4480632

* Due to the nature of a custom-made pinball machine, features are subject to change or alteration at the discretion of this artist / designer.

 pinball basics • design • mod_city • pinball scrapbook • glossary

Custom Pinball Machines > Made In The U.S.A.



| MORE |

ZOMBIE ADVENTURELAND PAYMENT SCHEDULE (3/20) r1

Please review the current updated payment schedule below.



PAYMENT SCHEDULE REVISED

| Orig. Date | Amount | New Date |
|---|---|---|
| 3/12 | Deposit - $780 | 3/12 |
| 6/12 | Payment #1 - $2250 | 6/12 |
| 11/12 | Payment #2 - $1250 | 11/12 |
| 3/13 | Payment #3 - $2250 | 6/13 |
| 6/13 | Payment #4 - $3000 | 9/13 |
| 9/13 | Payment #5 - $495 | 12/13 |
| 9/13 | Payment #6 - $1000 DIY | 12/13 |
| 12/13 | Payments Due Complete | 3/14 |

Please contact us with any questions. Submit your payments to:

Zidware Inc.
39 Sangra Court
Streamwood, IL 60107 USA
attn: BHZA - John Popadiuk

Please call me with any questions.
(224) 532-0639

IF YOU REQUIRE BANK TRANSFER INFO CLICK HERE

Thank you kindly!



©2013 Zidware Inc: Patents Pending

Re: Your Magic Girl™ Agreements                                           Page 1 of 1

---

From: John Popadiuk <jpopadiuk@comcast.net>
To: John Gilbody <john@johngilbody.com>
Cc: John Popadiuk <pop@zidware.com>
Date: Wednesday, August 24, 2011 05:55 pm
Subject: Re: Your Magic Girl™ Agreements

---

Hi John...

Here is the banking information. You can also use Paypal
if you wish.

Paypal (info@zidware.com)

ZIDWARE INC
CHASE BANK
BRANCH 986
STREAMWOOD IL
60107

SWIFT
CHASUS33

ACCOUNT
804408920

Also because your game is going across the pond, we will have
other items to work at for shipping and paperwork when the
games are complete.

Please let me know if you have more questions or concerns and
still would like to move ahead with your purchase.

Cheers!
John Popadiuk

On 8/22/11 8:35 AM, John Gilbody wrote:

> Hi John,
>
> I won't make any more MG posts as it may encourage mischief, as you say. I just wanted to make contact with other MG folks, spurr
>
> BR,
> John.

---

Attachments:

**From:**  John Popadiuk <jpopadiuk@comcast.net>

**To:** John Gilbody <john@johngilbody.com>, John Popadiuk <jpopadiuk@comcast.net>

**Cc:**

**Date:** Thursday, August 25, 2011 01:42 am

**Subject:**  Re: Your Magic Girl™ Agreements

HI..John

Here you go...please let me know what else you
need.

Routing Number – 071000013

John

On 8/24/11 5:40 PM, John Gilbody wrote:
> Thanks John. I definitely want to move ahead with this purchase. I also need the routing (ABA) number, othwise can
pay via paypal.
>
> MT,
> John.

**Attachments:**

History – PayPal

**PayPal**   Summary    Activity    Send and Request    Wallet    Shop                    Log Out

## History

£0.00 GBP

Recent Activity | All activity | Find a transaction

info@zidware.com        In    Email

All Currencies

03/04/2006 🗓 to  23/05/2015 🗓    Search

Print

Search results for 'info@zidware.com' in Email from 3 Apr 2006 – 23 May 2015

| Date | ▼ | Type | Name/Email | Payment status | Details | Order status/Actions | Gross | Fee | Net amount |
|------|---|------|------------|----------------|---------|---------------------|-------|-----|------------|
| 7 Feb 2013 | | Payment to | Zidware, Inc. | Completed | Details | | -$1,250.00 | $0.00 | -$1,250.00 USD |
| 7 Feb 2013 | | Payment to | Zidware, Inc. | Completed | Details | | -$995.00 | $0.00 | -$995.00 USD |
| 3 Oct 2012 | | Payment for | Zidware, Inc. | Completed | Details | | -$2,250.00 | -$88.05 | -$2,338.05 USD |
| 26 Jul 2012 | | Payment for | Zidware, Inc. | Completed | Details | | -$5,000.00 | -$195.30 | -$5,195.30 USD |
| 4 Jan 2012 | | Payment to | Zidware, Inc. | Completed | Details | | -$2,000.00 | $0.00 | -$2,000.00 USD |
| 23 Jul 2011 | | Payment to | Zidware, Inc. | Completed | Details | | -$500.00 | $0.00 | -$500.00 USD |

**The most common payment statuses**  View more status types

**Cancelled:** The sender cancelled this payment.
**Completed (referring to a bank withdrawal):** Your withdrawal request has now been sent to your bank. Usually funds will take up to 2 hours to appear in your bank account, but this may take up to 2-3 working days, depending on your bank.
**Completed (referring to a payment):** Money was successfully sent to the recipient
**Refused:** The recipient chose not to accept this payment
**Hold:** Money is being temporarily held. The sender may be disputing this payment or the payment may be under review by PayPal.

**Pending:** Your withdrawal request is awaiting release for final processing, pending review by PayPal
**Returned:** Money was returned to the sender because the payment was unclaimed for 30 days
**Unclaimed:** The recipient hasn't yet accepted this payment.

**Help    Contact    Security**                    🖵 **Feedback**

© 1999-2015 PayPal. All rights reserved.    |    Privacy

Payment Receipt - PayPal

**Zidware, Inc.**

**PayPal**

## Payment Receipt

**PayPal transaction ID**

**Total**

We'll send a confirmation email to john@johngilbody.com. This transaction will appear on your statement as PayPal *ZIDWARE INC.

**Paid to**
Zidware, Inc.
info@zidware.com
224-532-0639

**Posted to**
John Gilbody
1 Rookswood Close
Hook, Hampshire
RG27 9EU
United Kingdom

## Your shopping cart

| Description | Price | Quantity | Amount |
|---|---|---|---|
| Initial Deposit for (1) MAGIC GIRL™ Pinball | $500.00 | 1 | $500.00 |
| | | Item total | $500.00 |
| | | Total | $500.00 USD |

**From:** service@paypal.co.uk <service@paypal.co.uk>

**To:** John Gilbody <john@johngilbody.com>
**Cc:**

**Date:** Saturday, July 23, 2011 11:34 am
**Subject:** Receipt for Your Payment to Zidware, Inc.

23 Jul 2011 03:33:58 PDT | Transaction ID: ▓▓▓▓▓▓▓▓▓▓

Hello John Gilbody,

You sent a payment of $500.00 USD to Zidware, Inc. (info@zidware.com)

It may take a few moments for this transaction to appear in your account.

------------------------------------------------------------

Merchant:
Zidware, Inc.
info@zidware.com
224-532-0639

Confirmed postal address
John Gilbody
1 Rookswood Close
Hook, Hampshire
RG27 9EU
United Kingdom

Instructions to merchant:
Please could I have the lowest serial number possible?
I'm also interested in any other/customised machines you make :-)
Many thanks & best wishes,
John.

Postage details:
The seller hasn't provided any postage details yet.

------------------------------------------
Purchase Details
------------------------------------------

Description: Initial Deposit for (1) MAGIC GIRL™ Pinball
Unit price: $500.00 USD
Qty: 1
Amount: $500.00 USD


Subtotal : $500.00 USD




Total: $500.00 USD

Payment: $500.00 USD
Charge will appear on your credit card statement as 'PAYPAL *ZIDWARE INC'
Payment sent to: info@zidware.com
From amount: £314.72 GBP
To amount: $500.00 USD
Exchange rate: 1 British Pound = 1.58871 US Dollars



------------------------------------------------------------

Issues with this transaction?
You have 45 days from the date of the transaction to open a dispute in the Resolution Centre.

Questions? Go to the Help Centre at: www.paypal.com/uk/help

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in

You sent a payment

---

**From:** service@paypal.co.uk <service@paypal.co.uk>

**To:** John Gilbody <john@johngilbody.com>
**Cc:**

**Date:** Wednesday, January 04, 2012 12:51 pm

**Subject:** You sent a payment

---------------------------------------------------------------

You sent a payment

---------------------------------------------------------------

Transaction ID: ████████████████

Dear John Gilbody,


View the details of this transaction online at:

https://www.paypal.com/uk/vst/id=28353104SN60D1404

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/uk/cgi-
bin/webscr?cmd=_history. To correct any errors, please contact us through our Help Centre at
https://www.paypal.com/uk/cgi-bin/webscr?cmd=_contact_us.


---------------------------------------------------------------

Amount:$2,000.00 USD
Currency conversion:£1,319.89 GBP = $2,000.00 USD
Exchange rate:1 GBP = 1.51527USD
Sent on:4 January 2012
Payment methodCredit Card Payment
Message in your payment email:Many thanks,
John.
Yours sincerely,
PayPal

---------------------------------------------------------------

Help Centre:
https://www.paypal.com/uk/cgi-bin/helpweb?cmd=_help
Resolution Centre:
https://www.paypal.com/uk/cgi-bin/?cmd=_complaint-view
Safety Advice:
https://www.paypal.com/uk/security

Please do not reply to this email because we are not monitoring this inbox. To get in touch with us, log in to your account
and click "Contact Us" at the bottom of any page.

Copyright © 2012 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered office: 22-24 Boulevard Royal, L-2449 Luxemburg
RCS Luxemburg B 118 349

PayPal Email ID PP118

---

**Attachments:**

7/26/12                                                You sent a payment

**From:** service@paypal.co.uk <service@paypal.co.uk>

**To:** John Gilbody <john@johngilbody.com>
**Cc:**

**Date:** Thursday, July 26, 2012 01:12 pm
**Subject:** You sent a payment

---------------------------------------------------------------
You sent a payment
---------------------------------------------------------------

Transaction ID: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Dear John Gilbody,

You sent a payment for $5,000.00 USD to Zidware, Inc..
Please note that it may take a little while for this payment to appear in the Recent Activity list on your Account Overview.

View the details of this transaction online at:

https://www.paypal.com/uk/vst/id=8A274733PJ418354N

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/uk/cgi-bin/webscr?cmd=_history. To correct any errors, please contact us through our Help Centre at https://www.paypal.com/uk/cgi-bin/webscr?cmd=_contact_us.

---------------------------------------------------------------
Amount:$5,000.00 USD
Currency conversion:£3,460.72 GBP = $5,195.30 USD
Exchange rate:1 GBP = 1.50121USD
Sent on:26 July 2012
Message in your payment email:Please email me a confirmation when received ok.
Thanks,
John.
Yours sincerely,
PayPal

---------------------------------------------------------------
Help Centre:
https://www.paypal.com/uk/cgi-bin/helpweb?cmd=_help
Resolution Centre:
https://www.paypal.com/uk/cgi-bin/?cmd=_complaint-view
Safety Advice:
https://www.paypal.com/uk/security

Please do not reply to this email because we are not monitoring this inbox. To get in touch with us, log in to your account and click "Contact Us" at the bottom of any page.

Copyright © 2012 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered office: 22-24 Boulevard Royal, L-2449 Luxemburg
RCS Luxemburg B 118 349

PayPal Email ID PP118

Attachments:

10/3/12

You sent a payment

**From:** service@paypal.co.uk <service@paypal.co.uk>

**To:** John Gilbody <john@johngilbody.com>
**Cc:**

**Date:** Wednesday, October 03, 2012 11:25 am

**Subject:** You sent a payment

------------------------------------------------------------
You sent a payment
------------------------------------------------------------

Transaction ID: ████████████████

Dear John Gilbody,

You sent a payment for $2,250.00 USD to Zidware, Inc..
Please note that it may take a little while for this payment to appear in the Recent Activity list on your Account Overview.

View the details of this transaction online at:

https://www.paypal.com/uk/vst/id=2YP335713S2501B1G

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/uk/cgi-bin/webscr?cmd=_history. To correct any errors, please contact us through our Help Centre at https://www.paypal.com/uk/cgi-bin/webscr?cmd=_contact_us.

------------------------------------------------------------
Amount:$2,250.00 USD
Currency conversion:£1,497.21 GBP = $2,338.05 USD
Exchange rate:1 GBP = 1.56160USD
Sent on:3 October 2012
Yours sincerely,
PayPal

------------------------------------------------------------
Help Centre:
https://www.paypal.com/uk/cgi-bin/helpweb?cmd=_help
Resolution Centre:
https://www.paypal.com/uk/cgi-bin/?cmd=_complaint-view
Safety Advice:
https://www.paypal.com/uk/security

Please do not reply to this email because we are not monitoring this inbox. To get in touch with us, log in to your account and click "Contact Us" at the bottom of any page.

Copyright © 2012 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered office: 22-24 Boulevard Royal, L-2449 Luxemburg
RCS Luxemburg B 118 349

PayPal Email ID PP118

Attachments:

2/8/13

You sent a payment

**From:** service@paypal.co.uk <service@paypal.co.uk>

**To:** John Gilbody <john@johngilbody.com>
**Cc:**

**Date:** Thursday, February 07, 2013 09:26 pm
**Subject:** You sent a payment

--------------------------------------------------------------------
You sent a payment
--------------------------------------------------------------------

Transaction ID: ██████████████

Dear John Gilbody,

You sent a payment for $995.00 USD to Zidware, Inc..
Please note that it may take a little while for this payment to appear in the Recent Activity list on your Account
Overview.

View the details of this transaction online at:

https://www.paypal.com/uk/vst/id=2BE7791911T005920D

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/uk/cgi-bin/webscr?cmd=_history. To correct any errors, please contact us through our
Help Centre at https://www.paypal.com/uk/cgi-bin/webscr?cmd=_contact_us.

--------------------------------------------------------------------
Amount:$995.00 USD
Currency conversion:£653.59 GBP = $995.00 USD
Exchange rate:1 GBP = 1.52236USD
Sent on:7 February 2013
Message in your payment email:MG payment no. 6.
John Gilbody.
Yours sincerely,
PayPal

--------------------------------------------------------------------
Help Centre:
https://www.paypal.com/uk/cgi-bin/helpweb?cmd=_help
Resolution Centre:
https://www.paypal.com/uk/cgi-bin/?cmd=_complaint-view
Safety Advice:
https://www.paypal.com/uk/security

Please do not reply to this email because we are not monitoring this inbox. To get in touch with us, log in to
your account and click "Contact Us" at the bottom of any page.

Copyright © 2013 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered office: 22-24 Boulevard Royal, L-2449 Luxemburg
RCS Luxemburg B 118 349

PayPal Email ID PP118

**Attachments:**

2/8/13                                                                                    You sent a payment

From: service@paypal.co.uk <service@paypal.co.uk>

To: John Gilbody <john@johngilbody.com>
Cc:

Date: Thursday, February 07, 2013 09:29 pm
Subject: You sent a payment

--------------------------------------------------------------------
You sent a payment
--------------------------------------------------------------------

Transaction ID: ████████████████

Dear John Gilbody,

You sent a payment for $1,250.00 USD to Zidware, Inc..
Please note that it may take a little while for this payment to appear in the Recent Activity list on your Account
Overview.

View the details of this transaction online at:

https://www.paypal.com/uk/vst/id=1VS5182J0F58412JV

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/uk/cgi-bin/webscr?cmd=_history. To correct any errors, please contact us through our
Help Centre at https://www.paypal.com/uk/cgi-bin/webscr?cmd=_contact_us.

--------------------------------------------------------------------
Amount:$1,250.00 USD
Currency conversion:£821.09 GBP = $1,250.00 USD
Exchange rate:1 GBP = 1.52236USD
Sent on:7 February 2013
Message in your payment email:BHZA install no.2.
John Gilbody.
Yours sincerely,
PayPal

--------------------------------------------------------------------
Help Centre:
https://www.paypal.com/uk/cgi-bin/helpweb?cmd=_help
Resolution Centre:
https://www.paypal.com/uk/cgi-bin/?cmd=_complaint-view
Safety Advice:
https://www.paypal.com/uk/security

Please do not reply to this email because we are not monitoring this inbox. To get in touch with us, log in to
your account and click "Contact Us" at the bottom of any page.

Copyright © 2013 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered office: 22-24 Boulevard Royal, L-2449 Luxemburg
RCS Luxemburg B 118 349

PayPal Email ID PP118

Attachments:



| Media | M-- |
|---|---|
| Posting Date | 20140210   Feb 10 |
| CPCS Seq # | ███████ |
| Account # | ███████ |
| Amount | 500000 |
| Ck/Serial # | 2145 |
| Dep CPCS Seq # | 12 |
| Dep Account | 0 |
| R/T Routing Transit | ███████ |
| Bank # | 29 |
| TranCode | 0 |
| Exception | 0 |



EXHIBIT
2

# Purchase Order



## Buyer

Kent Zilch
KMG Construction
24230 W. Partridge Dr.
Plainfield, IL 60544



K

(1) Retro Atomic Zombie Adventureland™ Standard Custom Pinball    $9,995. (USD)

### BASIC GAME DESCRIPTION

- USA Made Arcade Pinball Machine – 110v – 60Hz
- Custom designed by John A. Popadiuk, Jr.
- Comes Boxed and Ready to Ship
- 1 Year Warranty – Parts & Labor

DEPOSIT DUE TODAY (1/30)    $4995.
Due 6/30/2014    $2500.
Due 9/30/2014    $2500.

DIY Version Add    $1000.

*Sales Tax and Shipping Not Included
*Subject to Change



ZIDWARE INC
39 SANGRA COURT
STREAMWOOD IL 60107

PINBALLINVENTOR.ORG

## PURCHASE AGREEMENT — CONFIDENTIAL





BHZA - Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:

Rommy Henley (BHZA#10)
12748 Wood Duck Lane
Springdale, AR 72762
United States

*Thanks Y'all! Best of luck From Arkansas Rommy*

EXHIBIT
3

## Construction Techniques and Components

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques, performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the BHZA pinball machine based on specifications to be determined by the Company.

## Usage and Operation

The Ben Heck's Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The BHZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are planned at this time.

## Basic Development Cost Schedule

The initial pre-order cost of a custom-designed limited-edition BHZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any BHZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 30, 2012, along with the second refundable deposit of $2,250.00. This will reserve your serial number and get the custom pinball development and production rolling. This deposit (along with the initial $750.00 deposit, or $3,000.00 in total) will be fully refundable within 45 days of receipt of the second deposit by the Company, if you so desire.

The remaining balance due of $6,995 (or $7,995 for the DIY option) will follow in easy-stepped payments during the development cycle. All scheduled payments (except for the second refundable deposit of $2,250.00), will be spread out over the expected development cycle and must be submitted to the Company by the Purchaser within 45 days of their indicated due dates as outlined below. Payment in full will be due on or before the shipment date of your machine.

The basic payment schedule with certain milestones, subject to modification as noted above, is as follows:

| DATE | ITEM/MILESTONE | AMOUNT |
|------|----------------|--------|
| 3/1/2012 | Pre-Order Deposit (100% refundable) | $750 |
| 5/1/2012 | Owner Packages Mailed | |
| 6/1/2012 | Installment One (100% refundable) | $2,250 |
| 11/1/2012 | Installment Two Design Phase | $1,250 |
| 12/1/2012 | Game Review & Refinement | |
| 3/1/2013 | Installment Three Engineering Phase | $2,250 |
| 5/1/2013 | Final Game Evaluation Phase | |
| 6/1/2013 | Prototype Start Estimate | $3,000 |
| 9/1/2013 | Build Node Phase | $495 |
| 10/1/2013 | Build Node Phase 2 | |
| 11/1/2013 | DIY Surcharge (or due on Delivery if earlier) | $1,000 |

**TOTAL:** $9,995.00 (or $10,995.00 for the DIY Option)

© 2012 - Zidware, Inc. – CONFIDENTIAL

## Warranty

The Company will provide a One-Year Limited Warranty for the BHZA pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation, modification or setup will VOID the warranty. This product does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement. Requested parts will be made available for purchase after the games are delivered to respective owners at project completion.

## Liability Information

This product was designed to be delivered and installed into specific HOME LOCATIONS only! Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

## Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the BHZA pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all Purchasers' ideas, comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the BHZA pinball machine will be at the sole discretion and control of the Company.

## Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished BHZA pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at the time of cancellation will be refunded in full. No interest shall be paid on any returned deposits. These same cancellation terms shall apply if the Company terminates this Purchase Agreement with the Purchaser under any of the relevant clauses herein.

## Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

© 2012 - Zidware, Inc. – CONFIDENTIAL

**Severability**

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

**Entire Agreement**

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

**Governing Law**

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Ben Heck's Zombie Adventureland™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the BHZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.

Signed: (Purchaser)

Name (print):     Tommy Henley

Date:     5/31/12

Serial Number:     #10





**Bill**

NWA Pinball Amusements
1206 N 8th St
AR 72756

| Date | Ref. No. |
|------|----------|
| 02/26/2014 | Predator |

| Vendor |
|--------|
| Skit-B Pinball |
| PO Box 476 |
| Auburn, MI 48611 |

Bill Due    03/01/2014

Terms

Memo    balance due of 4750.00 total cost. 1st
250.0 pd 11/19/12 - Ck 1009

# Expenses

| Account | Memo | Amount | Customer:Job | Class |
|---------|------|--------|--------------|-------|
| purchase | balance due of 4750.00 total cost. 1st 250.0 pd 11/19/12 - Ck 1009 | 4,500.00 | | PRED |

Expense Total : 4,500.00

**Bill Total :**        **$4,500.00**

7:34 AM
04/21/15

# Arkansas Insurance Alliance
## Vendor QuickReport
### All Transactions

| Type | Date | Num | Memo | Account | Clr | Split | Credit |
|------|------|-----|------|---------|-----|-------|--------|
| **Skit-B Pinball** | | | | | | | |
| Check | 11/19/2012 | 1009 | balance due of 4750.00 total cost. 1st 250.0 pd | NWA Pinball 18132261 | √ | NWA Pinball | $250.00 |
| Bill | 02/28/2014 | Predator | | Accounts Payable | | purchase | $4,500.00 |
| Bill Pmt -Cr | 02/28/2014 | 1033 | VOID: balance due of 4750.00 total cost. 1st 250.0 0 11/19/12 - Ck 1009 | NWA Pinball 18132261 | √ | Accounts Payable | |
| Bill Pmt -Cr | 06/17/2014 | 1039 | balance due of 4750.00 total cost. 1st 250.0 pd 11/19/12 - Ck 1009 | NWA Pinball 18132261 | √ | Accounts Payable | $3,000.00 |
| | | | | | | Total cleared cks | $3,250.00 |
| **Zidware** | | | | | | | |
| Check | 03/14/2012 | 9358 | ZW#10 | Operating acct t7160768 | √ | NWA Pinball | $750.00 |
| Check | 06/14/2012 | 1002 | BHZA | NWA Pinball 18132261 | √ | NWA Pinball | $2,250.00 |
| Check | 11/20/2012 | 1010 | BHZA installment 2 - 1,250.00 - rewritten 1/10/13 | NWA Pinball 18132261 | | NWA Pinball | $1,250.00 |
| Check | 01/08/2013 | 1010 | Orig written 11/20/12 | NWA Pinball 18132261 | √ | machines | $1,250.00 |
| Check | 03/15/2013 | 1019 | Payment | NWA Pinball 18132261 | √ | machines | $2,250.00 |
| | | | | | | Total cleared cks | $6,500.00 |

Print

**Subject:**  Pinball Check

**From:**  Rommy D (rommy_advone@yahoo.com)

**To:**  heidi_adv1@yahoo.com;

**Date:**  Monday, November 19, 2012 11:03 AM

Please cut check to Skit-B Pinball for $250 from NWA Pinball, this is for Predator pinball machine #19 for our records. Skit-B should be set up as a pinball machine vendor for new equipment, they will not be doing repairs or restoration work. This machine is $4995 and payments will total around that when it's all said and done for this machine. Please invoice me for the $250 transfer.

Rommy D. Henley
Chief Executive Officer
Arkansas Insurance Alliance, LLC
1206 North 8th Street
Rogers, AR  72756
Office   479-631-0168  Fax   479-631-0651
r___@yahoo.com

COPY



## Non-Disclosure Agreement - BHZA v2

This non-disclosure agreement (the "Agreement") is made and entered into as of _5/31/12_, 2012 by and between <u>Zidware, Inc.</u> (the "Company") and _Rowany Henly_ (the "Recipient"). The Company wishes to manufacture and sell pinball machines (the "Product"), and the Company and Recipient are considering, or may have entered into, a business relationship (the "Relationship") in which the Company will sell the Product to the Recipient and/or enter into discussions with the Recipient regarding development and/or manufacturing of certain components of the Product. The Recipient has been provided and may be provided in the future with Confidential Information as defined herein below in order to evaluate or to perform duties in furtherance of such relationship or transaction. In accordance with the Company providing of such Confidential Information, the parties hereby agree as follows:

1. **Definition of Confidential Information.** For purposes of this Agreement, "Confidential Information" shall mean any information or material proprietary to the Company or designated as Confidential Information by the Company which the Recipient may obtain knowledge of or access to as a result of any disclosure pursuant to this Agreement. This Confidential Information includes, but is not limited to, artwork, ideas, technical data, project schematics or drawings, product designs, specifications, software (source code or object code), U.S. and foreign patent applications (to the extent that they are not publicly available), Confidential Materials as defined herein below, and any other information that the Company may identify as Confidential Information either in writing or orally, which relate to the Company's research and development, current and future products, business plans, products, services, customer lists or identities, programming activities, manufacturing, software development, inventions, processes, designs, drawings, engineering features, hardware configuration information, marketing activities, or finances. The Company shall use its reasonable best efforts to reduce Confidential Information to written form and formally designate the material as Confidential Information. Confidential

Information shall not include information, technical data or know-how that: (i) is in the possession of the Recipient at the time of disclosure by the Company as demonstrated by the Recipient's files and records immediately prior to the time of disclosure; or (ii) becomes part of the public knowledge or literature prior to or after the time of disclosure, other than as a result of any improper inaction or action of the Recipient; or (iii) is approved by the Company, in writing, for release or public disclosure; or (iv) is required to be disclosed by law or by order of any court

2. **Confidential Materials.**  For purposes of this Agreement, "Confidential Materials" shall mean all tangible materials containing Confidential Information including, without limitation, drawings, models, prototypes, schematics, written or printed documents, computer disks, tapes and compact discs (CD), and all other memory storage devices, whether readable by machine or directly by a user.

3. **Nondisclosure of Confidential Information.**  The Recipient agrees to accept and has accepted the Confidential Information received in confidence, and further agrees that the Confidential Information belongs exclusively to the Company and that the Recipient has not and will not acquire any rights to use the Confidential Information of the Company for its own benefit, the benefit of a third party, or for any purpose other than that as noted by the Company in furthering the Relationship, including any Confidential Information that may be developed by the Recipient in connection with the business relationship or transaction entered into between the Company and the Recipient. The Recipient further agrees not to use any Confidential Information disclosed to it by the Company, at the time of disclosure or at any subsequent time, for its own use of for any purpose other than to discuss or assess ideas, suggestions or inventions related to the undertaking of the Relationship.  The Recipient has limited and shall limit the disclosure of Confidential Information to only high-level employees, such as managers, inside general and patent counsel, high-level engineers, and outside counsel who have a duty to abide by this Agreement, for the sole purposes of determining whether the Recipient desires to enter into a relationship or transaction with the Company, or to perform the duties required of the relationship or transaction, and not for any other purpose. The Recipient has maintained and shall maintain appropriate written agreements with its employees, consultants, parent, subsidiaries, affiliates or related parties, who receive, or have access to, Confidential Information sufficient to enable it to comply with the terms of this Agreement. The Recipient agrees to promptly notify the Company in writing of any misuse, misappropriation, or other

disclosure of Confidential Information that is in violation of the terms of this Agreement which has come to the Recipient's attention.

4. **Publicity.** The Recipient shall not, without prior consent of the Company, disclose to any other party the fact that Confidential Information has been disclosed under this Agreement, that discussions or negotiations are taking place between the parties, or any of the terms conditions, status or other facts with respect thereto, including any terms of this Agreement, except as required by law and then only with prior written notice to the Company.

5. **Return of Materials.** Upon request by the Company, the Recipient will return to the Company, without making or taking copies or summaries thereof, all Confidential Materials and other documents pertaining to the business of the Company and the Relationship (apart from a copy of this Agreement) that have been provided by the Company to the Recipient in connection with the Relationship, accompanied by all copies of such documentation or certification of destruction of such copies, if any were made, within ten (10) calendar days after: (i) the Relationship has been terminated; or (ii) receiving a written request for such return of Confidential Materials and other documentation by the Company.

6. **Patent or Copyright Infringement.** Nothing in this agreement is intended to grant any rights to the Recipient with regard to any and all of the Company's intellectual property rights, including to any and all patents, patent applications, trademarks, and copyrights owned by or licensed to the Company, unless otherwise agreed upon previously in writing.

7. **Term.** The commitments and obligations of each party as specified in this Agreement shall survive any termination of the Relationship between the parties for a period of two years after application of Section 5 above.

8. **Successors and Assigns.** This agreement shall be binding upon and for the benefits of the undersigned parties, their successors and assigns, provided that Confidential Information of Zidware, Inc., and may not be assigned without the prior written consent of Zidware, Inc. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

9. **Breach and Damages.** The Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from a material breach of this Agreement, such as the unauthorized use or disclosure of Confidential Information, and that the Company shall

be entitled, without waiving any other rights or remedies, to seek such injunctive and/or equitable relief as may be deemed appropriate by a court of competent jurisdiction, including injunctive relief against the threatened breach of this Agreement by the Recipient without the necessity of proving actual damages. Further, if Recipient is a purchaser or pre-purchaser of the Product, the Company may, at its sole discretion, cancel and terminate any purchase agreement between Company and Recipient in response to a breach by Recipient, and refund all deposit monies paid by Recipient to Company, with no further compensation due to Recipient.

10. **Governing Law.** This agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules, and shall be binding upon the Recipient in the United States and worldwide. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

11. **Remedies.** The Customer agrees that any violation or threatened violation will cause irreparable injury, both financial and strategic, to Zidware and in addition to any and all remedies that may be available, in law, in equity or otherwise, Zidware shall be entitled to injunctive relief against the threatened breach of this Agreement by the Customer without the necessity of proving actual damages.

12. **Scope.** This Agreement constitutes the entire understanding and agreement of the parties regarding the subject matter hereof and supersedes any prior oral or written understandings or agreements and may not be modified, except in writing signed by both parties. No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion. This Agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

13. **Severability.** If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full effect. Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to duration, scope or subject matter thereof,

such obligations shall be deemed and construed to be reduced to the maximum scope, duration or subject matter allowable by law.

14. **Counterparts.** This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement. No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, this Non-Disclosure Agreement is executed as of the date first above written:

Zidware, Inc.
722 Chestnut Court
Bartlett, IL 60103

By: _____
John A. Popadiuk, Jr.
President

_____
Recipient (print)

By: _____
Name:
Title:

Rev4.28.12

NWA PINBALL AMUSEMENTS LLC
1206 N 8TH ST.
ROGERS, AR  72756-2818

81-87/829

1002

DATE 6-14-12

PAY TO
THE ORDER OF  ZIDWARE

$ 2250 00

TWO THOUSAND TWO HONDED FIFY & NO/100    DOLLARS

ARVEST®
BANK    arvest.com
MEMO BHZA



3oz          1.063"d

Welcome to "Ben Heck's Zombie Adventureland™"

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

May 1, 2012

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

Welcome!

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

**Reinventing
Pinball**

• from the desk of JOHN A POPADIUK JR

 

**Ben Heck's ZOMBIE ADVENTURELAND™ Pinball in 3D**

**→ READ ME!**

 **SIGN & RETURN AGREEMENT**
FRONT AND BACK PAGE OK

 **CHECK YOUR SERIAL NUMBER!**

 **SIGN & RETURN NDA**
FRONT AND BACK PAGE OK

 **SEND BACK INSTALLMENT 1**

 NEED HELP?



 BRAINS

**PINBALLINVENTOR.ORG/FAQ**
**QUESTIONS@ZIDWARE.COM**
**224-532-0639 - CALL JOHN**



Check 1002 Amount $2,250.00 Date 6/26/2012

PURCHASE AGREEMENT -- CONFIDENTIAL



RAZA - Custom Pinball Machine Design

Date     May 1, 2013

Prepared by:     Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:     OWNER NAME HERE

Sean Bernhardt
84237 Gaupp Ln
Pleasant Hill, OR
97455





## Agreement

This Purchase Agreement was prepared to describe certain features or aspects of the Retro Atomic Zombie Adventureland™ pinball machine project, and to specify certain terms and conditions relating to the purchase of the game from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

## Project Overview

The project involves the creation of a full-sized custom pinball machine called Retro Atomic Zombie Adventureland™, including both a Limited Edition and a Special Cointaker Edition (collectively, "RAZA") made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of professional pinball designer, John A. Popadiuk, Jr., with the added creativity and hackspertise of Ben Heckendorn as available.

## The Pinball Team

John A. Popadiuk, Jr. is a celebrated pinball designer, vintage pinball collector, mobile software developer and bagatelle historian with many years immersed in the world of pinball. Some of his designs include: Bally's Theatre of Magic, Marvel Heroes vs.Villains, World Cup Soccer, Star Wars: Episode I, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and team building philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and new to be explored and incorporated into the RAZA pinball game alongside fellow modding genius and pin-geek Ben Heck and other talented designers, artists and creative engineers required to create a quality custom. pinball.

## The Timeline

Retro Atomic Zombie Adventureland™ pinball will follow a normal pinball development schedule of approximately 14 months at a minimum. You are invited to visit the design team in the studio, when appropriate, to view the progress and see the current full-size hand-made pinball mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this custom project in a reasonable amount of time as stated herein. Any compressions, delays or extensions to the planned schedule, will be communicated in a timely manner as best noted. Due to the nature of this being a custom game, delay's are to be provided for.

## Art Direction & Theme

The Retro Atomic Zombie Adventureland™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on hip atomic 1960's retro zombie amusement park theme. The online trailer was created to capture the "verve" or general game concept.

## Pinball Game Features

The Retro Atomic Zombie Adventureland™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen pinball designs. Some of the basic features planned to be included at this time are located here on the website:

> http://pinballinventor.org/retro/

Other details, changes, additions will be finalized as the game design process progresses, and all such details are subject to modification or change at the sole discretion of the Company. Much of the process will be documented on our secret dev blogs for all owners to view and participate.

## Construction Techniques and Components

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques,

© 2013 – Zidware, Inc. – CONFIDENTIAL

performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the RAZA pinball machine based on specifications to be determined by the Company.

## Usage and Operation
The Retro Atomic Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The RAZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are also planned at this time.

## Basic Development Cost Schedule
The initial pre-order cost of a custom-designed limited-edition RAZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, customer changes, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any RAZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 1, 2013, along with the your refundable deposit of $4,750.00. This will reserve your serial number and get the custom pinball development and production rolling. This payment will be fully refundable within 45 days of receipt of the deposit by the Company, if you so desire. A future payment schedule will be made available and detail all future payments required.

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the RAZA pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement. All issue should be brought forth for discussion and correction as required.

## Production Run
The production run of the Retro Atomic Zombie Adventureland™ pinball machine will be limited to a total of 99 numbered Limited Editions and 25 numbered Special Cointaker Editions that will be offered for sale by the Company to the public. A minimum of 3 prototype (non-perfect) games will be constructed of each model to prove out parts, components and overall quality. The games will be constructed in nodes of a minimum 25 games at a time or as best fits our design and development facility.

## Non-Disclosure
A Non-Disclosure Agreement ("NDA") accompanies this Purchase Agreement. Purchasers who sign this NDA and return it along with this signed Purchase Agreement and second refundable deposit will be granted limited access to the Company's internal design process. You will be able to visit the Company's design studio, see the various stages of the project, and work with the design team as available. Please note that Purchasers who do not sign the NDA will not be granted this "behind-the-scenes" access and will only receive general information regarding progress, along with other details as they are revealed to the general public. The Company may, at its sole discretion, allow individual Purchasers to sign the NDA at a future date and gain this access to the development information, if they choose not sign and return the NDA along with this Purchase Agreement.

For Purchasers who sign the NDA and submit it to the Company: Please note that the Retro Atomic Zombie Adventureland™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion. The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party (including other Purchasers who have not signed the NDA) or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and this Purchase Agreement will be canceled (although the terms and conditions of the NDA will continue to remain in effect). The

© 2013 – Zidware, Inc. – CONFIDENTIAL

Company may, at its reasonable discretion, retain some or all of the cumulative monetary deposits made by the breaching party as of the date of the breach.

### Customization

The Retro Atomic Zombie Adventureland™ pinball machines will be manufactured as special custom-made games, and not mass-produced. You, the Purchaser, will have an opportunity in the design process to create, select and/or change certain features, decorative parts, mechanics and/or artwork to make your game unique. These options will be presented to you by the Company as the development schedule proceeds. John Popadiuk and his design team also encourage you, the Purchaser, to suggest options and take part in the design process (subject to receipt of a signed NDA as described above). Pinball building is hard work and fun.

### Development Collectibles

The game development process creates an extraordinary amount of collateral sketches, designs, paperwork, models, test fixtures, art, samples and playfield mechanisms. These items will be made available at the end of the project to buyers at the discretion of the Company.

### Warranty

The Company will provide a One-Year Limited Warranty for the RAZA pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation, modification or setup will VOID the warranty. This warranty does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement. Requested parts will be made available for purchase after the games are delivered to respective owners at project completion.

### Liability Information

This product was designed to be delivered and installed into specific HOME LOCATIONS only! Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

### Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the RAZA pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all Purchasers' ideas, comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the RAZA pinball machine will be at the sole discretion and control of the Company.

### Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished RAZA pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at

the time of cancellation will be refunded in full. No interest shall be paid on any returned deposits. These same cancellation terms shall apply if the Company terminates this Purchase Agreement with the Purchaser under any of the relevant clauses herein. Zidware may also cancel your order and return any owed monies in the event of non-payment of event items and agreed purchase costs within 30 days of notice.

### Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

### Severability

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

### Entire Agreement

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

### Governing Law

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

### Final Delivery

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Retro Atomic Zombie Adventureland™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the RAZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.

Signed: (Purchaser)    _____

Name (print):    Sean Bernhardt

Date:    5/23/13

Serial Number:    _____

© 2013 - Zidware, Inc. – CONFIDENTIAL



### Non-Disclosure Agreement - RAZA v1

This non-disclosure agreement (the "Agreement") is made and entered into as of *May 23*, 2013 by and between Zidware, Inc. (the "Company") and *Sean Bernhardt* (the "Recipient"). The Company wishes to manufacture and sell pinball machines (the "Product"), and the Company and Recipient are considering, or may have entered into, a business relationship (the "Relationship") in which the Company will sell the Product to the Recipient and/or enter into discussions with the Recipient regarding development and/or manufacturing of certain components of the Product. The Recipient has been provided and may be provided in the future with Confidential Information as defined herein below in order to evaluate or to perform duties in furtherance of such relationship or transaction. In accordance with the Company providing of such Confidential Information, the parties hereby agree as follows:

1.  **Definition of Confidential Information.** For purposes of this Agreement, "Confidential Information" shall mean any information or material proprietary to the Company or designated as Confidential Information by the Company which the Recipient may obtain knowledge of or access to as a result of any disclosure pursuant to this Agreement. This Confidential Information includes, but is not limited to, artwork, ideas, technical data, project schematics or drawings, product designs, specifications, software (source code or object code), U.S. and foreign patent applications (to the extent that they are not publicly available), Confidential Materials as defined herein below, and any other information that the Company may identify as Confidential Information either in writing or orally, which relate to the Company's research and development, current and future products, business plans, products, services, customer lists or identities, programming activities, manufacturing, software development, inventions, processes, designs, drawings, engineering features, hardware configuration information, marketing activities, or finances. The Company shall use its reasonable best efforts to reduce Confidential Information to written form and formally designate the material as Confidential Information. Confidential Information shall not include information, technical data or know-how that: (i) is in the possession of the Recipient at the time of disclosure by the Company as demonstrated by the Recipient's files and records immediately prior to the time of disclosure; or (ii) becomes part of the public knowledge or literature prior to or after the time of disclosure, other than as a result of any improper inaction or action of the Recipient; or (iii) is approved by the Company, in writing, for release or public disclosure; or (iv) is required to be disclosed by law or by order of any court

2.  **Confidential Materials.** For purposes of this Agreement, "Confidential Materials" shall mean all tangible materials containing Confidential Information including, without limitation, drawings, models, prototypes, schematics, digital, written or printed documents, computer disks, tapes and compact discs (CD), and all other memory storage devices, blogs, emails whether readable by machine or directly by a user.

3.  **Nondisclosure of Confidential Information.** The Recipient agrees to accept and has accepted the Confidential Information received in confidence, and further agrees that the Confidential Information belongs exclusively to the Company and that the Recipient has not and will not acquire any rights to use the Confidential Information of the Company for its own benefit, the benefit of a third party, or for any purpose

other than that as noted by the Company in furthering the Relationship, including any Confidential Information that may be developed by the Recipient in connection with the business relationship or transaction entered into between the Company and the Recipient. The Recipient further agrees not to use any Confidential Information disclosed to it by the Company, at the time of disclosure or at any subsequent time, for its own use or for any purpose other than to discuss or assess ideas, suggestions or inventions related to the undertaking of the Relationship. The Recipient has limited and shall limit the disclosure of Confidential Information to only high-level employees, such as managers, inside general and patent counsel, high-level engineers, and outside counsel who have a duty to abide by this Agreement, for the sole purposes of determining whether the Recipient desires to enter into a relationship or transaction with the Company, or to perform the duties required of the relationship or transaction, and not for any other purpose. The Recipient has maintained and shall maintain appropriate written agreements with its employees, consultants, parent, subsidiaries, affiliates or related parties, who receive, or have access to, Confidential Information sufficient to enable it to comply with the terms of this Agreement. The Recipient agrees to promptly notify the Company in writing of any misuse, misappropriation, or other disclosure of Confidential Information that is in violation of the terms of this Agreement which has come to the Recipient's attention.

4. **Publicity.** The Recipient shall not, without prior consent of the Company, disclose to any other party the fact that Confidential Information has been disclosed under this Agreement, that discussions or negotiations are taking place between the parties, or any of the terms conditions, status or other facts with respect thereto, including any terms of this Agreement, except as required by law and then only with prior written notice to the Company.

5. **Return of Materials.** Upon request by the Company, the Recipient will return to the Company, without making or taking copies or summaries thereof, all Confidential Materials and other documents pertaining to the business of the Company and the Relationship (apart from a copy of this Agreement) that have been provided by the Company to the Recipient in connection with the Relationship, accompanied by all copies of such documentation or certification of destruction of such copies, if any were made, within ten (10) calendar days after: (i) the Relationship has been terminated; or (ii) receiving a written request for such return of Confidential Materials and other documentation by the Company.

6. **Patent or Copyright Infringement.** Nothing in this agreement is intended to grant any rights to the Recipient with regard to any and all of the Company's intellectual property rights, including to any and all patents, patent applications, trademarks, and copyrights owned by or licensed to the Company, unless otherwise agreed upon previously in writing.

7. **Term.** The commitments and obligations of each party as specified in this Agreement shall survive any termination of the Relationship between the parties for a period of two years after application of Section 5 above.

8. **Successors and Assigns.** This agreement shall be binding upon and for the benefits of the undersigned parties, their successors and assigns, provided that Confidential Information of Zidware, Inc., and may not be assigned without the prior written consent of Zidware, Inc. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

9. **Breach and Damages.** The Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from a material breach of this Agreement, such as the unauthorized use or disclosure of Confidential Information, and that the Company shall be entitled, without waiving any other rights or remedies, to seek such injunctive and/or equitable relief as may be deemed appropriate by a court of competent jurisdiction, including injunctive relief against the threatened breach of this Agreement by the

Recipient without the necessity of proving actual damages.   Further, if Recipient is a purchaser or pre-purchaser of the Product, the Company may, at its sole discretion, cancel and terminate any purchase agreement between Company and Recipient in response to a breach by Recipient, and refund all deposit monies paid by Recipient to Company, with no further compensation due to Recipient.

10. **Governing Law.** This agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules, and shall be binding upon the Recipient in the United States and worldwide.  Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

11. **Remedies.** The Customer agrees that any violation or threatened violation will cause irreparable injury, both financial and strategic, to Zidware and in addition to any and all remedies that may be available, in law, in equity or otherwise, Zidware shall be entitled to injunctive relief against the threatened breach of this Agreement by the Customer without the necessity of proving actual damages.

12. **Scope.** This Agreement constitutes the entire understanding and agreement of the parties regarding the subject matter hereof and supersedes any prior oral or written understandings or agreements and may not be modified, except in writing signed by both parties.  No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion.  This Agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules.  Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

13. **Severability.**  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full effect.  Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to duration, scope or subject matter thereof, such obligations shall be deemed and construed to be reduced to the maximum scope, duration or subject matter allowable by law.

14. **Counterparts.** This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement.  No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, this Non-Disclosure Agreement is executed as of the date first above written:

Zidware, Inc.
39 Sangra Court
Streamwood, IL 60107

_Sean Bernhardt_
Recipient (print)

By: _____
John A. Popadiuk, Jr.
President

By: _____
Name: _Sean Bernhardt_
Title:

Rev5.1.13





.3oz        1.063"d

**Welcome to Retro Atomic Zombie Adventureland™**

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

May 2013



My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball, Retro Atomic Zombie adventureland!

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers and artists, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. We are a small group doing big things. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

Welcome!

*John A. Popadiuk, Jr*

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/RETRO**

**Reinventing
Pinball**

• from the desk of JOHN A POPADIUK JR





# READ ME!

☑ **READ INTRO LETTER**

☑ **SIGN & RETURN AGREEMENT**

☑ **SIGN & RETURN NDA**

☑ **SEND BACK YOUR PAYMENT**



**NEED HELP?**

**$4750**
payable to Zidware Inc

POP@ZIDWARE.COM
224-532-0639 ~ CALL JOHN

CASHIER'S CHECK

**483305**



Account Number · Account Balance

$0.00

05/24/13

**PAY**    \*\*\* Four Thousand Seven Hundred Fifty Dollars and 00 Cents \*\*\*    \*\*\*\*\*4,750.00

**TO THE ORDER OF**    ZIDWARE INC

PROGRESS PAYMENT ZARA



THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK. HOLD AT AN ANGLE TO VIEW. THE FRONT OF THE DOCUMENT HAS A HOLOGRAM. ABSENCE OF THESE FEATURES WILL INDICATE A COPY.

CASHIER'S    CHECK    **483305**

OREGON COMMUNITY CREDIT UNION

PROGRESS PAYMENT ZARA

05/24/13

**PAY**    \*\*\* Four Thousand Seven Hundred Fifty Dollars and 00 Cents \*\*\*    \*\*\*\*\*4,750.00

**TO THE ORDER OF**    ZIDWARE INC

ISSUED BY: OREGON COMMUNITY CREDIT UNION



PLEASANT
HILL
POST OFFICE
USPS

THANK YOU

REG  05-24-2013  18:36
CLERK 11            000022

DEPT04
CHECK            $3.96

THANK YOU



Untitled

From:  Zidware Accounts <pop@zidware.com>;
To:  <concretehardt@yahoo.com>; John Popadiuk
<pop@zidware.com>;
Subject:  Zombie Adventureland #54
Sent:  Fri, Jun 14, 2013 10:36:01 PM


Hi Sean,

We have reserved RAZA#54 for you!

John Popadiuk



Amount:$7,500.00 Date:08/22/2011 Serial:4216 Debit/Credit:D

Trancode:0 TransactionBranch:99

:18351850 Amount:$2,000.00 Date:01/09/2012 Serial:4259 Debit/Credit:D

Trancode:0 TransactionBranch:99

Amount:$750.00 Date:04/30/2012 Serial:4466 Debit/Credit:D

Trancode:0 TransactionBranch:99

Amount:$2,250.00 Date:07/09/2012 Serial:4475 Debit/Credit:D

Trancode:0 TransactionBranch:99

Amount:$5,000.00 Date:08/01/2012 Serial:4494 Debit/Credit:D

Trancode:0 TransactionBranch:99



EXHIBIT
5

Account: 2723576469 Sequence: 10332410 Amount:$995.00 Date:02/22/2013 Serial:4563 Debit/Credit:D

Trancode:0 TransactionBranch:99



Amount:$1,250.00 Date:02/22/2013 Serial:4564 Debit/Credit:D

Trancode:0 TransactionBranch:99



Amount:$2,250.00 Date:04/29/2013 Serial:4584 Debit/Credit:D

Trancode:0 TransactionBranch:99

## CenturyLink Webmail

mr68@q.com

± Font Size ±

# Receipt for Your Payment to Zidware Inc

**From :** service@paypal.com

Fri, Feb 17, 2012 03:33 PM

**Subject :** Receipt for Your Payment to Zidware Inc

**To :** Kim Mitchell <Mr68@q.com>

**PayPal**

Feb 17, 2012 12:33:53 PST
Transaction ID: ▆▆▆▆▆▆▆▆▆▆▆▆

**Hello Kim Mitchell,**

**You sent a payment of $750.00 USD to Zidware Inc**

**(john@zidware.com)**

It may take a few moments for this transaction to appear in your account.

| | |
|---|---|
| **Merchant**<br>Zidware Inc<br>john@zidware.com | **Instructions to merchant**<br>You haven't entered any instructions. |
| **Shipping address** - confirmed<br>Kim Mitchell<br>2014 Alpine St.<br>Longmont, CO 80504<br>United States | **Shipping details**<br>The seller hasn't provided any shipping details yet. |

| Description | Unit price | Qty | Amount |
|---|---|---|---|
| ZOMBIE ADVENTURELAND PINBALL<br>Item# ZAP001 | $750.00 USD | 1 | $750.00 USD |

| | | |
|---|---|---|
| **Subtotal** | $750.00 USD |
| **Total** | $750.00 USD |
| **Payment** | $750.00 USD |

Charge will appear on your credit card statement as "PAYPAL *ZIDWARE INC"
Payment sent to john@zidware.com

**Issues with this transaction?**
You have 45 days from the date of the transaction to open a dispute in the Resolution Center.

? Questions? Go to the Help Center at: w w w .paypal.com/help.

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to
your PayPal account and click **Help** in the top right corner of any PayPal page.

You can receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your account,

PURCHASE AGREEMENT — CONFIDENTIAL



*Ben Heck's*

# ZOMBIE ADVENTURELAND™
## Pinball in 3D

BHZA - Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:

John Darby (BHZA#32)
Bervie House - 35 High Street
Wall Heath, West Midlands
DY6 0HD UK



EXHIBIT
6

### Agreement

This Purchase Agreement was prepared to describe certain features or aspects of the Ben Heck's Zombie Adventureland™ pinball machine project, and to specify certain terms and conditions relating to the purchase of the game from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

### Project Overview

The project involves the creation of a full-sized custom pinball machine called Ben Heck's Zombie Adventureland™, including both a Limited Edition and a Special Cointaker Edition (collectively, "BHZA") made in a 1990's style of form, fit and function.. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of professional pinball designer, John A. Popadiuk, Jr., with the added creativity and hackspertise of Ben Heckendorn.

### The Pinball Team

John A. Popadiuk, Jr. is a celebrated pinball designer, vintage pinball collector, mobile software developer and bagatelle historian with many years immersed in the world of pinball. Some of his designs include: Bally's Theatre of Magic, Marvel Heroes vs.Villains, World Cup Soccer, Star Wars: Episode I, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and team building philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and new to be explored and incorporated into the BHZA pinball game alongside fellow modding genius and pin-geek Ben Heck and other talented designers, artists and creative engineers required to create a quality custom pinball.

### The Timeline

Ben Heck's Zombie Adventureland™ pinball will follow a normal pinball development schedule of approximately 14 months at a minimum. You are invited to visit the design team in the studio, when appropriate, to view the progress and see the current full-size hand-made pinball mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this custom project in a reasonable amount of time as stated herein. Any compressions, delays or extensions to the planned schedule, will be communicated in a timely manner.

### Art Direction & Theme

The Ben Heck's Zombie Adventureland™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on hip atomic 1960's retro zombie amusement park theme. The online trailer was created to capture the "verve" or general game concept.

### Pinball Game Features

The Ben Heck's Zombie Adventureland™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen pinball designs. Some of the basic features planned to be included at this time are located here on the website:

**http://pinballinventor.org/benheck/**

Other details will be finalized as the game design process progresses, and all such details are subject to modification or change at the sole discretion of the Company.

© 2012 - Zidware, Inc. – CONFIDENTIAL

**Construction Techniques and Components**

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques, performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the BHZA pinball machine based on specifications to be determined by the Company.

**Usage and Operation**

The Ben Heck's Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The BHZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are planned at this time.

**Basic Development Cost Schedule**

The initial pre-order cost of a custom-designed limited-edition BHZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any BHZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 30, 2012, along with the second refundable deposit of $2,250.00. This will reserve your serial number and get the custom pinball development and production rolling. This deposit (along with the initial $750.00 deposit, or $3,000.00 in total) will be fully refundable within 45 days of receipt of the second deposit by the Company, if you so desire.

The remaining balance due of $6,995 (or $7,995 for the DIY option) will follow in easy-stepped payments during the development cycle. All scheduled payments (except for the second refundable deposit of $2,250.00), will be spread out over the expected development cycle and must be submitted to the Company by the Purchaser within 45 days of their indicated due dates as outlined below. Payment in full will be due on or before the shipment date of your machine.

The basic payment schedule with certain milestones, subject to modification as noted above, is as follows:

| DATE | ITEM/MILESTONE | AMOUNT |
|------|----------------|--------|
| 3/1/2012 | Pre-Order Deposit (100% refundable) | $750 |
| 5/1/2012 | Owner Packages Mailed | |
| 6/1/2012 | Installment One (100% refundable) | $2,250 |
| 11/1/2012 | Installment Two Design Phase | $1,250 |
| 12/1/2012 | Game Review & Refinement | |
| 3/1/2013 | Installment Three Engineering Phase | $2,250 |
| 5/1/2013 | Final Game Evaluation Phase | |
| 6/1/2013 | Prototype Start Estimate | $3,000 |
| 9/1/2013 | Build Node Phase | $495 |
| 10/1/2013 | Build Node Phase 2 | |
| 11/1/2013 | DIY Surcharge (or due on Delivery if earlier) | $1,000 |

**TOTAL:** $9,995.00 (or $10,995.00 for the DIY Option)

© 2012 - Zidware, Inc. – CONFIDENTIAL

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

## Production Run

The production run of the Ben Heck's Zombie Adventureland™ pinball machine will be limited to a total of 99 numbered Limited Editions and 25 numbered Special Cointaker Editions that will be offered for sale by the Company to the public. The games will be constructed in nodes of a minimum 25 games at a time.

## Non-Disclosure

An **optional** Non-Disclosure Agreement ("NDA") accompanies this Purchase Agreement. Purchasers who sign this NDA and return it along with this signed Purchase Agreement and second refundable deposit will be granted limited access to the Company's internal design process. You will be able to visit the Company's design studio, see the various stages of the project, and work with the design team as available. **Please note that Purchasers who do not sign the NDA will <u>not</u> be granted this "behind-the-scenes" access and will <u>only</u> receive general information regarding progress, along with other details as they are revealed to the general public.** The Company may, at its sole discretion, allow individual Purchasers to sign the NDA at a future date and gain this access to the development information, if they choose not sign and return the NDA along with this Purchase Agreement.

<u>For Purchasers who sign the NDA and submit it to the Company:</u> Please note that the Ben Heck's Zombie Adventureland™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion. The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party (<u>including other Purchasers who have not signed the NDA</u>) or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and this Purchase Agreement will be canceled (although the terms and conditions of the NDA will continue to remain in effect). The Company may, at its reasonable discretion, retain some or all of the cumulative monetary deposits made by the breaching party as of the date of the breach.

## Customization

The Ben Heck's Zombie Adventureland™ pinball machines will be manufactured as special custom-made games, and not mass-produced. You, the Purchaser, will have an opportunity in the design process to create, select and/or change certain features, decorative parts, mechanics and/or artwork to make your game unique. These options will be presented to you by the Company as the development schedule proceeds. John Popadiuk and Ben Heck also encourage you, the Purchaser, to suggest options and take part in the design process (subject to receipt of a signed NDA as described above).

## Development Collectibles

The game development process creates an extraordinary amount of collateral sketches, designs, paperwork, models, test fixtures, art, samples and playfield mechanisms. These items will be made available at the end of the project to buyers at the discretion of the Company.

© 2012 - Zidware, Inc. – CONFIDENTIAL                                              page 4

## Warranty

The Company will provide a One-Year Limited Warranty for the BHZA pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation, modification or setup will VOID the warranty. This warranty does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement. Requested parts will be made available for purchase after the games are delivered to respective owners at project completion.

## Liability Information

This product was designed to be delivered and installed into specific HOME LOCATIONS only! Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

## Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the BHZA pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all Purchasers' ideas, comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the BHZA pinball machine will be at the sole discretion and control of the Company.

## Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished BHZA pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at the time of cancellation will be refunded in full. No interest shall be paid on any returned deposits. These same cancellation terms shall apply if the Company terminates this Purchase Agreement with the Purchaser under any of the relevant clauses herein.

## Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

© 2012 – Zidware, Inc. – CONFIDENTIAL

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

## Entire Agreement

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

## Governing Law

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

## Final Delivery

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Ben Heck's Zombie Adventureland™ pinball machine will be their sole responsibility.  Instructions on packing and crating will be forwarded when the BHZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.

Signed: (Purchaser)

Name (print):   JOHN DARBY

Date:   12 JULY 2012

Serial Number:   BHZA #32

# SCHEDULE A

Ben Heck's
**ZOMBIE ADVENTURELAND**™
Pinball in 3D

## General Pinball Development and Milestones

**PAYMENTS**
$750  - 3/1
$2250  - 6/1
$1250  - 11/1
$2250  - 3/1
$3000  - 6/1
$495  - 9/1
$1000  (DIY)

**PRE-ORDERS**
Agreements

**CONCEPT**
Game Brief
Game Concept

**DESIGN**
Playfield Design
Artwork Concept

**ENGINEERING**
Mechanical
Playfield Whitewood
Software Start

**GAME REVIEW**

**REFINEMENT**
Changes
Software

**EVALUATION**
Final Designs
Final Artwork

**BUILD**
Proto Samples
Build Node Start
Delivery Estimate

2012    Q1    Q2    Q3    Q4
2013    Q1    Q2    Q3    Q4

100% Refunds    No Refunds

Milestones
Payments

* Due to the nature of pinball machine design, this basic schedule & estimate may change, altered or revised as required by the project constraints.



Welcome to "Ben Heck's Zombie Adventureland™"

3oz          1.063"d

May 1, 2012

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

Welcome!

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

# Reinventing
# Pinball

• from the desk of JOHN A POPADIUK JR

Draft Number
02369673

To:

BANK OF SCOTLAND PLC
GLASGOW PH EPAYMENTS (803665)

Related Reference

As requested we enclose our
International Draft payable to:

ZIDWARE INC

Drawn On:

BANK OF NEW YORK MELLON
ONE WALL STREET
NEW YORK, NY
USA

Amount of Draft    USD          750.00

We debit you as follows Val 27FEB12

By Order Of:
MR J V DARBY
BERVIE HOUSE 35 HIGH STREET
WALL HEATH, KINGSWINFORD
WEST MIDLANDS DY6   OHB

Account Number

Principal Amount GBP          468.02
at 1.6025          USD          750.00

Charge Account Number

Charge Amount     GBP           20.00
OUR CHG INTERNATIONAL DRAFT — CITY

oyds TSB Bank plc. Registered Office: 25 Gresham Street, London EC2V 7HN.
gistered in England and Wales no. 2065. Telephone 020 7626 1500.
oyds TSB Scotland plc. Registered Office: Henry Duncan House, 120 George Street, Edinburgh EH2 4LH.
gistered in Scotland no. 95237. Telephone: 0131 225 4555.
thorised and regulated by the Financial Services Authority under numbers 119278 and 191240 respectively.
are members of the Financial Services Compensation Scheme and the Financial Ombudsman Service.

F502

Draft Number
02372876

Related Reference

To:

BANK OF SCOTLAND PLC
GLASGOW PH EPAYMENTS (803664)

As requested we enclose our
International Draft payable to:

ZIDWARE INC

Drawn On:

BANK OF NEW YORK MELLON
ONE WALL STREET
NEW YORK, NY
USA

Amount of Draft   USD      2,250.00

We debit you as follows Val 09JUL12

By Order Of:
MR J V DARBY
BERVIE HOUSE 35 HIGH STREET
WALL HEATH KINGSWINFORD
WEST MIDLANDS DY6 OHB

Account Number

Principal Amount GBP      1,481.92
at 1.5183        USD      2,250.00

Charge Account Number

Charge Amount    GBP         20.00
OUR CHG INTERNATIONAL DRAFT — CITY

oyds TSB Bank plc. Registered Office: 25 Gresham Street, London EC2V 7HN.
gistered in England and Wales no. 2065. Telephone 020 7626 1500.
oyds TSB Scotland plc. Registered Office: Henry Duncan House, 120 George Street, Edinburgh EH2 4LH.
gistered in Scotland no. 95237. Telephone: 0131 225 4555.
thorised and regulated by the Financial Services Authority under numbers 119278 and 191240 respectively.
e are members of the Financial Services Compensation Scheme and the Financial Ombudsman Service.

F502

ZIOWARE $2250

Post Office Ltd.
Your Receipt

1-2 Albion Parade
Wall Heath
Kingswinford
West Midlands
DY6 0HP

Date and Time:        24/07/2012  16:15
Session ID:                 2-409097
Dest:                              USA
Quantity:                          1
Weight:                   0.060 kg

ISF Air PP          £50.00   £8.45

Total Cost of Services        £8.45

Posted after Last Collection?    No

Barcode:        RJ902070613GB

DESTINATION ADDRESS
Building Name or Number   Postcode
722 CHESTNUT COURT        60103
Address Validated?            N

IT IS IMPORTANT THAT YOU RETAIN THIS
RECEIPT AS IT IS YOUR PROOF OF POSTING

PLEASE REFER TO SEPARATE TERMS AND
CONDITIONS

For information regarding
Royal Mail
products and services
contact us on
08457 740 740
or visit our web site at
www.postoffice.co.uk

This is not a VAT Receipt
Thank You

**UKFOREX**

My Account    Deal Dashboard    New Quote    Deals & Orders    Beneficiaries    Your Profile    Our Account Details    Rate Alerts    Rate Charts

## Spot Deal Details

| | |
|---|---|
| Entered : | **06 Feb 2013** |
| Maturity : | **07 Feb 2013** |
| Entered By : | **John Darby** |
| Status : | **Paid** |
| Deal ID : | ▬▬▬▬▬ |
| USD Amount Ex. Fees : | **USD 1,550.10** |
| Rate : | **GBP/USD 1.5402** |
| GBP Amount Ex. Fees : | **GBP 1,006.43** |
| Number of Beneficiaries : | **1** |
| Total Fees : | **GBP 7.00** |
| GBP Amount Inc. Fees : | **GBP 1,013.43** |

### Beneficiary Details

| Beneficiary Name | Bank | Amount |
|---|---|---|
| Zidware Inc | CHASE BANK | USD 1,550.10 |

○○①○○    Showing Beneficiaries 1 to 1. Total Beneficiary: 1

Back

   

Change cookie settings  ?

**Popular Searches**
Currency Converter
Exchange rates
Money transfers

**Quick Links**
Wire Transfer Money
Currency Brokers
Send Money Abroad

**Transfer Money**
Transfer Money to India
Transfer Money to the US
Transfer Money to Australia

**Useful Links**
Contact Us
Site-map
Partner with us

**Convert**
Pounds to Euros
Euros to Pounds

IMPORTANT: Use of this website is subject to the Website Terms. Use of the Services of the UKForex Limited is subject to the Client Agreement. Nothing on this website constitutes or should be construed as financial advice. This information has been prepared for distribution over the internet and without taking into account the investment objectives, financial situation and particular needs of any particular person. UKForex Limited makes no recommendations as to the merits of any financial product referred to in this website, emails or its related websites.

UKForex is registered in England and Wales (company no. 04631395) with registered office at 1st Floor 85 Gracechurch Street, London EC3V 0AA.

DISCLAIMER: UKForex makes no warranty, express or implied, concerning the suitability, completeness, quality or exactness of the information and models provided in this web site. Read full disclaimer.

UKForex provides international money transfer services to individual clients and business customers. Use our free currency calculator, exchange rate charts, economic calendar, in-depth currency news and updates and benefit from competitive exchange rates and outstanding customer service.

UKForex is regulated by the Financial Conduct Authority (FRN: 521566) for the provision of payment services.

Money Laundering Regulation Number (MSB): 12219180. Issued by HM Revenue & Customs (HMRC)
Read our Money Laundering Statement

POWERED BY 

UK**FOREX**

My Account    Deal Dashboard    New Quote    Deals & Orders    Beneficiaries    Your Profile    Our Account Details    Rate Alerts    Rate Charts

## Spot Deal Details

| | |
|---|---|
| Entered : | 08 Aug 2013 |
| Maturity : | 12 Aug 2013 |
| Entered By : | John Darby |
| Status : | Paid |
| Deal ID : | ████████ |
| USD Amount Ex. Fees : | USD 1,950.00 |
| Rate : | GBP/USD 1.5304 |
| GBP Amount Ex. Fees : | GBP 1,274.18 |
| Number of Beneficiaries : | 1 |
| Total Fees : | GBP 7.00 |
| GBP Amount Inc. Fees : | GBP 1,281.18 |

### Beneficiary Details

| Beneficiary Name | Bank | Amount |
|---|---|---|
| Zidware Inc | CHASE BANK | USD 1,950.00 |

Showing Beneficiaries 1 to 1. Total Beneficiary: 1

Back

       Change cookie settings  ?

**Popular Searches**
Currency Converter
Exchange rates
Money transfers

**Quick Links**
Wire Transfer Money
Currency Brokers
Send Money Abroad

**Transfer Money**
Transfer Money to India
Transfer Money to the US
Transfer Money to Australia

**Useful Links**
Contact Us
Site-map
Partner with us

**Convert**
Pounds to Euros
Euros to Pounds

IMPORTANT: Use of this website is subject to the Website Terms. Use of the Services of the UKForex Limited is subject to the Client Agreement. Nothing on this website constitutes or should be construed as financial advice. This information has been prepared for distribution over the internet and without taking into account the investment objectives, financial situation and particular needs of any particular person. UKForex Limited makes no recommendations as to the merits of any financial product referred to in this website, emails or its related websites.

UKForex is registered in England and Wales (company no. 04631395) with registered office at 1st Floor 85 Gracechurch Street, London EC3V 0AA.

DISCLAIMER: UKForex makes no warranty, express or implied, concerning the suitability, completeness, quality or exactness of the information and models provided in this web site. Read full disclaimer.

UKForex provides international money transfer services to individual clients and business customers. Use our free currency calculator, exchange rate charts, economic calendar, in-depth currency news and updates and benefit from competitive exchange rates and outstanding customer service.

UKForex is regulated by the Financial Conduct Authority (FRN: 521566) for the provision of payment services.

Money Laundering Regulation Number (MSB): 12219180. Issued by HM Revenue & Customs (HMRC)
Read our Money Laundering Statement



**Severability**

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid d unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

**Entire Agreement**

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

**Governing Law**

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Ben Heck's Zombie Adventureland™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the BHZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.

Signed: (Purchaser)    _Dan Gossett_

Name (print):    _DAN GOSSETT_

Date:    _6/15/12_

Serial Number:    _#80_

EXHIBIT
7

NAPA VALLEY

3380

**DAN GOSSETT**
8 GLENEAGLE DR
RANCHO MIRAGE, CA. 92270-2309

11-35/1210
261

2/22/12

DATE

PAY TO THE
ORDER OF   ZIDWARE, INC.                        $ 750 00

Seven Hundred Fifty                              DOLLARS

Customer Since 1984

**Bank of America**
Castro
501 Castro St
San Francisco CA
650.615.4700

Dan Gossett

FOR   BHZA #80

---

2/22/12

HI JOHN.

HERE IS MY CHECK DEPOSIT
IN THE AMOUNT OF $750 00
FOR BHZA #80

THANKS,

DAN GOSSETT
EMAILDAN123@GMAIL.COM

Dan Gossett

NAPA VALLEY

3394

**DAN GOSSETT**
8 GLENEAGLE DR
RANCHO MIRAGE, CA 92270-2309
760-898-5678

11/26/12
DATE

11-35/1210
261

PAY TO THE
ORDER OF __Gridware Inc._____ | $ 1,250.00

__One Thousand Two Hundred Fifty —_____ DOLLARS

**Bank of America**
Castro
501 Castro St
San Francisco CA
650.615.4700

Customer Since 1984

Dan Gossett

FOR __EHZA #80 payment #3__

LAKE TAHOE

**DAN GOSSETT**
8 GLENEAGLE DR
RANCHO MIRAGE, CA 92270-2309

3385

11-35/1210
261

6/19/12
DATE

PAY TO THE ORDER OF _Zishware Inc._    $ 2,250 00

_Two Thousand Two Hundred Fifty_ —————— DOLLARS

**Bank of America**
Castro
501 Castro St
San Francisco CA
650.615.4700

Customer Since
VALUED
1984

FOR _BHZA #80 PAYMENT #2_

# Bank of America

THA DANIEL B JR REVOCABLE TRUST DTD

# Check images

Account number:

Check number: 3405  |  Amount: $2,250.00

## PURCHASE AGREEMENT — CONFIDENTIAL



BHZA - Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:

Brian Sherman (BHZA#20)
1705 Silver Pine Dr.
Northbrook, IL 60062
United States



EXHIBIT
8

## Agreement

This Purchase Agreement was prepared to describe certain features or aspects of the Ben Heck's Zombie Adventureland™ pinball machine project, and to specify certain terms and conditions relating to the purchase of the game from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

## Project Overview

The project involves the creation of a full-sized custom pinball machine called Ben Heck's Zombie Adventureland™, including both a Limited Edition and a Special Cointaker Edition (collectively, "BHZA") made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of professional pinball designer, John A. Popadiuk, Jr., with the added creativity and backspertise of Ben Heckendorn.

## The Pinball Team

John A. Popadiuk, Jr. is a celebrated pinball designer, vintage pinball collector, mobile software developer and bagatelle historian with many years immersed in the world of pinball. Some of his designs include: Bally's Theatre of Magic, Marvel Heroes vs. Villains, World Cup Soccer, Star Wars: Episode I, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and team building philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and new to be explored and incorporated into the BHZA pinball game alongside fellow modding genius and pin-geek Ben Heck and other talented designers, artists and creative engineers required to create a quality custom pinball.

## The Timeline

Ben Heck's Zombie Adventureland™ pinball will follow a normal pinball development schedule of approximately 14 months at a minimum. You are invited to visit the design team in the studio, when appropriate, to view the progress and see the current full-size hand-made pinball mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this custom project in a reasonable amount of time as stated herein. Any compressions, delays or extensions to the planned schedule, will be communicated in a timely manner.

## Art Direction & Theme

The Ben Heck's Zombie Adventureland™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on hip atomic 1960's retro zombie amusement park theme. The online trailer was created to capture the "verve" or general game concept.

## Pinball Game Features

The Ben Heck's Zombie Adventureland™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen pinball designs. Some of the basic features planned to be included at this time are located here on the website:

**http://pinballinventor.org/benheck/**

Other details will be finalized as the game design process progresses, and all such details are subject to modification or change at the sole discretion of the Company.

© 2012 – Zidware, Inc. – CONFIDENTIAL

**Construction Techniques and Components**

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques, performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the BHZA pinball machine based on specifications to be determined by the Company.

**Usage and Operation**

The Ben Heck's Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The BHZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are planned at this time.

**Basic Development Cost Schedule**

The initial pre-order cost of a custom-designed limited-edition BHZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any BHZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 30, 2012, along with the second refundable deposit of $2,250.00. This will reserve your serial number and get the custom pinball development and production rolling. This deposit (along with the initial $750.00 deposit, or $3,000.00 in total) will be fully refundable within 45 days of receipt of the second deposit by the Company, if you so desire.

The remaining balance due of $6,995 (or $7,995 for the DIY option) will follow in easy-stepped payments during the development cycle. All scheduled payments (except for the second refundable deposit of $2,250.00), will be spread out over the expected development cycle and must be submitted to the Company by the Purchaser within 45 days of their indicated due dates as outlined below. Payment in full will be due on or before the shipment date of your machine.

The basic payment schedule with certain milestones, subject to modification as noted above, is as follows:

| DATE | ITEM/MILESTONE | AMOUNT |
|------|----------------|--------|
| 3/1/2012 | Pre-Order Deposit (100% refundable) | $750 |
| 5/1/2012 | Owner Packages Mailed | |
| 6/1/2012 | Installment One (100% refundable) | $2,250 |
| 11/1/2012 | Installment Two Design Phase | $1,250 |
| 12/1/2012 | Game Review & Refinement | |
| 3/1/2013 | Installment Three Engineering Phase | $2,250 |
| 5/1/2013 | Final Game Evaluation Phase | |
| 6/1/2013 | Prototype Start Estimate | $3,000 |
| 9/1/2013 | Build Node Phase | $495 |
| 10/1/2013 | Build Node Phase 2 | |
| 11/1/2013 | DIY Surcharge (or due on Delivery if earlier) | $1,000 |

**TOTAL:** $9,995.00 (or $10,995.00 for the DIY Option)

© 2012 – Zidware, Inc. – CONFIDENTIAL

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the BHZA pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

**Production Run**

The production run of the Ben Heck's Zombie Adventureland™ pinball machine will be limited to a total of 99 numbered Limited Editions and 25 numbered Special Cointaker Editions that will be offered for sale by the Company to the public. The games will be constructed in nodes of a minimum 25 games at a time.

**Non-Disclosure**

An **optional** Non-Disclosure Agreement ("NDA") accompanies this Purchase Agreement. Purchasers who sign this NDA and return it along with this signed Purchase Agreement and second refundable deposit will be granted limited access to the Company's internal design process. You will be able to visit the Company's design studio, see the various stages of the project, and work with the design team as available. **Please note that Purchasers who do not sign the NDA will not be granted this "behind-the-scenes" access and will only receive general information regarding progress, along with other details as they are revealed to the general public.** The Company may, at its sole discretion, allow individual Purchasers to sign the NDA at a future date and gain this access to the development information, if they choose not sign and return the NDA along with this Purchase Agreement.

**For Purchasers who sign the NDA and submit it to the Company:** Please note that the Ben Heck's Zombie Adventureland™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion. The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party (including other Purchasers who have not signed the NDA) or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and this Purchase Agreement will be canceled (although the terms and conditions of the NDA will continue to remain in effect). The Company may, at its reasonable discretion, retain some or all of the cumulative monetary deposits made by the breaching party as of the date of the breach.

**Customization**

The Ben Heck's Zombie Adventureland™ pinball machines will be manufactured as special custom-made games, and not mass-produced. You, the Purchaser, will have an opportunity in the design process to create, select and/or change certain features, decorative parts, mechanics and/or artwork to make your game unique. These options will be presented to you by the Company as the development schedule proceeds. John Popadiuk and Ben Heck also encourage you, the Purchaser, to suggest options and take part in the design process (subject to receipt of a signed NDA as described above).

**Development Collectibles**

The game development process creates an extraordinary amount of collateral sketches, designs, paperwork, models, test fixtures, art, samples and playfield mechanisms. These items will be made available at the end of the project to buyers at the discretion of the Company.

© 2012 - Zidware, Inc. -- CONFIDENTIAL                    *page 4*

## Warranty

The Company will provide a One-Year Limited Warranty for the BHZA pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation, modification or setup will VOID the warranty. This warranty does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement. Requested parts will be made available for purchase after the games are delivered to respective owners at project completion.

## Liability Information

This product was designed to be delivered and installed into specific HOME LOCATIONS only! Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

## Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the BHZA pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all Purchasers' ideas, comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the BHZA pinball machine will be at the sole discretion and control of the Company.

## Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished BHZA pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at the time of cancellation will be refunded in full. No interest shall be paid on any returned deposits. These same cancellation terms shall apply if the Company terminates this Purchase Agreement with the Purchaser under any of the relevant clauses herein.

## Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

**Severability**

In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

**Entire Agreement**

This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

**Governing Law**

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Ben Heck's Zombie Adventureland™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the BHZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.

Signed: (Purchaser)    _____

Name (print):    _____

Date:    _____

Serial Number:    _____

© 2012 – Zidware, Inc. – CONFIDENTIAL



# Ben Heck's ZOMBIE ADVENTURELAND™
## Pinball in 3D

# SCHEDULE A
### General Pinball Development and Milestones

**PRE-ORDERS**
Agreements

**CONCEPT**
Game Brief
Game Concept

**DESIGN**
Playfield Design
Artwork Concept

**ENGINEERING**
Mechanical
Playfield Whitewood
Software Start

**GAME REVIEW**

**REFINEMENT**
Changes
Software

**EVALUATION**
Final Designs
Final Artwork

**BUILD**
Proto Samples
Build Node Start
Delivery Estimate

| 2012 | | | | 2013 | | | |
|------|------|------|------|------|------|------|------|
| Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |

100% Refunds | No Refunds

**PAYMENTS**
$750 - 3/1
$2250 - 6/1
$1250 - 11/1
$2250 - 3/1
$3000 - 6/1
$495 - 9/1
$1000 (DIY)



● Milestones
▮ Payments

\* Due to the nature of pinball machine design, this basic schedule & estimate may change, altered or revised as required by the project constraints.

©2010 The Styles Check Company   1-800-724-3257   www.styleschecks.com

**BRIAN R. SHERMAN**   05/91
**FRANI SHERMAN**
1705 SILVER PINE DR.
NORTHBROOK, IL 60062

2-7080/2710

0662

Date 2-23-17

Pay to the
Order of __Zidware Inc.__   |   $750.00

Seven hundred fifty and 00/100————— Dollars

**CITIBANK, N.A.**
8400 WEST DEMPSTER
NILES, IL 60714

Memo BHZA #20 Deposit

Chase Bank 031901  150986 920720031612

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JP MORGAN CHASE BANK, N.A.

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

©2010 The Stylex Check Company  1-888-724-3287  www.stylexchecks.com

**BRIAN R. SHERMAN**   05/91
**FRANI SHERMAN**
1705 SILVER PINE DR.
NORTHBROOK, IL 60062

2-7080/2710

0629

Date 5-29-12

Pay to the
Order of  Zidware Inc.                      | $ 2,250.00

Two thousand two hundred fifty and 00/100 ——— Dollars

**CITIBANK, N.A.**
8400 WEST DEMPSTER
NILES, IL 60714

Memo BHZA #20 (installment 1)          B. R

RP



ENDORSE HERE

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY

JPMorgan Chase Bank, N.A.

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE *

©2010 The Styles Check Company   1-880-724-2257   www.styleschecks.com

**BRIAN R. SHERMAN**   05/91
**FRANI SHERMAN**
1705 SILVER PINE DR.
NORTHBROOK, IL 60062

2-7080/2710

0944

Date  2-26-13

Pay to the Order of  **Zidware Inc.**                    $ 1,250.00

One thousand two hundred fifty and 00/100 Dollars

CITIBANK, N.A.
8400 WEST DEMPSTER
NILES, IL 60714

Memo  BHZA #20 (Installment #2)





3oz    1.063"d

Welcome to "Ben Heck's Zombie Adventureland™"

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

May 1, 2012

Welcome!

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

# Reinventing
# Pinball

from the desk of JOHN A POPADIUK JR

# ZIDWARE

### Non-Disclosure Agreement - BHZA v2

This non-disclosure agreement (the "Agreement") is made and entered into as of _____, 2012 by and between Zidware, Inc. (the "Company") and _____ (the "Recipient"). The Company wishes to manufacture and sell pinball machines (the "Product"), and the Company and Recipient are considering, or may have entered into, a business relationship (the "Relationship") in which the Company will sell the Product to the Recipient and/or enter into discussions with the Recipient regarding development and/or manufacturing of certain components of the Product. The Recipient has been provided and may be provided in the future with Confidential Information as defined herein below in order to evaluate or to perform duties in furtherance of such relationship or transaction. In accordance with the Company providing of such Confidential Information, the parties hereby agree as follows:

1. **Definition of Confidential Information.** For purposes of this Agreement, "Confidential Information" shall mean any information or material proprietary to the Company or designated as Confidential Information by the Company which the Recipient may obtain knowledge of or access to as a result of any disclosure pursuant to this Agreement. This Confidential Information includes, but is not limited to, artwork, ideas, technical data, project schematics or drawings, product designs, specifications, software (source code or object code), U.S. and foreign patent applications (to the extent that they are not publicly available), Confidential Materials as defined herein below, and any other information that the Company may identify as Confidential Information either in writing or orally, which relate to the Company's research and development, current and future products, business plans, products, services, customer lists or identities, programming activities, manufacturing, software development, inventions, processes, designs, drawings, engineering features, hardware configuration information, marketing activities, or finances. The Company shall use its reasonable best efforts to reduce Confidential Information to written form and formally designate the material as Confidential Information. Confidential

disclosure of Confidential Information that is in violation of the terms of this Agreement which has come to the Recipient's attention.

4.  **Publicity.**  The Recipient shall not, without prior consent of the Company, disclose to any other party the fact that Confidential Information has been disclosed under this Agreement, that discussions or negotiations are taking place between the parties, or any of the terms conditions, status or other facts with respect thereto, including any terms of this Agreement, except as required by law and then only with prior written notice to the Company.

5.  **Return of Materials.**   Upon request by the Company, the Recipient will return to the Company, without making or taking copies or summaries thereof, all Confidential Materials and other documents pertaining to the business of the Company and the Relationship (apart from a copy of this Agreement) that have been provided by the Company to the Recipient in connection with the Relationship, accompanied by all copies of such documentation or certification of destruction of such copies, if any were made, within ten (10) calendar days after: (i) the Relationship has been terminated; or (ii) receiving a written request for such return of Confidential Materials and other documentation by the Company.

6.  **Patent or Copyright Infringement.**   Nothing in this agreement is intended to grant any rights to the Recipient with regard to any and all of the Company's intellectual property rights, including to any and all patents, patent applications, trademarks, and copyrights owned by or licensed to the Company, unless otherwise agreed upon previously in writing.

7.  **Term.** The commitments and obligations of each party as specified in this Agreement shall survive any termination of the Relationship between the parties for a period of two years after application of Section 5 above.

8.  **Successors and Assigns.**  This agreement shall be binding upon and for the benefits of the undersigned parties, their successors and assigns, provided that Confidential Information of Zidware, Inc., and may not be assigned without the prior written consent of Zidware, Inc. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

9.  **Breach and Damages.**  The Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from a material breach of this Agreement, such as the unauthorized use or disclosure of Confidential Information, and that the Company shall

be entitled, without waiving any other rights or remedies, to seek such injunctive and/or equitable relief as may be deemed appropriate by a court of competent jurisdiction, including injunctive relief against the threatened breach of this Agreement by the Recipient without the necessity of proving actual damages. Further, if Recipient is a purchaser or pre-purchaser of the Product, the Company may, at its sole discretion, cancel and terminate any purchase agreement between Company and Recipient in response to a breach by Recipient, and refund all deposit monies paid by Recipient to Company, with no further compensation due to Recipient.

10. **Governing Law.** This agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules, and shall be binding upon the Recipient in the United States and worldwide.   Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

11. **Remedies.** The Customer agrees that any violation or threatened violation will cause irreparable injury, both financial and strategic, to Zidware and in addition to any and all remedies that may be available, in law, in equity or otherwise, Zidware shall be entitled to injunctive relief against the threatened breach of this Agreement by the Customer without the necessity of proving actual damages.

12. **Scope.**  This Agreement constitutes the entire understanding and agreement of the parties regarding the subject matter hereof and supersedes any prior oral or written understandings or agreements and may not be modified, except in writing signed by both parties.   No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion.   This Agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules.   Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

13. **Severability.**   If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full effect.   Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to duration, scope or subject matter thereof,

such obligations shall be deemed and construed to be reduced to the maximum scope, duration or subject matter allowable by law.

14. **Counterparts.** This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement. No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, this Non-Disclosure Agreement is executed as of the date first above written:

Zidware, Inc.
722 Chestnut Court
Bartlett, IL 60103

By: _____

    John A. Popadiuk, Jr.
    President

_____
    Recipient (print)

By: _____
    Name:
    Title:

Rev4.28.12





UPDATES FOR 2013

# ACTION

# WE REQUIRE THE FOLLOWING SO YOU ARE UP TO DATE.

☐ INSTALL #1
$2250

☑ INSTALL #2
$1250

☐ OTHER _____

## SEND BACK YOUR STUFF PLEASE!



VISIT US TOO!
IN OUR CHICAGO STUDIO

BRAINS

ZIDWARE INC
39 SANGRA COURT
STREAMWOOD, IL 60107

QUESTIONS@ZIDWARE.COM
JOHN > 224-532-0639

bhza_readme_new.pdf

 → **READ ME!**

 **SIGN & RETURN AGREEMENT**
FRONT AND BACK PAGE ON

 **CHECK YOUR SERIAL NUMBER!**

 **SIGN & RETURN NDA**
FRONT AND BACK PAGE ON

 **SEND BACK INSTALLMENT 1**

 NEED HELP? 



PINBALLINVENTOR.ORG/FAQ
QUESTIONS@ZIDWARE.COM
224-532-0839 - CALL JOHN





Ziduara                    Jose Merchaer

(RAZA)    #86

    2-23-13    Ck # 1560    $    750.00
    5-32-12    Ck# 1632    $  2,250.00
    2-1-13     Ck# 1716    $  1,250.00
                           $  4,250.00


(AIW)    3-26-14    Ck# 1885    $  1,895.00
         12-8-14    Ck # 1978    $  3,000.00
                                $  4,895.00


                           $ 9,145  total

EXHIBIT
9



RA2A









Check #1632          Paid :07/11/2012          $2250.00          Check #1632          Paid :07/11/2012          $2250.00



Check #1885        Paid :04/02/2014        $1895.00        Check #1885        Paid :04/02/2014        $1895.00



**Bank**

| ACCOUNT | PAGE |
|---|---|
| XXXXXXXXXXXXXXXX | 5 OF 7 |



Check #1976    Paid (02/11/2015    $3000.00

# Statement



Zidware Inc
38 Sangra Court
Streamwood IL 60107

| Bill To |
|---|
| Joe Newhart |
| 50 Fawn Drive |
| Dallas, PA 18612 |

| Date | Amount Due | Enclosed |
|---|---|---|
| 04/09/14 | $7,970.33 | |

| Date | Description | Amount | Balance |
|---|---|---|---|
| | | | 0.00 |
| 12/31/13 | Balance forward | | |
| 04/02/14 | INV #8 | 9,865.33 | 9,865.33 |
| | --- AW001 $9,865.33 | | |
| | --- Tax: no tax @ 0.0% = 0.00 | | |
| 04/02/14 | PMT #1885 | -1,895.00 | 7,970.33 |

| Current | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | OVER 90 Days Past Due | Amount Due |
|---|---|---|---|---|---|
| $0.00 | $7,970.33 | $0.00 | $0.00 | $0.00 | $7,970.33 |

**Magic Girl™ - Custom Pinball Machine Design**



## PURCHASE AGREEMENT

Date                August 9, 2011

Prepared by:        Zidware Inc. (the Company)
                    John A. Popadiuk, Jr., President
                    722 Chestnut Court
                    Bartlett, IL 60103
                    (224) 532-0639
                    pop@zidware.com

Prepared for:       Chris Wright
                    4880 Deerfield Place
                    Mukilteo, WA 98275
                    United States



EXHIBIT
10

**Agreement**

This Purchase Agreement was prepared for the Purchaser to describe certain features and aspects of the Magic Girl™ pinball machine project, and to specify certain terms and conditions relating to the purchase of this pinball machine from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

**Project Overview**

The project involves the creation of a full-sized custom pinball machine called Magic Girl™, made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of a professional pinball designer, John A. Popadiuk, Jr.

**The Pinball Designer**

John A. Popadiuk, Jr. is a celebrated pinball designer, antique pinball collector, and game historian with over 30 years of experience. John has designed many pinball machines, including: Bally's Theatre of Magic, Marvel Heroes vs. Villains, World Cup Soccer, Star Wars: Episode I, Tales of the Arabian Nights, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and the new, to be explored and incorporated into this new Magic Girl™ pinball game.

**The Timeline**

The Magic Girl™ pinball machine is expected to follow a "typical" pinball development schedule of about 12 months. You may also be invited to visit the designer in his workshop, at his discretion, to view the progress and see the current full-size hand-made pinball samples, mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this project in a reasonable amount of time as stated herein. Any delays or extensions to the planned schedule, which may be due to suppliers, illness, or other acts or events, will be communicated in a timely manner.

**Art Direction & Theme**

The Magic Girl™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on the magic/fantasy theme that has been chosen.

**Pinball Game Features**

The Magic Girl™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen effects, cabinet engineering, integrated software, digital technology, and amazing play mechanisms.

**Construction Techniques and Components**

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. Major components that are fastened to the playfield shall be crafted using parts similar to those found on a 1990s pinball machine. Common "era" hardware such as fasteners, electrical parts, flipper assemblies, ball scoops, brackets, motors, ball shooter devices, etc., may be fabricated or procured from current suppliers of 1990s-style parts to complete the look and feel of the pinball machine.

**Non-Disclosure**

The Magic Girl™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion.

The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to execute the NDA together with this Purchase Agreement (collectively, the "Agreements") and to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and cumulative monetary deposits made as of the date of the breach.

**Early Notice for Future Games**

The Purchaser shall receive early notification on any "up and coming" new pinball machine titles that may be developed and offered for sale by the Company in the future. Purchasers may exercise their option to reserve a serial number for future releases by submitting the stated deposit within the purchasing time limits described for each new game title.

**Usage and Operation**

The Magic Girl™ pinball machine is designed for HOME USE ONLY and is not intended for commercial installation, tournaments, or public display. The Magic Girl™ pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, with no other country settings will be available at this time.

**Cost Schedule**

The initial pre-order cost of a custom-designed limited-edition MAGIC GIRL™ pinball machine (FOB Chicago IL) is $15.995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional.

Upon receipt by the Company of an initial refundable deposit of $500.00, the Company will reserve your serial number for the limited run of the MAGIC GIRL™ pinball machine (for the period of time referenced in the next sentence) and send you this Purchase Agreement along with the NDA referenced above. You, the Purchaser, will be required to send back—or deliver personally—this signed Purchase Agreement and the executed NDA along with a second deposit of $7500.00 within 14 days of receiving these Agreements. This will reserve your serial number and get the custom pinball development and production rolling.

The remaining balance due of $7995.00 (USD) will follow in easy-stepped payments during the development cycle. All scheduled payments, which will be spread out over the expected development cycle, must be submitted to the Company by the Purchaser within 30 days of their indicated due dates as outlined below.

The basic payment schedule, subject to modification as noted above, is as follows:

| Date | Description | Amount |
|---|---|---|
| 7/21/2011 | Initial Deposit (fully refundable within 14 days of receiving this Purchase Agreement) | $500.00 |
| 8/25/2011 | Secure Deposit (fully refundable within 30 days of submission to the Company) | $7500.00 |
| 10/25/2011 | Final design brief and master docs completed | $1000.00 |
| 12/25/2011 | Game concepts Pencil Sketches | $1000.00 |
| 2/25/2012 | Cabinet and Playfield Sketch Model | $2000.00 |
| 4/25/2012 | Game artwork development & colors | $1000.00 |
| 6/25/2012 | Working game maquette | $2000.00 |
| 8/25/2012 | Completed final part review & assembly | $995.00 |
| 10/25/2012 | Estimated completion date for game for delivery | |

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the Magic Girl™ pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

© 2011 - Zidware, Inc. – CONFIDENTIAL

**Governing Law**

Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**

The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Magic Girl™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the Magic Girl™ pinball machine is completed and ready to be delivered to the Purchaser. John A. Popadiuk, Jr. may be available to personally deliver and assist in setup at the Purchaser's request and expense.

**Counterparts**

This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement. No counterpart shall be effective until each party has executed at least one counterpart.

Signed: (Purchaser)   *Christopher V. Wright*

Name (print):   *Christopher V. Wright*

Date:   *August 13TH 2011*

Serial Number:   *#0018*

© 2011 – Zidware, Inc. – CONFIDENTIAL



**Welcome "Magic Girl" - A New Pinball Design by John Popadiuk**

Officially announced is my first new custom pinball creation to be developed for excited fans & interested pinball collectors. Let me introduce:

**"MAGIC GIRL™"**

Created in the same spirit that I built some of my other games like Tales of the Arabian Nights™, Cirqus Voltaire™, or Theatre of Magic™, this game will be styled in an updated 1990's classic pinball look with drawn game art, silkscreened playfields, technology-based lighting, enchanting game features, full backglass, magnetic ball tricks, smooth playing geometry and larger-than-life rules that mark my style.

Currently I am building only a handful of games in this limited series. These "one-of-a-kind" original pinball art designs will be authentic and very classic. Your game will be numbered and personally signed by me prior to delivery.

If you are looking for a next amazing "Popadiuk" game, hand crafted in the form and artistic expression of my previous designs, then "Magic Girl" is something you are really going to love.

Please visit the Pinball Inventor website (pinballinventor.org) to learn more about my custom pinball work, or contact me personally with any questions!

**Believe!**

John A. Popadiuk, Jr
August, 9  2011
Chicago, IL USA



3oz     1.063"d

Dear Chris:

Well, as a valued Magic Girl owner and supporter of my pinball business, I wanted to send this letter to you with development updates and some of my future plans. I can never thank everyone enough for their faith and support since I began to dream about building pinball machines again.

Overall I am *very* happy with the development and building of Magic Girl and our custom pinball venture over the last year. Has it taken more time then I every imagined? Yes! Has it been a difficult road to once again create some of the best pinball on earth? Absolutely. Has all of this cost much more than was originally budgeted for? Without a doubt, there is no arguement there.

Currently we are completing the building of the first prototype Magic Girl games, with all real parts, cabinets, brackets, cables, hardware and rockin' firm software. Once they are complete, I will organize an online reveal event for all of you owners to see progress, provide feedback, and decide if you still want this game. (I'm confident you will!)  Our policy has always been that folks who decide not to proceed with their purchase have an option to back out. I believe I can build a game that cannot be refused. So far, all the comments, opinions and feedback have been positive and helpful. So, as a designer, I am tickled and feel things are on the right track.

At WMS and at BALLY, we were really spoiled as designers and pinball engineers. Never spared equipment, supplies or wishes as management wanted us to dream big and execute. We were supplied with a grand support network of other specialists, programmers, techs, engineers, artists, quality assurance teams, and a ton of manufacturing support. All that was asked of us was to build the next big game to earn blockbusters on location. We did not build for the home market or personal customer, which is an important part of today's customer base.



PINBALL USA

# Reinventing
# Pinball

• from the desk of JOHN A POPADIUK JR

**PINBALLINVENTOR.ORG**

Looking back on it all now, we did work extremely hard back in the 1990s, but also had a really stellar company foundation in place. The best managers and co-workers ever. Can that be re-created today for a smaller maker of custom games? Yes, I believe it can, and a good foundation is already in place, but on a much smaller scale. My varied experience and past knowledge have given our startup company the "smarts" it needs to survive and create pinball as never before. Building good teams of design assistants and associates is a far greater challenge. I am watching how the other companies are operating and working within this new surge of pinball. My rep and work practices are vital, as well as figuring out how best to work with others. This is always ongoing.

Starting up, as many other "boutique" pinball makers are also doing, is the easy part. Put up a web page, go on Pinside or RGP, come up with a crazy idea and go! People will hang in for a while as the energy is there, but eventually you have to show your ideas, design, team and plan. People want to see the goods. Putting a pinball playfield in a cabinet is kinda easy, but making it a classic, great, fun, and amazing game is not. All of this "building" has come at cost of time (long hours) and money. On the surface I would say about 3x more (both time and money!) than we ever imagined to design and develop arcade quality pinball in a boutique setting.

Making custom pinball is hugely expensive in all aspects, personal and financial!

On Magic Girl, after the initial hype and dust settled, I went about trying to re-invent how to make a great game and re-create my team of old. How did we do it? For the most part, I have many former WMS engineers and co-workers assisting today in our games, and a new crew of young, super energetic talent. The best in my opinion. The games are being developed by much of the same crew that built CV, Totan and ToM. All of our art is made by guys half my age, but I am teaching them all I know on how to make a classic pinball, and sharing all my secrets. My games have a certain "fun" quality as I have a creative approach that I like and seems to work well. And my current team is working this way too. So we have many new people involved as well, under my direction.

But early on, we hit many roadblocks in technology, designing and "unforseen" glitches caused by other people or vendors that design or make parts for the other 2 "big" pinball companies. We wasted a lot of time (unavoidably) in trying to continue building relationships, getting quotes, and trying to get parts and work completed, only to be shut down or "warned" to stay off of "their" IP or tooling, while receiving other veiled threats. You would not believe it. Sad, but true.

I had never imagined this type of negative obstruction would happen, as it is only pinball. So a change of tactics was in order and we decided to create more "original" IP, protect it with patents, and lock down the studio to folks just wanting to see or photgraph everything for posting to Facebook, Pinball News,Pinside, etc.

Fortunately we have been able to assemble a new pool of people, practices and vendors who now make our high-quality (Patented) cabinets, playfields, metal parts, wire goods, pcbs and printed artwork. Interestingly, our IP and secret developments are kept close now, as all this is our new "foundation" for future pinball making. This new platform of possibilities really makes up

for the vendors that have caused us delays and wasted our time and money. I have had to tighten up things business-wise.

For owners like you, I always remind everyone that I am working ceaselessly on this project to make great pinball again, and not to get rich. The longs hours I spend are for the love of pinball and for you, my fans, and your believing in this project from day one.

Doing all of this is beyond the normal scope of daily work for most, but the long road is something I can manage and thrive in. I think all the boutique makers today would never get involved if they really knew what it takes.

All is very challenging for me but doable, as I never tire nor need a break (much). it's just my makeup that drives me to a creative end. I feel I am making the best games I have ever made with my current group, and am an owner as well. Are we "done"? No, but we are getting much closer! But in all of this I also need to make a nominal profit to survive, feed my family, adapt and grow as a business. Pinball is very expensive to develop at the bottom line--this is the practical reality in all of this game building and something that was less in the forefront at WMS as I never paid the invoices. SO, in view of all this:

I would like to make available and release a limited number of additional Magic Girl games to people that we have on a reserve list. This added income would go directly against and cover development costs, funding for all new custom parts and into the intial foundation costs in building Zidware Custom Pinball. It would be a "soft" quiet event with no posting to forums or public sites. We would simply let individuals know that a game has come available.

In all of this I have realized that making such a low number of games is not really practical to pay for all development and associated costs, including the small part runs and custom components. It may work out financially if you are making a "hobby" type pinball, with wood ballguides, pvc pipe and homemade parts like others are doing as I have seen, but not a properly engineered or designed arcade-style game by John Popadiuk.

The extra release would take the limited run to 50 games total, and be sufficient to really cover the development of the pinball platform while allowing us to grow a bit as we continue making pinball. We are on a long term plan to make great quality product for years, slowly, properly and creatively. Even at 50 games it is a really rare game that most people will not ever be able to own without paying a lot more.

Thank you for your time and please call me to dicsuss further ideas and options. I look forward to talking to all owners as I am on call everyday, and your thoughts and input do matter.

Sicerely,
John Popadiuk



3oz     1.063"d

May 1, 2012

### Welcome to "Ben Heck's Zombie Adventureland™"

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

Welcome!

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

# Reinventing
# Pinball

• *from the desk of* JOHN A POPADIUK JR



# READ ME!

 **SIGN & RETURN AGREEMENT**
FRONT AND BACK PAGE OK

 **CHECK YOUR SERIAL NUMBER!**

 **SIGN & RETURN NDA**
FRONT AND BACK PAGE OK

 **SEND BACK INSTALLMENT 1**





NEED HELP?

PINBALLINVENTOR.ORG/FAQ
QUESTIONS@ZIDWARE.COM
224-532-0639 - CALL JOHN



3oz     1.063"d

Dear Chris:

Well, as a valued Magic Girl owner and supporter of my pinball business, I wanted to send this letter to you with development updates and some of my future plans. I can never thank everyone enough for their faith and support since I began to dream about building pinball machines again.

Overall I am *very* happy with the development and building of Magic Girl and our custom pinball venture over the last year. Has it taken more time then I every imagined? Yes! Has it been a difficult road to once again create some of the best pinball on earth? Absolutely. Has all of this cost much more than was originally budgeted for? Without a doubt, there is no arguement there.

Currently we are completing the building of the first prototype Magic Girl games, with all real parts, cabinets, brackets, cables, hardware and rockin' firm software. Once they are complete, I will organize an online reveal event for all of you owners to see progress, provide feedback, and decide if you still want this game. (I'm confident you will!) Our policy has always been that folks who decide not to proceed with their purchase have an option to back out. I believe I can build a game that cannot be refused. So far, all the comments, opinions and feedback have been positive and helpful. So, as a designer, I am tickled and feel things are on the right track.

At WMS and at BALLY, we were really spoiled as designers and pinball engineers. Never spared equipment, supplies or wishes as management wanted us to dream big and execute. We were supplied with a grand support network of other specialists, programmers, techs, engineers, artists, quality assurance teams, and a ton of manufacturing support. All that was asked of us was to build the next big game to earn blockbusters on location. We did not build for the home market or personal customer, which is an important part of today's customer base.


PINBALL USA

**Reinventing
Pinball**

· from the desk of JOHN A POPADIUK JR

PINBALLINVENTOR.ORG

Looking back on it all now, we did work extremely hard back in the 1990s, but also had a really stellar company foundation in place. The best managers and co-workers ever. Can that be re-created today for a smaller maker of custom games? Yes, I believe it can, and a good foundation is already in place, but on a much smaller scale. My varied experience and past knowledge have given our startup company the "smarts" it needs to survive and create pinball as never before. Building good teams of design assistants and associates is a far greater challenge. I am watching  how the other companies are operating and working within this new surge of pinball. My rep and work practices are vital, as well as figuring out how best to work with others. This is always ongoing.

Starting up, as many other "boutique" pinball makers are also doing, is the easy part. Put up a web page, go on Pinside or RGP, come up with a crazy idea and go! People will hang in for a while as the energy is there, but eventually you have to show your ideas, design, team and plan. People want to see the goods. Putting a pinball playfield in a cabinet is kinda easy, but making it a classic, great, fun, and amazing game is not. All of this "building" has come at cost of time (long hours) and money. On the surface I would say about 3x more (both time and money!) than we ever imagined to design and develop arcade quality pinball in a boutique setting.

Making custom pinball is hugely expensive in all aspects, personal and financial!

On Magic Girl, after the initial hype and dust settled, I went about trying to re-invent how to make a great game and re-create my team of old. How did we do it? For the most part, I have many former WMS engineers and co-workers assisting today in our games, and a new crew of young, super energetic talent. The best in my opinion. The games are being developed by much of the same crew that built CV, Totan and ToM. All of our art is made by guys half my age, but I am teaching them all I know on how to make a classic pinball, and sharing all my secrets. My games have a certain "fun" quality as I have a creative approach that I like and seems to work well. And my current team is working this way too. So we have many new people involved as well, under my direction.

But early on, we hit many roadblocks in technology, designing and "unforseen" glitches caused by other people or vendors that design or make parts for the other 2 "big" pinball companies. We wasted a lot of time (unavoidably) in trying to continue building relationships, getting quotes, and trying to get parts and work completed, only to be shut down or "warned" to stay off of "their" IP or tooling, while receiving other veiled threats. You would not believe it. Sad, but true.

I had never imagined this type of negative obstruction would happen, as it is only pinball. So a change of tactics was in order and we decided to create more "original" IP, protect it with patents, and lock down the studio to folks just wanting to see or photgraph everything for posting to Facebook, Pinball News,Pinside, etc.

Fortunately we have been able to assemble a new pool of people, practices and vendors who now make our high-quality (Patented) cabinets, playfields, metal parts, wire goods, pcbs and printed artwork. Interestingly, our IP and secret developments are kept close now, as all this is our new "foundation" for future pinball making. This new platform of possibilities really makes up

for the vendors that have caused us delays and wasted our time and money. I have had to tighten up things business-wise.

For owners like you, I always remind everyone that I am working ceaselessly on this project to make great pinball again, and not to get rich. The longs hours I spend are for the love of pinball and for you, my fans, and your believing in this project from day one.

Doing all of this is beyond the normal scope of daily work for most, but the long road is something I can manage and thrive in. I think all the boutique makers today would never get involved if they really knew what it takes.

All is very challenging for me but doable, as I never tire nor need a break (much). it's just my makeup that drives me to a creative end. I feel I am making the best games I have ever made with my current group, and am an owner as well. Are we "done"? No, but we are getting much closer! But in all of this I also need to make a nominal profit to survive, feed my family, adapt and grow as a business. Pinball is very expensive to develop at the bottom line--this is the practical reality in all of this game building and something that was less in the forefront at WMS as I never paid the invoices. SO, in view of all this:

I would like to make available and release a limited number of additional *Magic Girl* games to people that we have on a reserve list. This added income would go directly against and cover development costs, funding for all new custom parts and into the intial foundation costs in building Zidware Custom Pinball. It would be a "soft" quiet event with no posting to forums or public sites. We would simply let individuals know that a game has come available.

In all of this I have realized that making such a low number of games is not really practical to pay for all development and associated costs, including the small part runs and custom components. It may work out financially if you are making a "hobby" type pinball, with wood ballguides, pvc pipe and homemade parts like others are doing as I have seen, but not a properly engineered or designed arcade-style game by John Popadiuk.

The extra release would take the limited run to 50 games total, and be sufficient to really cover the development of the pinball platform while allowing us to grow a bit as we continue making pinball. We are on a long term plan to make great quality product for years, slowly, properly and creatively. Even at 50 games it is a really rare game that most people will not ever be able to own without paying a lot more.

Thank you for your time and please call me to dicsuss further ideas and options. I look forward to talking to all owners as I am on call everyday, and your thoughts and input do matter.

Sicerely,
John Popadiuk



3oz          1.063"d

### Welcome to "Ben Heck's Zombie Adventureland™"

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

May 1, 2012

Welcome!

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

# Reinventing
# Pinball

• *from the desk of* JOHN A POPADIUK JR

 # ☺ READ ME!

 ## SIGN & RETURN AGREEMENT
### FRONT AND BACK PAGE OK

 ## CHECK YOUR SERIAL NUMBER!

 ## SIGN & RETURN NDA
### FRONT AND BACK PAGE OK

 ## SEND BACK INSTALLMENT 1

 NEED HELP?





PINBALLINVENTOR.ORG/FAQ
QUESTIONS@ZIDWARE.COM
224-532-0639 - CALL JOHN



# Purchase Order

**August 9, 2011**

**Buyer**
Chris Wright (#0018)
Candice Pfeister
4880 Deerfield Place
Mukilteo, WA 98275

| | | |
|---|---|---|
| 1 | **Custom "Magic Girl" Pinball Machine** | $15,995.00 (usd) |

**Basic Features Known At This Time***
- arcade full-size game
- 21" x 46" playfield size
- silk screened panels
- multi-level ball play
- realistic ball physics
- kicking rubber parts
- brilliant style backglass
- 3-5 ball game play
- pop action bumpers
- independent flippers
- touch control buttons
- led panel illumination
- rod spring plunger
- custom play features
- led dot display & more!

| | |
|---|---|
| Initial Deposit | $500. (usd) |
| Secure Deposit (please remit this amount today) | $7500. (usd) |
| Remaining Payments Due Per Schedule | $7995. (usd) |



Zidware, Inc
722 Chestnut Court
Bartlett, Illinois
60103 USA

EIN Number
26-4480632

* Due to the nature of a custom-made pinball machine, features are subject to change or alteration at the discretion of this artist / designer.

* Buyer is responsible for Freight + Sales Tax



**PINBALL USA**

1.21.2013

Hello,

Just wanted to let you know you Magic Girl account is up to date at this time.

Remember to check our development blog for all news and game updates. We are currently in the process of building the first 3 prototype games with all correct parts and fittings. This is a huge milestone and will be amazing once we plug them in to play.

Please call me at anytime!

John Popadiuk

**ZIDWARE INC**
722 CHESTNUT COURT
BARTLETT, ILLINOIS
60103

**pinballinventor.org**





12.25.2011

The last 3 months have been really a whirlwind as progress on Magic Girl™ moves forward. Since the launch of this new custom pinball venture, many people have come out of the community to offer advice, support and hands-on help. The work is really fun, and extremely difficult at the same time. Nothing like this has ever been attempted, and I am absolutely being challenged in everyway as a pinball designer and engineer.

For the most part this is a complete ground up design with all the components being created just for these games. My goal of using primarily USA vendors and custom parts seems to be actually working out. In the country there is a huge infrastructure of small to mid-size companies that make the basics like: wire, plastic, steel, electronics, printed items and wood cabinet parts needed for pinball. Not to mention all the industries that have appeared with the advent of 3d printing and rapid prototyping. So apart from creating something new in pinball, we are also supporting many families in this venture.

As an update, I did respond back to the folks at Stern earlier this month and turned down their offer to get in their mix. I approached them originally 2 years ago after the new investor's took over and was "very" surprised they did not bring me in then to create pinball and bolster their reputation at that time. Today, it's not a good decision on many fronts for me to design for them, and would impact my custom work and future build plans to meet their "tight" schedules and "design" methodology.

On the horizon though are some new opportunities with other "pinball" partners that have stepped forward and want to work together and help support my vision for "hyper-creative" pinball game design in mechanical or digital formats, while creating a good business foundation for future work. I will focus in this direction.





One of those people is Ben Heck (The Ben Heck Show), a nationally known electronics wizard, modder, pinballhead and overall nice guy. We are supporting each other in our pinball work. Looks like my next new custom game design will be "Ben Heck's Zombie Adventureland" to be released for pre-sale in 2012. It will be a 1950s retro mix of zombies, atomic power, girls, 3d, mystery science all in an old amusement park setting. there will be more user-custom features, in effect allowing every owner to have a game built their own special way. The BHZA game has already gained us some national press on Engadget, Geek.Com and Yahoo Finance, helping me to build a more diverse design team and support network. A win-win situation for pinball. As an original MG owner you automatically have a game reserved and any other future titles if you wish. More details will be sent as they become available.

For Magic Girl we will move to clean up the basic rule and feature sheets to be put on the web and get the first whitewood built and wired for play. This process is slower this time as many components do not exist off the shelf to use. It's mostly custom work.

As 2011 comes to a close I will look back on all the things I have been doing right and work on the items that held me back too. As a reminder your next installments are due at this time for October and December. Please call or email me with any other questions. And we also need to plan a studio visit for you in the new year, to see all the work and fantastic development in progress if you have not visited yet. Designer for a day!

I will be calling you soon to chat and talk pinball. In the next 5 years, we are going to see a real re-invention in pinball and the hobby as a whole. Pinball will never go away, it just seems to float with the times and appear again in some new magical form! Glad I am part of it, and 2012 will see a huge push in this way.

Wishing the best during the Holidays and in the New Year to you and your family!

John Popadiuk

**ZIDWARE**

CUSTOM PINBALL USA

"We make pinball like no one else on the Planet"

The Pinball Inventor :: Custom Pinball :: Design Jobs                     7/20/13 10:52 AM

 basics • portfolio • mods • ipad scrapbook • game poll • facebook

Custom Pinball Machines > Made In The U.S.A.



[ MORE ]

# Banking

## SUBMITTING PAYMENTS FOR CUSTOM GAMES

Currently we are no longer using PayPal as a main source and require a check be mailed for your payments or a direct wire transfer. Please submit payments to:

BANK CHECKS
ZIDWARE INC C/O
722 Chestnut Court, Studio 3b
Bartlett, IL 60103 USA
Attn: ZIDWARE PAYMENTS


MAIN BANK TRANSFER
Zidware Inc - Chase Bank
Branch 986 - Streamwood Illinois USA
SWIFT - CHASUS33
ROUTING - 071000013
ACCOUNT - 804408920
ATTN: ZIDWARE PAYMENTS

TAX BANK TRANSFER
Zidware Inc - Chase Bank
Branch 986 - Streamwood Illinois USA
SWIFT - CHASUS33
ROUTING - 071000013
ACCOUNT - 995318292
ATTN: ZIDWARE TAX PAYMENTS

Thank you kindly! We will get back to you once your check has been
processed and your account updated. Please allow 7-10 working days

processed and your account updated. Please allow 1-10 working days.

**Questions?**

All Pinball Designs ©2013 Zidware Inc
Contact The Pinball Inventor!

Payments

3/22/13 10:30 AM



pinball basics • design • mod city • pinball scrapbook • glossary



Custom Pinball Machines > Made In The U.S.A.

[ MORE ]

ZOMBIE ADVENTURELAND PAYMENT SCHEDULE (3/20) r1

Please review the current updated payment schedule below.



PAYMENT SCHEDULE REVISED

| Orig. Date | Amount | New Date |
|---|---|---|
| 3/12 | Deposit - $750 | 3/12 |
| 6/12 | Payment #1 - $2250 | 6/12 |
| 11/12 | Payment #2 - $1250 | 11/12 |
| 3/13 | Payment #3 - $2250 | 6/13 |
| 6/13 | Payment #4 - $3000 | 9/13 |
| 9/13 | Payment #5 - $495 | 12/13 |
| 9/13 | Payment #6 - $1000 DIY | 12/13 |
| 12/13 | Payments Due Complete | 3/14 |

Please contact us with any questions. Submit your payments to:

Zidware Inc.
39 Sangra Court
Streamwood, IL 60107 USA
attn: BHZA - John Popadiuk

Please call me with any questions.
(224) 532-0639

http://pinballinventor.org/games/zombies/schedule_p.html

Payments

IF YOU REQUIRE BANK TRANSFER INFO CLICK HERE

Thank you kindly!



©2013 Zidware Inc: Patents Pending



**Patricia Meinke**

| | |
|---|---|
| **From:** | Christopher Wright <christophervwright@me.com> |
| **Sent:** | Wednesday, June 24, 2015 12:26 AM |
| **To:** | Patricia Meinke |
| **Subject:** | Re: Zidware |
| **Attachments:** | Magic Girl Payments.numbers; Online Payment Options.pdf; Payment Schedule.pdf; RAZA (BHZA) Payments.numbers |

**CHRISTOPHER WRIGHT
CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA  98275-4890

PAY TO THE
ORDER OF   Zidware  Inc

Three Thousand Fifty Dollars

**CHASE**
JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO  BHZA #18





**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA   98275-4890



PAY TO THE
ORDER OF    Ziduare

One thousand dollar

**CHASE** ⬡

JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO    BHZA #18                              Canc

5

**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA  98275-4890

19-
3
6

DAT

PAY TO THE
ORDER OF  Zidware Inc.

Seven Thousand Five Hundred D

**CHASE**

JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO  Magic Girl #0018 Deposit          Christoph

7



CHRISTOPHER WRIGHT
CANDICE PFEISTER
4880 DEERFIELD PL.
MUKILTEO, WA   98275-4890

PAY TO THE
ORDER OF   *Zidware*

*One thousand dollars —*

CHASE
JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO   *MG #18 payment*            *Candi*



**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA  98275-4890

PAY TO THE
ORDER OF   Zidware

One thousand dollars

**CHASE** ⬤

JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO   MG #18 payment                          Can

**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA   98275-4890

PAY TO THE
ORDER OF   Zidware

Two thousand

**CHASE** ⬡

JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO   MG #18 Feb payment          Can



**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA  98275-4890

PAY TO THE ORDER OF _Zidware Inc._

_One Thousand Dollars_ 00/100

**CHASE ◆**
JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com

MEMO _Magic Girl #18_ _April installment_

JPMorganChaseBank 050107 150986 9207200

**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA  98275-4890

PAY TO THE
ORDER OF _Zidware Inc._

_Two Thousand Dollars_

**CHASE** ◆

JPMorgan Chase Bank, N.A
Seattle, Washington 98101
www.Chase.com

MEMO _Magic Girl #18_



**CHRISTOPHER WRIGHT**
**CANDICE PFEISTER**
4880 DEERFIELD PL.
MUKILTEO, WA   98275-4890

PAY TO THE
ORDER OF   *Zidware*

*Nine hundred ninety five do*

**CHASE**
JPMorgan Chase Bank, N.A.
Seattle, Washington 98101
www.Chase.com
MEMO  *MG #18 final payment*                    *Canc*

ZIDWARE INC
722 CHESTNUT COURT
BARTLETT, IL 60103

accounts@zidware.com



| Bill To |
|---|
| Michael Engel (MG0009) |
| 150 Lake Shore Rd |
| Boxford, MA 01921 |

| Date | Description | Amount | Balance |
|---|---|---|---|
| | Balance forward | | 0.00 |
| | MAGIC GIRL- | | |
| 08/01/11 | PMT | -500.00 | -500.00 |
| 08/01/11 | | 15,995.00 | 15,495.00 |
| 08/16/11 | PMT #1626 | -7,500.00 | 7,995.00 |
| 11/18/11 | PMT #1630 | -2,000.00 | 5,995.00 |
| 02/18/12 | PMT #1638 | -2,000.00 | 3,995.00 |
| 04/29/12 | PMT #1646 | -1,000.00 | 2,995.00 |
| *7/10/12* | *1655* | *-2,000.00* | *995.—* |
| | *TOTAL PAID ON MAGIC GIRL* | *$15,000.—* | |
| | *TOTAL PAID ON Z.A.* | *4,254.—* | |
| | *TOTAL* | *$19,254.—* | |

Sales Tax and Delivery are additional



**MICHAEL K. ENGEL**
150 LAKE SHORE ROAD
BOXFORD, MA  01921

53-179/113
0402787824

1626

DATE  8/16/11

PAY TO
THE ORDER OF  ZIDWARE INC                                    $ 7500.00

SEVEN THOUSAND FIVE HUNDRED       DOLLARS

**⬦Eastern Bank**
Boston, MA 02110
eastembank.com
1-800-EASTERN

MEMO _____

Tracer: ▬▬▬▬  Amt: $7,500.00 - 8/23/2011

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

Tracer: 18085463 - Amt: $7,500.00 - 8/23/2011



**MICHAEL K. ENGEL**
150 LAKE SHORE ROAD
BOXFORD, MA  01921

53-179/113
0402787824

1630

DATE 11-18-11

PAY TO THE ORDER OF  ZIDWARÉ INC.   $ 2000.00

TWO THOUSAND & 00/100   DOLLARS

**Eastern Bank**
Boston, MA 02110
easternbank.com
1-800-EASTERN

MEMO M.G. #009  10/25, 11/25

Michael K Engel

— Amt: $2,000.00 - 1/9/2012

— Amt: $2,000.00 - 1/9/2012



**MICHAEL K. ENGEL**
150 LAKE SHORE ROAD
BOXFORD, MA   01921

53-179/113
0402787824

1638

DATE  2-18-12

PAY TO THE ORDER OF   Zidware Inc.          $ 2000 00

Two Thousand + 00/100          DOLLARS

⊜Eastern Bank
Boston, MA 02110
easternbank.com
1-800-EASTERN

MEMO  M6  #009  2/25/12

Amt: $2,000.00 - 3/8/2012

Amt: $2,000.00 - 3/8/2012



**Amt: $750.00 – 3/19/2012**



**Amt: $750.00 – 3/19/2012**



**MICHAEL K. ENGEL**
150 LAKE SHORE ROAD
BOXFORD, MA  01921

53-179/113
0402787824

1646

DATE 4/29/12

PAY TO THE ORDER OF   ZIDWARE INC                    $ 1000.00

ONE THOUSAND + 00/100                    DOLLARS

⦿ **Eastern Bank**   Boston, MA 02110
easternbank.com
1-800-EASTERN

MEMO  # 009 M.G.

- Amt: $1,000.00 - 5/31/2012

- Amt: $1,000.00 - 5/31/2012



**MICHAEL K. ENGEL**
150 LAKE SHORE ROAD
BOXFORD, MA  01921

53-179/113
0402/8/824

1650

DATE 6/1/12

PAY TO THE ORDER OF  ZIDWARE                    $ 2250.00

Two Thousand Two Hundred Fifty ___ DOLLARS

**Eastern Bank**
Boston, MA 02110
easternbank.com
1-800-EASTERN

MEMO  2 A #6

Michael K Engel

Amt: $2,250.00 – 6/25/2012

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

Amt: $2,250.00 – 6/25/2012



Amt: $2,000.00 - 8/20/2012



- Amt: $2,000.00 - 8/20/2012



MICHAEL K. ENGEL *BH2A WG*
150 LAKE SHORE ROAD
BOXFORD, MA   01921

53-179/113
0402767824

1681

DATE *2 - 4 - 13*

PAY TO THE ORDER OF   *ZIDWARE*                    $ *1250.00*

*ONE THOUSAND TWO HUNDRED FIFTY 00/100*   DOLLARS

**Eastern Bank**   Boston, MA 02110
easternbank.com
1-800-EASTERN

MEMO   *ZA #2*

*[signature] Michael K C*

0 - Amt: $1,250.00 - 2/22/2013

JPMorgan Chase Bank, N.A.

ENDORSE HERE

0089090 - Amt: $1,250.00 - 2/22/2013

# Invoice



Zidware Inc
39 Sangra Court
Streamwood IL 60107

Bill To
Gavin Wong
18568 Oaklawn Lane
Yorba Linda CA 92886
626-379-5138

| Date | Invoice No. | P.O. Number | Terms | Project |
|------|-------------|-------------|-------|---------|
| 07/29/14 | 20 | | | |

| Item | Description | Quantity | Unit | Total Amount |
|------|-------------|----------|------|--------------|
| RZ002 | Retro Atomic Zombie Adventureland Custom Pinball - CT Edition | | 9,995.00 | 9,995.00 |
| | CT#14 TRANSFER | | | |
| | Sales Tax | | 0.00% | 0.00 |

EXHIBIT

12

Applicable Taxes and Shipping Not Included

| Total | $9,995.00 |

# Bankof America

GAVIN K WONG  |  Account # ████████████  |  August 20, 2014 to September 18, 2014

## Check images

**Account number:** ████████████

Check number: 1119  |  Amount: $4,995.00





3oz        1.063"d

Welcome to "Ben Heck's Zombie Adventureland™

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

May 1, 2012

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

Welcome!

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

# Reinventing
# Pinball

• from the desk of JOHN A POPADIUK JR



 

 SIGN & RETURN AGREEMENT

FRONT AND BACK PAGE ON

 CHECK YOUR SERIAL NUMBER!

 SIGN & RETURN NDA

FRONT AND BACK PAGE ON

 SEND BACK INSTALLMENT 1







PINBALLINVENTOR.ORG / FAQ
QUESTIONS @ ZIDWARE.COM
224-532-0633 — CALL JOHN

Alain Mueller (BH-ZA#23)
Parkstrasse 36
CH-4102 Binningen
Switzerland

Z-Players Inc - 722 Chestnut Court Bartlett, IL 60103 USA

CUSTOM PINBALL USA

# ZIDWARE

### Non-Disclosure Agreement - BHZA v2

This non-disclosure agreement (the "Agreement") is made and entered into as of _____, 2012 by and between Zidware, Inc. (the "Company") and _____ (the "Recipient"). The Company wishes to manufacture and sell pinball machines (the "Product"), and the Company and Recipient are considering, or may have entered into, a business relationship (the "Relationship") in which the Company will sell the Product to the Recipient and/or enter into discussions with the Recipient regarding development and/or manufacturing of certain components of the Product. The Recipient has been provided and may be provided in the future with Confidential Information as defined herein below in order to evaluate or to perform duties in furtherance of such relationship or transaction. In accordance with the Company providing of such Confidential Information, the parties hereby agree as follows:

1. **Definition of Confidential Information.** For purposes of this Agreement, "Confidential Information" shall mean any information or material proprietary to the Company or designated as Confidential Information by the Company which the Recipient may obtain knowledge of or access to as a result of any disclosure pursuant to this Agreement. This Confidential Information includes, but is not limited to, artwork, ideas, technical data, project schematics or drawings, product designs, specifications, software (source code or object code), U.S. and foreign patent applications (to the extent that they are not publicly available), Confidential Materials as defined herein below, and any other information that the Company may identify as Confidential Information either in writing or orally, which relate to the Company's research and development, current and future products, business plans, products, services, customer lists or identities, programming activities, manufacturing, software development, inventions, processes, designs, drawings, engineering features, hardware configuration information, marketing activities, or finances. The Company shall use its reasonable best efforts to reduce Confidential Information to written form and formally designate the material as Confidential Information. Confidential

Information shall not include information, technical data or know-how that: (i) is in the possession of the Recipient at the time of disclosure by the Company as demonstrated by the Recipient's files and records immediately prior to the time of disclosure; or (ii) becomes part of the public knowledge or literature prior to or after the time of disclosure, other than as a result of any improper inaction or action of the Recipient; or (iii) is approved by the Company, in writing, for release or public disclosure; or (iv) is required to be disclosed by law or by order of any court

2.    **Confidential Materials.**  For purposes of this Agreement, "Confidential Materials" shall mean all tangible materials containing Confidential Information including, without limitation, drawings, models, prototypes, schematics, written or printed documents, computer disks, tapes and compact discs (CD), and all other memory storage devices, whether readable by machine or directly by a user.

3.    **Nondisclosure of Confidential Information.**   The Recipient agrees to accept and has accepted the Confidential Information received in confidence, and further agrees that the Confidential Information belongs exclusively to the Company and that the Recipient has not and will not acquire any rights to use the Confidential Information of the Company for its own benefit, the benefit of a third party, or for any purpose other than that as noted by the Company in furthering the Relationship, including any Confidential Information that may be developed by the Recipient in connection with the business relationship or transaction entered into between the Company and the Recipient. The Recipient further agrees not to use any Confidential Information disclosed to it by the Company, at the time of disclosure or at any subsequent time, for its own use of for any purpose other than to discuss or assess ideas, suggestions or inventions related to the undertaking of the Relationship.   The Recipient has limited and shall limit the disclosure of Confidential Information to only high-level employees, such as managers, inside general and patent counsel, high-level engineers, and outside counsel who have a duty to abide by this Agreement, for the sole purposes of determining whether the Recipient desires to enter into a relationship or transaction with the Company, or to perform the duties required of the relationship or transaction, and not for any other purpose. The Recipient has maintained and shall maintain appropriate written agreements with its employees, consultants, parent, subsidiaries, affiliates or related parties, who receive, or have access to, Confidential Information sufficient to enable it to comply with the terms of this Agreement. The Recipient agrees to promptly notify the Company in writing of any misuse, misappropriation, or other

disclosure of Confidential Information that is in violation of the terms of this Agreement which has come to the Recipient's attention.

4.  **Publicity.**  The Recipient shall not, without prior consent of the Company, disclose to any other party the fact that Confidential Information has been disclosed under this Agreement, that discussions or negotiations are taking place between the parties, or any of the terms conditions, status or other facts with respect thereto, including any terms of this Agreement, except as required by law and then only with prior written notice to the Company.

5.  **Return of Materials.**  Upon request by the Company, the Recipient will return to the Company, without making or taking copies or summaries thereof, all Confidential Materials and other documents pertaining to the business of the Company and the Relationship (apart from a copy of this Agreement) that have been provided by the Company to the Recipient in connection with the Relationship, accompanied by all copies of such documentation or certification of destruction of such copies, if any were made, within ten (10) calendar days after: (i) the Relationship has been terminated; or (ii) receiving a written request for such return of Confidential Materials and other documentation by the Company.

6.  **Patent or Copyright Infringement.**  Nothing in this agreement is intended to grant any rights to the Recipient with regard to any and all of the Company's intellectual property rights, including to any and all patents, patent applications, trademarks, and copyrights owned by or licensed to the Company, unless otherwise agreed upon previously in writing.

7.  **Term.** The commitments and obligations of each party as specified in this Agreement shall survive any termination of the Relationship between the parties for a period of two years after application of Section 5 above.

8.  **Successors and Assigns.**  This agreement shall be binding upon and for the benefits of the undersigned parties, their successors and assigns, provided that Confidential Information of Zidware, Inc., and may not be assigned without the prior written consent of Zidware, Inc. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

9.  **Breach and Damages.**  The Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from a material breach of this Agreement, such as the unauthorized use or disclosure of Confidential Information, and that the Company shall

be entitled, without waiving any other rights or remedies, to seek such injunctive and/or equitable relief as may be deemed appropriate by a court of competent jurisdiction, including injunctive relief against the threatened breach of this Agreement by the Recipient without the necessity of proving actual damages. Further, if Recipient is a purchaser or pre-purchaser of the Product, the Company may, at its sole discretion, cancel and terminate any purchase agreement between Company and Recipient in response to a breach by Recipient, and refund all deposit monies paid by Recipient to Company, with no further compensation due to Recipient.

10. **Governing Law.** This agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules, and shall be binding upon the Recipient in the United States and worldwide. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

11. **Remedies.** The Customer agrees that any violation or threatened violation will cause irreparable injury, both financial and strategic, to Zidware and in addition to any and all remedies that may be available, in law, in equity or otherwise, Zidware shall be entitled to injunctive relief against the threatened breach of this Agreement by the Customer without the necessity of proving actual damages.

12. **Scope.** This Agreement constitutes the entire understanding and agreement of the parties regarding the subject matter hereof and supersedes any prior oral or written understandings or agreements and may not be modified, except in writing signed by both parties. No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion. This Agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

13. **Severability.** If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full effect. Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to duration, scope or subject matter thereof,

such obligations shall be deemed and construed to be reduced to the maximum scope, duration or subject matter allowable by law.

14. **Counterparts.** This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement. No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, this Non-Disclosure Agreement is executed as of the date first above written:

Zidware, Inc.
722 Chestnut Court
Bartlett, IL  60103

By: _____
John A. Popadiuk, Jr.
President

_____
Recipient (print)

By: _____
Name:
Title:

Rev4.28.12

<u>**PURCHASE AGREEMENT — CONFIDENTIAL**</u>



BHZA - Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:

Alain Mueller (BHZA#23)
Parkstrasse 36
CH-4102 Binningen
Switzerland

### Agreement
This Purchase Agreement was prepared to describe certain features or aspects of the Ben Heck's Zombie Adventureland™ pinball machine project, and to specify certain terms and conditions relating to the purchase of the game from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

### Project Overview
The project involves the creation of a full-sized custom pinball machine called Ben Heck's Zombie Adventureland™, including both a Limited Edition and a Special Cointaker Edition (collectively, "BHZA") made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of professional pinball designer, John A. Popadiuk, Jr., with the added creativity and hackspertise of Ben Heckendorn.

### The Pinball Team
John A. Popadiuk, Jr. is a celebrated pinball designer, vintage pinball collector, mobile software developer and bagatelle historian with many years immersed in the world of pinball. Some of his designs include: Bally's Theatre of Magic, Marvel Heroes vs.Villains, World Cup Soccer, Star Wars: Episode I, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and team building philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and new to be explored and incorporated into the BHZA pinball game alongside fellow modding genius and pin-geek Ben Heck and other talented designers, artists and creative engineers required to create a quality custom, pinball.

### The Timeline
Ben Heck's Zombie Adventureland™ pinball will follow a normal pinball development schedule of approximately 14 months at a minimum. You are invited to visit the design team in the studio, when appropriate, to view the progress and see the current full-size hand-made pinball mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this custom project in a reasonable amount of time as stated herein. Any compressions, delays or extensions to the planned schedule, will be communicated in a timely manner.

### Art Direction & Theme
The Ben Heck's Zombie Adventureland™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on hip atomic 1960's retro zombie amusement park theme. The online trailer was created to capture the "verve" or general game concept.

### Pinball Game Features
The Ben Heck's Zombie Adventureland™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen pinball designs. Some of the basic features planned to be included at this time are located here on the website:

> http://pinballinventor.org/benheck/

Other details will be finalized as the game design process progresses, and all such details are subject to modification or change at the sole discretion of the Company.

© 2012 - Zidware, Inc. – CONFIDENTIAL

**Construction Techniques and Components**
This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques, performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the BHZA pinball machine based on specifications to be determined by the Company.

**Usage and Operation**
The Ben Heck's Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The BHZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are planned at this time.

**Basic Development Cost Schedule**
The initial pre-order cost of a custom-designed limited-edition BHZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any BHZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 30, 2012, along with the second refundable deposit of $2,250.00. This will reserve your serial number and get the custom pinball development and production rolling. This deposit (along with the initial $750.00 deposit, or $3,000.00 in total) will be fully refundable within 45 days of receipt of the second deposit by the Company, if you so desire.

The remaining balance due of $6,995 (or $7,995 for the DIY option) will follow in easy-stepped payments during the development cycle. All scheduled payments (except for the second refundable deposit of $2,250.00), will be spread out over the expected development cycle and must be submitted to the Company by the Purchaser within 45 days of their indicated due dates as outlined below. Payment in full will be due on or before the shipment date of your machine.

The basic payment schedule with certain milestones, subject to modification as noted above, is as follows:

| DATE | ITEM/MILESTONE | AMOUNT |
|------|----------------|--------|
| 3/1/2012 | Pre-Order Deposit (100% refundable) | $750 |
| 5/1/2012 | Owner Packages Mailed | |
| 6/1/2012 | Installment One (100% refundable) | $2,250 |
| 11/1/2012 | Installment Two Design Phase | $1,250 |
| 12/1/2012 | Game Review & Refinement | |
| 3/1/2013 | Installment Three Engineering Phase | $2,250 |
| 5/1/2013 | Final Game Evaluation Phase | |
| 6/1/2013 | Prototype Start Estimate | $3,000 |
| 9/1/2013 | Build Node Phase | $495 |
| 10/1/2013 | Build Node Phase 2 | |
| 11/1/2013 | DIY Surcharge (or due on Delivery if earlier) | $1,000 |

**TOTAL:** $9,995.00 (or $10,995.00 for the DIY Option)

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the BHZA pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

**Production Run**
The production run of the Ben Heck's Zombie Adventureland™ pinball machine will be limited to a total of 99 numbered Limited Editions and 25 numbered Special Cointaker Editions that will be offered for sale by the Company to the public. The games will be constructed in nodes of a minimum 25 games at a time.

**Non-Disclosure**
An optional Non-Disclosure Agreement ("NDA") accompanies this Purchase Agreement. Purchasers who sign this NDA and return it along with this signed Purchase Agreement and second refundable deposit will be granted limited access to the Company's internal design process. You will be able to visit the Company's design studio, see the various stages of the project, and work with the design team as available. Please note that Purchasers who do not sign the NDA will not be granted this "behind-the-scenes" access and will only receive general information regarding progress, along with other details as they are revealed to the general public. The Company may, at its sole discretion, allow individual Purchasers to sign the NDA at a future date and gain this access to the development information, if they choose not sign and return the NDA along with this Purchase Agreement.

For Purchasers who sign the NDA and submit it to the Company: Please note that the Ben Heck's Zombie Adventureland™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement. Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion. The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA. The Purchaser agrees to abide by all terms and conditions of the Agreements. The Purchaser further agrees not to disclose this Confidential Information to any third party (including other Purchasers who have not signed the NDA) or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company. Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and this Purchase Agreement will be canceled (although the terms and conditions of the NDA will continue to remain in effect). The Company may, at its reasonable discretion, retain some or all of the cumulative monetary deposits made by the breaching party as of the date of the breach.

**Customization**
The Ben Heck's Zombie Adventureland™ pinball machines will be manufactured as special custom-made games, and not mass-produced. You, the Purchaser, will have an opportunity in the design process to create, select and/or change certain features, decorative parts, mechanics and/or artwork to make your game unique. These options will be presented to you by the Company as the development schedule proceeds. John Popadiuk and Ben Heck also encourage you, the Purchaser, to suggest options and take part in the design process (subject to receipt of a signed NDA as described above).

**Development Collectibles**
The game development process creates an extraordinary amount of collateral sketches, designs, paperwork, models, test fixtures, art, samples and playfield mechanisms. These items will be made available at the end of the project to buyers at the discretion of the Company.

## Warranty

The Company will provide a One-Year Limited Warranty for the BHZA pinball machine against all defects in workmanship or component failure through normal play or use. This product is intended for HOME USE ONLY and any other installation, modification or setup will VOID the warranty. This warranty does not cover any damage caused from installation, modification, or any use in contravention to this Purchase Agreement. Requested parts will be made available for purchase after the games are delivered to respective owners at project completion.

## Liability Information

This product was designed to be delivered and installed into specific HOME LOCATIONS only! Because the pinball designer has no control over the conditions surrounding the installation, and by signing this agreement, taking delivery and then use of this product, the Purchaser shall assume all liability and agrees to fully indemnify and hold harmless John A. Popadiuk, Jr., and the Company and its agents, for any and all damages resulting from the installation and/or use of this product in any way.

## Intellectual Property Rights

The Purchaser hereby acknowledges that all intellectual property ("IP") rights, titles and interests in and relating to the BHZA pinball machine, including but not limited to rights covered by any patent, trademark, or copyright, shall reside with John A. Popadiuk, Jr. and/or the Company, to the extent that rights to such IP are not previously owned by or assigned to a third party. The Purchaser agrees not to modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source or object code from any of the designs, engineering, software, documentation, or create or attempt to create a substitute or substantially similar pinball product through use of or access to the extensive IP and/or proprietary information related thereto.

The design of a new custom pinball machine is a fun, yet complex proposition with hundreds of decisions to be made at any given time. John A. Popadiuk, Jr. and the Company welcome all Purchasers' ideas, comments, and suggestions for improving the game during its development. The Purchaser acknowledges that any such suggestions made to John A. Popadiuk, Jr. and/or the Company will become property of the Company, and that the Purchaser will not retain any rights to the content or substance of such suggestions once they are disclosed to the Company. Concepts, progress, photos, models, designs, artwork, and drawings may be revealed at significant stages in the process. All final decisions regarding the design, features, layout, artwork, and other aspects of the BHZA pinball machine will be at the sole discretion and control of the Company.

## Cancellation

The Purchaser may terminate or otherwise cancel their order at any time, prior to actual shipment or transfer of possession of the finished BHZA pinball machine to the Purchaser, with an incurred penalty of 25% of their accrued deposits at the time of cancellation if no other buyer can be found to purchase the cancelled game within sixty (60) days of such cancellation by the Purchaser. In the event that a new buyer is found within this time period, then all accrued deposits submitted by the Purchaser at the time of cancellation will be refunded in full. No interest shall be paid on any returned deposits. These same cancellation terms shall apply if the Company terminates this Purchase Agreement with the Purchaser under any of the relevant clauses herein.

## Non-Assignment of Rights

The Purchaser's rights of any nature under this Purchase Agreement cannot be assigned nor transferred to any third party without express prior written consent of the Company, and any such attempt may result in termination of this Purchase Agreement subject to the cancellation terms outlined above.

**Severability**
In the event that any provision of the terms and conditions of this Purchase Agreement is found invalid or unenforceable pursuant to any judicial decree or decision, such provision shall be deemed to apply only to the maximum extent permitted by law, and the remainder of these terms and conditions shall remain valid and enforceable.

**Entire Agreement**
This Purchase Agreement shall be governed by and construed in accordance with the substantive laws of Illinois, without any reference to conflict-of-laws principles. The Agreement describes and encompasses the entire agreement between us and you, and supersedes all prior or contemporaneous agreements, representations, warranties and understandings with respect to the Site, the contents and materials provided by or through the Site, and the subject matter of this Agreement.

**Governing Law**
Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement is hereby irrevocably submitted to the exclusive jurisdiction of the courts of Illinois, to the exclusion of any other courts without giving effect to its conflict of laws provisions or your actual state or country of residence.

**Final Delivery**
The Purchaser acknowledges that the delivery arrangements, sales taxes, and shipping & handling costs for the Ben Heck's Zombie Adventureland™ pinball machine will be their sole responsibility. Instructions on packing and crating will be forwarded when the BHZA pinball machine is completed and ready to be delivered to the Purchaser. DIY owners will be contacted with special instructions on the delivery and in-house building of their games.

Signed: (Purchaser)    _____

Name (print):    _____

Date:    _____

Serial Number:    _____

© 2012 - Zidware, Inc. – CONFIDENTIAL



Ben Heck's **ZOMBIE ADVENTURELAND** Pinball in 3D

**SCHEDULE A**
General Pinball Development and Milestones

PRE-ORDERS
Agreements

CONCEPT
Game Brief
Game Concept

DESIGN
Playfield Design
Artwork Concept

ENGINEERING
Mechanical
Playfield Whitewood
Software Start

GAME REVIEW

REFINEMENT
Changes
Software

EVALUATION
Final Designs
Final Artwork

BUILD
Proto Samples
Build Node Start
Delivery Estimate

● Milestones
▬ Payments

2012 — Q1 Q2 Q3 Q4
2013 — Q1 Q2 Q3 Q4

100% Refunds          No Refunds

PAYMENTS
$750  - 3/1
$2250  - 6/1
$1250 - 11/1
$2250  -3/1
$3000  -6/1
$495  -9/1
$1000  (DIY)

* Due to the nature of pinball machine design, this basic schedule & estimate may change, altered or revised as required by the project constraints.







Just wanted to reach out and let you know we have you listed on the Magic Girl Reserve for a new custom pinball machine.

Currently the first samples are being built and we will showcase them soon. Once more games become available, we will send you the current document package, pricing, game information and link to a web picture library. You would be required to send back a payment and the docs to secure your game.

We have your information listed at this address below. Please contact us if there are any changes.



Alain Mueller
Parkstrasse 36 CH-4102
Binningrn SWITZERLAND



Thank you and contact me with any questions!

Sincerely;

John A. Popadiuk, Jr.

pop@zidware.com
224-532-0639

pinballinventor.org





10.7.2013

Hello,

Just wanted to reach out and let you know we have you listed on the Magic Girl Reserve for a new custom pinball machine.

Once a game becomes available, we will send you the current document package, pricing, game information and link to a web blog or picture library. You would be required to send back a deposit payment and the NDA to secure your game and lock in the serial number along with any questions.

We have your information listed at this address below. Please contact us is there are any changes or your require something else.

MGR
Alain Mueller
Parkstrasse 36 CH-4102
Binningrn SWITZERLAND

Thank you for your patience and please stay in touch!

Sincerely;

John A. Popadiuk, J

pop@zidware.com
224-532-9639





**Basellandschaftliche Kantonalbank**

Mueller Alain
IBAN CH56 0076 9016 2103 6742 0
Privatkonto 0162.1036.7420

| Datum | Text | Belastung | Gutschrift | Valuta | Saldo |
|---|---|---|---|---|---|

01.03.

01.03.  Zahlungsauftrag E-Banking / Ref.-Nr. 111812516    944.40
ZIDWARE INC
GREATER AREA CHICAGO USA
Mitteilung: BHZA NO 23 - ADDRESS:
ALAIN MUELLER
PARSTRASSE 36
4102 BINNINGEN SWITZERLAND
Betrag: USD 1'000.00
Kosten: USD 28.31
Wechselkurs: USD/CHF 0.918400

01-MARCH-2012

**Basellandschaftliche Kantonalbank**

Müller Alain
IBAN CH56 0076 9016 2103 6742 0
Privatkonto 0162.1036.7420

| Datum | Text | Belastung | Gutschrift | Valuta | Saldo |
|-------|------|-----------|------------|--------|-------|
| 08.06. | Zahlungsauftrag E-Banking / Ref.-Nr. 128533115 ZIDWARE INC JOHN A. POPADIUK GREATER AREA CHICAGO USA Mitteilung: BHZA NO. 23 - ALAIN MUELLER, PARKST RASSE 36, 4102 BINNINGEN, SWITZERLAND Betrag: USD 4'000.00 Kosten: USD 26.60 Wechselkurs: USD/CHF 0.977300 | 3'935.20 | | | |

08 - JUNE - 2012

**Basellandschaftliche Kantonalbank**

Müller Alain
IBAN CH56 0076 9016 2103 6742 0
Privatkonto 0162.1036.7420



| Datum | Text | Belastung | Gutschrift | Valuta | Saldo |
|---|---|---|---|---|---|

31.12.  Zahlungsauftrag E-Banking / Ref.-Nr. 163841282    956.50
ZIDWARE INC
JOHN A. POPADIUK
GREATER AREA CHICAGO USA
Mitteilung: BHZA NO. 23   ALAIN MUELLER,
PARKST
RASSE 36, 4102 BINNINGEN, SWITZERLA
ND
Betrag: USD 1'000,00
Kosten: USD 27.94
Wechselkurs: USD/CHF 0.930500

*31 - DECEMBER - 2012*


**Basellandschaftliche
Kantonalbank**

Muller Alain
IBAN CH56 0076 9016 2103 6742 0
Privatkonto 0162.1036.7420



| Datum | | Belastung | Gutschrift | Valute | Saldo |
|---|---|---|---|---|---|

03.04.  Zahlungsauftrag E-Banking / Ref.-Nr. 181283337      1'956.61
ZIDWARE INC
JOHN A. POPADIUK
GREATER AREA CHICAGO USA
Mitteilung: BHZA NO. 23  ALAIN MUELLER,
PARKST
RASSE 36, 4102 BINNINGEN, SWITZERLA
ND
Betrag: USD 2'000.00
Kosten: USD 26.94
Wechselkurs: USD/CHF 0.965300

03 - APRIL - 2013

**Basellandschaftliche Kantonalbank**

Müller Alain
IBAN CH56 0076 9016 2103 6742 0
Privatkonto 0162.1036.7420

| Datum | Text | Belastung | Gutschrift | Valuta | Saldo |
|-------|------|-----------|------------|--------|-------|



| 28.02. | Zahlungsauftrag E-Banking / Ref.-Nr. 236820307 ZIDWARE INC JOHN A. POPADIUK GREATER AREA CHICAGO USA Mitteilung: BHZA NO. 23  ALAIN MUELLER, PARKST RASSE 36, 4102 BINNINGEN, SWITZERLA ND Betrag: USD 2'000.00 Kosten: USD 28.99 Wechselkurs: USD/CHF 0.896800 | 1'819.60 | | 28.02.14 | 2'623.57 |

*28 - FEBRUARY - 2014*



Initial Deposit sent through Website

PayPal Transaction ID#: <span style="background:black">        </span>
Transaction Date: 7/19/2011 - 4:06:47 PDT
Amount: $500.00 USD
Sent from: Richard Stuhlsatz (richard@kismetcom.com)
Sent To: Zidware, Inc. (info@zidware.com)
Description: Initial Deposit for (1)  MAGIC GIRL Pinball





# Purchase Order

**August 9, 2011**

**Buyer**
Richard Stuhlsatz
68457 Knollside Ct.
Washington, MI 48095
United States

| | | |
|---|---|---|
| 1 | Custom "Magic Girl" Pinball Machine | $15,995.00 (usd) |

Basic Features Known At This Time*
- arcade full-size game
- 21" x 46" playfield size
- silk screened panels
- multi-level ball play
- realistic ball physics
- kicking rubber parts
- brilliant style backglass
- 3-5 ball game play
- pop action bumpers
- independent flippers
- touch control buttons
- led panel illumination
- rod spring plunger
- custom play features
- led dot display & more!

| | |
|---|---|
| Initial Deposit | $500. (usd) |
| Secure Deposit (please remit this amount today) | $7500. (usd) |
| Remaining Payments Due Per Schedule | $7995. (usd) |



Zidware, Inc
722 Chestnut Court
Bartlett, Illinois
60103 USA

EIN Number
26-4480632

* Due to the nature of a custom-made pinball machine, features are subject to change or alteration at the discretion of this artist / designer.

FORM 12925 1-0210
07000695

PNC BANK
PNC Bank, National Association
Michigan

CASHIER'S CHECK

No. 2312

DATE  AUGUST 15, 2011

PAY TO THE
ORDER OF  ZIDWARE, INC.

$ 7,500.00

SEVEN THOUSAND FIVE HUNDRED AND 00 / 100************************** DOLLARS

RICHARD G. STUHLSATZ

REMITTER

PNC Bank, National Association

OFFICIAL SIGNATURE

First Payment by Back Check





### Welcome to "SPACE MISSION X™ - EXPERIMENTAL

Pinball is back wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago, since the 1930's as a hand built marvel that touches many disciplines, senses or emotions. Zidware Pinball is leading that charge with exciting new designs, technologies and patented IP.

Space Mission X™ is continuing in that model adopting new ideas, art and innovations for pinball including: Raspberry Pi Processor, Pinball Truss™ Light System, Clear Backglass, Simple Design, Low Cost Construction, LED lighting and much more!

**As an early adopter we ask for small deposit to hold your game and further information will be coming in early 2014. Please send a check for $2750.**

Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful magical game, a work of playable art.

Welcome!

John A. Popadiuk, Jr
Zidware Inc
39 Sangra Court
Streamwood, IL USA
60107
(224) 532-0639



PINBALLINVENTOR.ORG

## Reinventing Pinball

from the desk of JOHN A POPADIUK JR

Paid Full Deposit at the same time as Second MG Payment by Personal Check



# Performance Checking Account Statement

For 24-hour information, sign on to PNC Bank Online Banking on pnc.com.

Account number: 42-4759-4371 - continued

**For the period 12/25/2012 to 01/24/2013**
RICHARD GREGORY STUHLSATZ
Primary account number:
Page 2 of 3

## Activity Detail

### Deposits and Other Additions

| Date | Amount | Description |
|------|--------|-------------|

There were 2 Deposits and Other Additions totaling **$10,000.07**.

### Checks and Substitute Checks

| Check number | Amount | Date paid | Reference number |
|--------------|--------|-----------|------------------|
| 126 | 4,000.00 | 01/16 | 096619400 |

There is 1 check listed totaling **$4,000.00**.

### Online and Electronic Banking Deductions

There was 1 Online or Electronic Banking

### Other Deductions

| Date | Amount | Description |
|------|--------|-------------|

There was 1 Other Deduction totaling **$2,800.00**.

### Daily Balance Detail

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|

**PNC LENDING SOLUTIONS DESIGNED TO HELP YOU PAY OFF YOUR MORTGAGE, SOONER.**
A Home Equity Rapid Refinance Loan from PNC can put you in control. Pay off your first mortgage faster when you reduce the term at a currently low rate that's fixed for the life of your loan. All with lower closing costs, fewer fees and less paperwork than traditional mortgage loans. You can close in weeks instead of months, so you get the money and control you need to reach your goals.
To learn more about Home Lending Options, speak with a PNC Loan Specialist in any PNC branch, call 1-877-CALL-PNC (1-877-225-5762) or visit pnc.com/rapidrefinance

Credit is subject to approval. PNC Bank, National Association. Equal Housing Lender

**Enroll in online statements today through online banking,** and have access to your checking and saving statements for up to 7 years. Enroll today by visiting the Customer Service Tab in online banking.

**Say so long to high interest rate credit cards.**
Move your old high-rate balances to a new PNC Bank credit card with a low introductory balance transfer rate and take charge of your finances today. Whether you want faster rewards for your everyday purchases or simply an affordable card with flexibility to help you save and earn rewards, PNC Bank has a credit card that's right for you.

To apply or for more information, visit pnc.com/creditcards.
Credit is subject to approval.

# Third and Final Payment - by Personal Check

FORM160R-0111

UNIQUEMENT A UTILISER POUR LES PAIEMENTS DESTINES AU CENTRE OPERATIONNEL

Agence:    310052

## Cet ordre concerne un paiement    ETRANGER

Type de paiement: True International Payment
Mode de paiement: via SWIFT NORMAL

| DONNEUR D'ORDRE: | BENEFICIAIRE: | US |
|---|---|---|
| Compte: ▓▓▓▓▓▓▓▓▓▓ – EUR | Compte: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |
| Nom:    M STEPHAN MULLER | Nom:    ZIDWARE INC | |
| Adresse: RUE DE L'ETANG 63 AT4C1 | Adresse: 39 SANGRA COURT | |
| Localité: 1040    ETTERBEEK | Localité: STREAMWOOD IL 60107 | |
| | Pays:    AMERIQUE (E.U.) | |

| **Veuillez transférer:** | DEVISE | MONTANT |
|---|---|---|
| | USD | 2.500,00 |

| COMMUNICATION (à transmettre au bénéficiaire) RAZA - JOHN POPADIUK | BANQUIER DU BENEFICIAIRE |
|---|---|
| | Adresse SWIFT (BIC):    CHAS US 33 |
| | Nom:    JP MORGAN CHASE BANK NA |
| | Adresse:    4 NEW YORK PLAZA FLOOR 15 |
| | Localité:    USA NY 10004 NEW YORK |

| FRAIS (paiement étranges seulement) Tous frais à ma charge (OUR) Un paiement entre deux pays de l'Espace Economique Européen (EEE) dans une des monnaies de l'EEE sera TOUJOURS exécuté avec la structure de coût SHA. Pour tous les autres paiements, la structure de coût utilisée sera celle que vous avez indiquée. ATTENTION: si l'indication manque, OUR sera appliqué. | La signature du document présent entraine l'adhésion au "Règlement Général des Opérations" ainsi qu'au "Règlement Spécial des Opérations de Paiement" d'ING Belgique SA. Date: 10/10/2014    Signature du client |
|---|---|



BE15 3101 3224 4230    JUSTIFICATIF    – 2.040,04

Votre ordre de paiement de 2.500,00 USD
Références de l'opération: H10110100230004
Cours 1 EUR =    1,225466    USD
Contre-valeur                                    2.040,04 EUR
Date valeur 09/10/2014
Les frais vous sont décomptés séparément au cpte BE15 3101 3224 4230
Compte bénéf.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Bénéficiaire :    ZIDWARE INC
                 39 SANGRA COURT
                 STREAMWOOD IL 60107
       Communication    RAZA JOHN POPADIUK
Correspondant :
                 CHASUS33
                 JP MORGAN CHASE BANK NA

                 4 NEW YORK PLAZA FLOOR 15
                 Usa ny 10004 new york

Opération 274 du 10/10/2014

Mod. 60.828 F 01/06/2014



EXHIBIT
15

UNIQUEMENT A UTILISER POUR LES PAIEMENTS DESTINES AU CENTRE OPERATIONNEL

N°: ~~010052031001402012412234~~

Agénce:   310052

## Cet ordre concerne un paiement   ETRANGER

Type de paiement: True International Payment
Mode de paiement: via SWIFT NORMAL

| DONNEUR D'ORDRE: | | BENEFICIAIRE: | US |
|---|---|---|---|
| Compte: ~~BE15 3101 3224 4230~~   · EUR | | Compte: ~~BOEING 071000013 ACCORDE 804408920FW~~ | |
| Nom:      M STEPHAN MULLER | | Nom:      ZIDWARE INC. | |
| Adresse:  RUE DE L'ETANG 63 AT4C1 | | Adresse:   39 SANGRA COURT | |
| Localité: 1040      ETTERBEEK | | Localité:  STREAMWOOD, IL 60107 USA | |
| | | Pays:      AMERIQUE (E.U.) | |

| Veuillez transférer: | DEVISE | MONTANT |
|---|---|---|
| | USD | 4.995,00 |

| COMMUNICATION (à transmettre au bénéficiaire) | BANQUIER DU BENEFICIAIRE |
|---|---|
| RAZA - JOHN POPADIUK | Adresse SWIFT (BIC):   CHAS US 33 |
| | Nom:                  JP MORGAN CHASE BANK NA |
| | Adresse:              4 NEW YORK PLAZA FLOOR 15 |
| | Localité:             USA NY 10004 NEW YORK |

| FRAIS (paiement étranges seulement) | La signature du document présent entraîne l'adhésion au "Règlement Général des |
|---|---|
| Tous frais à ma charge (OUR) | Opérations" ainsi qu'au "Règlement Spécial des Opérations de Paiement" d'ING |
| | Belgique SA. |
| Un paiement entre deux pays de l'Espace Economique | |
| Européen (EEE) dans une des monnaies de l'EEE sera | Date: 06/02/2014          Signature du client |
| TOUJOURS exécuté avec la structure de coût SHA. | |
| Pour tous les autres paiements, la structure de coût utilisée | |
| sera celle que vous avez indiquée. | |
| ATTENTION: si l'indication manque, OUR sera appliqué. | |

~~BE15 3101 3224 4230~~     JUSTIFICATIF                    − 3.740,57

Votre ordre de paiement de 4.995,00 USD
~~...................... IN040207021000013~~
Cours 1 EUR =    1,335358    USD
Contre-valeur                                          3.740,57 EUR
Date valeur 06/02/2014
Les frais vous sont décomptés séparément au cpte BE15 3101 3224 4230
Compte bénéf.   804408920FW071000013
Bénéficiaire :  ZIDWARE INC
                39 SANGRA COURT
                STREAMWOOD IL 60107
                USA AMERIQUE
        Communication      RAZA JOHN POPADIUK
Correspondant :
                CHASUS33
                JP MORGAN CHASE BANK NA

                4 NEW YORK PLAZA FLOOR 15
                Usa ny 10004 new york

ING

Opération 31 du 07/02/2014

Mod. 60.828 F 01/01/2014                                                  2/2

UNIQUEMENT A UTILISER POUR LES PAIEMENTS DESTINES AU CENTRE OPERATIONNEL

N° 1310072202251704039111719
Agence:   310072

## Cet ordre concerne un paiement   ETRANGER

Type de paiement: True International Payment
Mode de paiement: via SWIFT NORMAL

| DONNEUR D'ORDRE: | BENEFICIAIRE: US |
|---|---|
| Compte BE15 3101 3224 4230        → EUR | Compte: ROUTING 071000013 ACCOUNT 934900003 |
| Nom:      M STEPHAN MULLER | Nom:      ZIDWARE INC |
| Adresse:  RUE DE L'ETANG 63 AT4C1 | Adresse:  39SANGRA COURT |
| Localité: 1040      ETTERBEEK | Localité: STREAMWOOD IL 60107 USA |
|  | Pays:     AMERIQUE (E.U.) |

| **Veuillez transférer:** | DEVISE | MONTANT |
|---|---|---|
|  | **USD** | **2.500,00** |

| COMMUNICATION (à transmettre au bénéficiaire)<br>RAZA - JOHN POPADIUK | BANQUIER DU BENEFICIAIRE<br>Adresse SWIFT (BIC):   CHAS US 33<br>Nom:                 JP MORGAN CHASE BANK NA<br><br>Adresse:             4 NEW YORK PLAZA FLOOR 15<br>Localité:            USA NY 10004 NEW YORK |
|---|---|
| FRAIS (paiement étranges seulement)<br>Tous frais à ma charge (OUR)<br><br>Un paiement entre deux pays de l'Espace Economique<br>Européen (EEE) dans une des monnaies de l'EEE sera<br>TOUJOURS exécuté avec la structure de coût SHA.<br>Pour tous les autres paiements, la structure de coût utilisée<br>sera celle que vous avez indiquée.<br>ATTENTION: si l'indication manque, OUR sera appliqué. | La signature du document présent entraine l'adhésion au "Règlement Général des Opérations" ainsi qu'au "Règlement Spécial des Opérations de Paiement" d'ING Belgique SA.<br><br>Date: 02/07/2014            Signature du client |

                                                                                           – 1.892,74

BE15 3101 3224 4230      JUSTIFICATIF

        Votre ordre de paiement de 2.500,00 USD
        Références de l'opération: H10407020259005
        Cours 1 EUR =         1,320836   USD                          1.892,74 EUR
        Contre-valeur
        Date valeur 01/07/2014
        Les frais vous sont décomptés séparément au cpte BE15 3101 3224 4230
        Compte bénéf.
        Bénéficiaire :       ZIDWARE INC
                             39SANGRA COURT
                             STREAMWOOD IL 60107  USA
        Communication        RAZA  JOHN POPADIUK
Correspondant :
                             CHASUS33
                             JP MORGAN CHASE BANK NA
                             4 NEW YORK PLAZA FLOOR 15
                             Usa ny 10004 new york

Opération 193 du 02/07/2014

Mod. 60.828 F 01/06/2014                                                          3/3

# ZIDWARE

### Non-Disclosure Agreement

This non-disclosure agreement (the "Agreement") is made and entered into as of _Oct 13_,
2011 by and between <u>Zidware, Inc.</u> (the "Company") and _Mark Williams JR._ (the
"Recipient"). The Company wishes to manufacture and sell pinball machines (the "Product"),
and the Company and Recipient are considering, or may have entered into, a business
relationship (the "Relationship") in which the Company will sell the Product to the Recipient
and/or enter into discussions with the Recipient regarding development and/or manufacturing of
certain components of the Product. The Recipient has been provided and may be provided in the
future with Confidential Information as defined herein below in order to evaluate or to perform
duties in furtherance of such relationship or transaction. In accordance with the Company
providing of such Confidential Information, the parties hereby agree as follows:

1.  **Definition of Confidential Information.** For purposes of this Agreement, "Confidential
    Information" shall mean any information or material proprietary to the Company or
    designated as Confidential Information by the Company which the Recipient may obtain
    knowledge of or access to as a result of any disclosure pursuant to this Agreement. This
    Confidential Information includes, but is not limited to, artwork, ideas, technical data,
    project schematics or drawings, product designs, specifications, software (source code or
    object code), U.S. and foreign patent applications (to the extent that they are not publicly
    available), Confidential Materials as defined herein below, and any other information that
    the Company may identify as Confidential Information either in writing or orally, which
    relate to the Company's research and development, current and future products, business
    plans, products, services, customer lists or identities, programming activities,
    manufacturing, software development, inventions, processes, designs, drawings,
    engineering features, hardware configuration information, marketing activities, or finances.
    The Company shall use its reasonable best efforts to reduce Confidential Information to
    written form and formally designate the material as Confidential Information. Confidential



Information shall not include information, technical data or know-how that: (i) is in the possession of the Recipient at the time of disclosure by the Company as demonstrated by the Recipient's files and records immediately prior to the time of disclosure; or (ii) becomes part of the public knowledge or literature prior to or after the time of disclosure, other than as a result of any improper inaction or action of the Recipient; or (iii) is approved by the Company, in writing, for release or public disclosure; or (iv) is required to be disclosed by law or by order of any court

2. **Confidential Materials.** For purposes of this Agreement, "Confidential Materials" shall mean all tangible materials containing Confidential Information including, without limitation, drawings, models, prototypes, schematics, written or printed documents, computer disks, tapes and compact discs (CD), and all other memory storage devices, whether readable by machine or directly by a user.

3. **Nondisclosure of Confidential Information.** The Recipient agrees to accept and has accepted the Confidential Information received in confidence, and further agrees that the Confidential Information belongs exclusively to the Company and that the Recipient has not and will not acquire any rights to use the Confidential Information of the Company for its own benefit, the benefit of a third party, or for any purpose other than that as noted by the Company in furthering the Relationship, including any Confidential Information that may be developed by the Recipient in connection with the business relationship or transaction entered into between the Company and the Recipient. The Recipient further agrees not to use any Confidential Information disclosed to it by the Company, at the time of disclosure or at any subsequent time, for its own use of for any purpose other than to discuss or assess ideas, suggestions or inventions related to the undertaking of the Relationship. The Recipient has limited and shall limit the disclosure of Confidential Information to only high-level employees, such as managers, inside general and patent counsel, high-level engineers, and outside counsel who have a duty to abide by this Agreement, for the sole purposes of determining whether the Recipient desires to enter into a relationship or transaction with the Company, or to perform the duties required of the relationship or transaction, and not for any other purpose. The Recipient has maintained and shall maintain appropriate written agreements with its employees, consultants, parent, subsidiaries, affiliates or related parties, who receive, or have access to, Confidential Information sufficient to enable it to comply with the terms of this Agreement. The Recipient agrees to promptly notify the Company in writing of any misuse, misappropriation, or other

disclosure of Confidential Information that is in violation of the terms of this Agreement which has come to the Recipient's attention.

4. **Publicity.** The Recipient shall not, without prior consent of the Company, disclose to any other party the fact that Confidential Information has been disclosed under this Agreement, that discussions or negotiations are taking place between the parties, or any of the terms conditions, status or other facts with respect thereto, including any terms of this Agreement, except as required by law and then only with prior written notice to the Company.

5. **Return of Materials.** Upon request by the Company, the Recipient will return to the Company, without making or taking copies or summaries thereof, all Confidential Materials and other documents pertaining to the business of the Company and the Relationship (apart from a copy of this Agreement) that have been provided by the Company to the Recipient in connection with the Relationship, accompanied by all copies of such documentation or certification of destruction of such copies, if any were made, within ten (10) calendar days after: (i) the Relationship has been terminated; or (ii) receiving a written request for such return of Confidential Materials and other documentation by the Company.

6. **Patent or Copyright Infringement.** Nothing in this agreement is intended to grant any rights to the Recipient with regard to any and all of the Company's intellectual property rights, including to any and all patents, patent applications, trademarks, and copyrights owned by or licensed to the Company, unless otherwise agreed upon previously in writing.

7. **Term.** The commitments and obligations of each party as specified in this Agreement shall survive any termination of the Relationship between the parties for a period of two years after application of Section 5 above.

8. **Successors and Assigns.** This agreement shall be binding upon and for the benefits of the undersigned parties, their successors and assigns, provided that Confidential Information of Zidware, Inc., and may not be assigned without the prior written consent of Zidware, Inc. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

9. **Breach and Damages.** The Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from a material breach of this Agreement, such as the unauthorized use or disclosure of Confidential Information, and that the Company shall

be entitled, without waiving any other rights or remedies, to seek such injunctive and/or equitable relief as may be deemed appropriate by a court of competent jurisdiction, including injunctive relief against the threatened breach of this Agreement by the Recipient without the necessity of proving actual damages.

10. **Governing Law.** This agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules, and shall be binding upon the Recipient in the United States and worldwide.. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

11. **Remedies.** The Customer agrees that any violation or threatened violation will cause irreparable injury, both financial and strategic, to Zidware and in addition to any and all remedies that may be available, in law, in equity or otherwise, Zidware shall be entitled to injunctive relief against the threatened breach of this Agreement by the Customer without the necessity of proving actual damages.

12. **Scope.** This Agreement constitutes the entire understanding and agreement of the parties regarding the subject matter hereof and supersedes any prior oral or written understandings or agreements and may not be modified, except in writing signed by both parties. No waiver of any provision of this Agreement shall constitute a waiver of any other provision (s) or of the same provision on another occasion. This Agreement shall be construed in accordance with and be governed by the laws of the Commonwealth of Massachusetts, without reference to Massachusetts' choice of law rules. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the Commonwealth of Massachusetts.

13. **Severability.** If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full effect. Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to duration, scope or subject matter thereof, such obligations shall be deemed and construed to be reduced to the maximum scope, duration or subject matter allowable by law.

IN WITNESS WHEREOF, this Non-Disclosure Agreement is executed as of the date first above written:

Zidware, Inc.                          _Mark  Williams  JR._
722 Chestnut Court                          Recipient (print)
Bartlett, IL  60103

By: _____        By: _____
    John A. Popadiuk, Jr.              Name: _Mark  Williams  JR._
    President                          Title:

rev8.1.11



# Welcome to the Magic Club!

You have joined a special group of people that will take part in the creation of a very special pinball machine design.

Thank you for believing!

*John Popadiuk*



**Your Serial Number Will Be:**

# Magic Girl Serial#: MG0010



PayPal Website Payment Details – PayPal

https://history.paypal.com/cgi-bin/webscr?cmd=_history-details-from-...



- Summary
- Activity
- Send & Request
- Wallet
- Shop

- Settings
- Help
- Log Out

# Transaction Details

**Web Accept Payment Sent** (Unique Transaction ID )

### Original Transaction

| Date | Type | Status | Details | Amount |
|------|------|--------|---------|--------|
| Jul 23, 2011 | Payment To Zidware, Inc. | Completed | ... | -$500.00 USD |

### Related Transactions

| Date | Type | Status | Details | Amount |
|------|------|--------|---------|--------|
| Jul 23, 2011 | Add Funds from a Bank Account | Completed | Details | $487.17 CAD |
| Jul 23, 2011 | Currency Conversion | Completed | Details | -$487.17 CAD |
| Jul 23, 2011 | Currency Conversion | Completed | Details | $500.00 USD |

**Business Name:** Zidware, Inc. (The recipient of this payment is **Verified**)
**Email:** info@zidware.com

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Total amount:** -$500.00 USD (equals -$487.17 CAD)
**Fee amount:** $0.00 USD
**Net amount:** -$500.00 USD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Conversion from:** -$487.17 CAD
**Conversion to:** $500.00 USD
**Exchange rate:** 1 Canadian Dollar = 1.0263 U.S. Dollars

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Item amount:** $500.00 USD
**Sales Tax:** $0.00 USD
**Shipping:** $0.00 USD
**Handling:** $0.00 USD
**Quantity:** 1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Item Title:** Initial Deposit for (1) MAGIC GIRL™ Pinball
**Date:** Jul 23, 2011
**Time:** 11:06:54 GMT-04:00

PayPal: Transaction Details                              https://www.paypal.com/myaccount/transaction/details/8A255524R6...



**October 13, 2011**                                                    **- $7,500.00 USD**
Zidware, Inc.
Payment

---

**Paid with**                              **Sent to**
Scotiabank x-1129                          Zidware, Inc.
                                           (224) 532-0639
                                           info@zidware.com
**Exchange rate**
$7,866.76 CAD = $7,500.00 USD              **Note to Zidware, Inc.**
1 Canadian Dollar = 0.953379 US Dollar     Deposit for Magic Girl pinball s/n 10

**Ship to**
Mark Williams                              **Details**
30 Ballantrae Road                         Sent to Zidware, Inc.              $7,500.00
Stouffville Ontario L4A1M5                  Fee                                   $0.00
Canada                                     **Total**                        **$7,500.00**

**Transaction ID**

---

PayPal: Transaction Details

https://www.paypal.com/myaccount/transaction/details/9MY538712...

 **PayPal**

**January 26, 2012**
Zidware, Inc.                                                    - $2,000.00 USD
Payment

---

**Paid with**
$37.61 CAD PayPal Balance
$2,018.32 CAD MCARD x-1473
You'll see "PAYPAL *ZIDWARE INC" on your card
statement.

**Exchange rate**
$2,055.93 CAD = $2,000.00 USD
1 Canadian Dollar = 0.9728 US Dollar

**Transaction ID**
███████████████████

**Sent to**
Zidware, Inc.
(224) 532-0639
info@zidware.com

**Note to Zidware, Inc.**
Deposit for Magic Girl Pinball

**Details**
Sent to Zidware, Inc.                    $2,000.00
Fee                                          $0.00
**Total**                               **$2,000.00**

PayPal: Transaction Details
https://www.paypal.com/myaccount/transaction/details/12X33384Y...

 **PayPal**

**July 27, 2012**
Zidware, Inc.
Payment

### - $5,000.00 USD

---

**Paid with**
MCARD x-6068
You'll see "PAYPAL *ZIDWARE INC" on your card
statement.

**Sent to**
Zidware, Inc.
(224) 532-0639
info@zidware.com

**Exchange rate**
$5,164.55 CAD = $5,000.00 USD
1 Canadian Dollar = 0.96814 US Dollar

**Details**

| | |
|---|---:|
| Sent to Zidware, Inc. | $5,000.00 |
| Fee | $0.00 |
| **Total** | **$5,000.00** |

**Ship to**
Mark Williams
30 Ballantrae Road
Stouffville Ontario L4A1M5
Canada

**Transaction ID**
███████████████████

1 of 1

7/9/2015 11:33 AM

## Patricia Meinke

| | |
|---|---|
| **From:** | service@paypal.com |
| **Sent:** | Saturday, July 23, 2011 12:14 PM |
| **To:** | Ronald Barbagallo |
| **Subject:** | Receipt for Your Payment to Zidware, Inc. |



Jul 23, 2011 10:14:25 PDT
Transaction ID ▬▬▬▬▬▬▬

Hello Ronald Barbagallo,

### You sent a payment of $500.00 USD to Zidware, Inc. (info@zidware.com)

It may take a few moments for this transaction to appear in your account.

**Merchant**
Zidware, Inc.
info@zidware.com
224-532-0639

**Instructions to merchant**
You haven't entered any instructions.

**Shipping address - confirmed**
Ronald Barbagallo
3550 Sarah Drive
Wantagh, NY 11793
United States

**Shipping details**
The seller hasn't provided any shipping details yet.

| Description | Unit price | Qty | Amount |
|---|---|---|---|
| Initial Deposit for (1) MAGIC GIRL™ Pinball | $500.00 USD | 1 | $500.00 USD |
| | Subtotal | | $500.00 USD |
| | Total | | $500.00 USD |
| | Payment | | $500.00 USD |

Charge will appear on your credit card statement as "PAYPAL
*ZIDWARE INC"
Payment sent to info@zidware.com

**Issues with this transaction?**
You have 45 days from the date of the transaction to open a dispute in the Resolution Center.

⑦Questions? Go to the Help Center at: www.paypal.com/help.

**Get verified** – Pay from your bank account and you're 100% protected against unauthorized payments sent from your PayPal account. Log in and click the **Unverified** link below your name.

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click **Help** in the top right corner of any PayPal page.

You can receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your account, go to your Profile, and click **My settings**.

PayPal Email ID PP120

1



CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

DO NOT WRITE, STAMP OR SIGN BELOW THIS
LINE

A FEDERAL RESERVE BOARD OF GOVERNORS R



NEW YORK PINBALL
3560 SARAH DR.
WANTAGH, NY 11793-1630

DATE 10-15-12

PAY TO THE
ORDER OF John Papadigk $ 3,000 00

Three thousand Dollars & 00 ——————— DOLLARS

citibank

MEMO Nov. 38 ANCE $ 995

1093



1057

NEW YORK PINBALL
3350 SARAH DR.
WANTAGH, NY 11793-1830

PAY TO THE
ORDER OF  John Papaduk  $ 7,500 00

Seven thousand Five hundred dollars &  00/100  DOLLARS

citibank

MEMO  Balance $ 7,995  Respal Papaduk

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE



NEW YORK PINBALL
3550 SARAH DR.
WANTAGH, NY 11793-1630

1071

1-8/2235

DATE 2-25-12

PAY TO THE
ORDER OF John Papalimic                    $ 4,000 00

Four thousand dollars + 00/100                    DOLLARS

citibank®

MEMO last installment 2/25/12

Howard Papalimic

Post Date: 03/09/2012
Amount: $4,000.00
Check No.: 1071

ENDORSE HERE

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank



### Non-Disclosure Agreement - BHZA v2

This non-disclosure agreement (the "Agreement") is made and entered into as of _12/28/12_ , 2012 by and between <u>Zidware, Inc.</u> (the "Company") and _Trevor Grau_ (the "Recipient"). The Company wishes to manufacture and sell pinball machines (the "Product"), and the Company and Recipient are considering, or may have entered into, a business relationship (the "Relationship") in which the Company will sell the Product to the Recipient and/or enter into discussions with the Recipient regarding development and/or manufacturing of certain components of the Product. The Recipient has been provided and may be provided in the future with Confidential Information as defined herein below in order to evaluate or to perform duties in furtherance of such relationship or transaction. In accordance with the Company providing of such Confidential Information, the parties hereby agree as follows:

1. **Definition of Confidential Information.** For purposes of this Agreement, "Confidential Information" shall mean any information or material proprietary to the Company or designated as Confidential Information by the Company which the Recipient may obtain knowledge of or access to as a result of any disclosure pursuant to this Agreement. This Confidential Information includes, but is not limited to, artwork, ideas, technical data, project schematics or drawings, product designs, specifications, software (source code or object code), U.S. and foreign patent applications (to the extent that they are not publicly available), Confidential Materials as defined herein below, and any other information that the Company may identify as Confidential Information either in writing or orally, which relate to the Company's research and development, current and future products, business plans, products, services, customer lists or identities, programming activities, manufacturing, software development, inventions, processes, designs, drawings, engineering features, hardware configuration information, marketing activities, or finances. The Company shall use its reasonable best efforts to reduce Confidential Information to written form and formally designate the material as Confidential Information. Confidential



Information shall not include information, technical data or know-how that: (i) is in the possession of the Recipient at the time of disclosure by the Company as demonstrated by the Recipient's files and records immediately prior to the time of disclosure; or (ii) becomes part of the public knowledge or literature prior to or after the time of disclosure, other than as a result of any improper inaction or action of the Recipient; or (iii) is approved by the Company, in writing, for release or public disclosure; or (iv) is required to be disclosed by law or by order of any court

2. **Confidential Materials.** For purposes of this Agreement, "Confidential Materials" shall mean all tangible materials containing Confidential Information including, without limitation, drawings, models, prototypes, schematics, written or printed documents, computer disks, tapes and compact discs (CD), and all other memory storage devices, whether readable by machine or directly by a user.

3. **Nondisclosure of Confidential Information.** The Recipient agrees to accept and has accepted the Confidential Information received in confidence, and further agrees that the Confidential Information belongs exclusively to the Company and that the Recipient has not and will not acquire any rights to use the Confidential Information of the Company for its own benefit, the benefit of a third party, or for any purpose other than that as noted by the Company in furthering the Relationship, including any Confidential Information that may be developed by the Recipient in connection with the business relationship or transaction entered into between the Company and the Recipient. The Recipient further agrees not to use any Confidential Information disclosed to it by the Company, at the time of disclosure or at any subsequent time, for its own use of for any purpose other than to discuss or assess ideas, suggestions or inventions related to the undertaking of the Relationship. The Recipient has limited and shall limit the disclosure of Confidential Information to only high-level employees, such as managers, inside general and patent counsel, high-level engineers, and outside counsel who have a duty to abide by this Agreement, for the sole purposes of determining whether the Recipient desires to enter into a relationship or transaction with the Company, or to perform the duties required of the relationship or transaction, and not for any other purpose. The Recipient has maintained and shall maintain appropriate written agreements with its employees, consultants, parent, subsidiaries, affiliates or related parties, who receive, or have access to, Confidential Information sufficient to enable it to comply with the terms of this Agreement. The Recipient agrees to promptly notify the Company in writing of any misuse, misappropriation, or other

disclosure of Confidential Information that is in violation of the terms of this Agreement which has come to the Recipient's attention.

4.  **Publicity.**  The Recipient shall not, without prior consent of the Company, disclose to any other party the fact that Confidential Information has been disclosed under this Agreement, that discussions or negotiations are taking place between the parties, or any of the terms conditions, status or other facts with respect thereto, including any terms of this Agreement, except as required by law and then only with prior written notice to the Company.

5.  **Return of Materials.**  Upon request by the Company, the Recipient will return to the Company, without making or taking copies or summaries thereof, all Confidential Materials and other documents pertaining to the business of the Company and the Relationship (apart from a copy of this Agreement) that have been provided by the Company to the Recipient in connection with the Relationship, accompanied by all copies of such documentation or certification of destruction of such copies, if any were made, within ten (10) calendar days after: (i) the Relationship has been terminated; or (ii) receiving a written request for such return of Confidential Materials and other documentation by the Company.

6.  **Patent or Copyright Infringement.**  Nothing in this agreement is intended to grant any rights to the Recipient with regard to any and all of the Company's intellectual property rights, including to any and all patents, patent applications, trademarks, and copyrights owned by or licensed to the Company, unless otherwise agreed upon previously in writing.

7.  **Term.** The commitments and obligations of each party as specified in this Agreement shall survive any termination of the Relationship between the parties for a period of two years after application of Section 5 above.

8.  **Successors and Assigns.**  This agreement shall be binding upon and for the benefits of the undersigned parties, their successors and assigns, provided that Confidential Information of Zidware, Inc., and may not be assigned without the prior written consent of Zidware, Inc. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

9.  **Breach and Damages.**  The Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from a material breach of this Agreement, such as the unauthorized use or disclosure of Confidential Information, and that the Company shall

be entitled, without waiving any other rights or remedies, to seek such injunctive and/or equitable relief as may be deemed appropriate by a court of competent jurisdiction, including injunctive relief against the threatened breach of this Agreement by the Recipient without the necessity of proving actual damages. Further, if Recipient is a purchaser or pre-purchaser of the Product, the Company may, at its sole discretion, cancel and terminate any purchase agreement between Company and Recipient in response to a breach by Recipient, and refund all deposit monies paid by Recipient to Company, with no further compensation due to Recipient.

10. **Governing Law.** This agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules, and shall be binding upon the Recipient in the United States and worldwide. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

11. **Remedies.** The Customer agrees that any violation or threatened violation will cause irreparable injury, both financial and strategic, to Zidware and in addition to any and all remedies that may be available, in law, in equity or otherwise, Zidware shall be entitled to injunctive relief against the threatened breach of this Agreement by the Customer without the necessity of proving actual damages.

12. **Scope.** This Agreement constitutes the entire understanding and agreement of the parties regarding the subject matter hereof and supersedes any prior oral or written understandings or agreements and may not be modified, except in writing signed by both parties. No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion. This Agreement shall be construed in accordance with and be governed by the laws of the State of Illinois, without reference to Illinois' choice of law rules. Sole and exclusive venue for any action, lawsuit, or litigation arising out of this agreement shall be in a state or Federal Court located in the State of Illinois.

13. **Severability.** If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full effect. Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to duration, scope or subject matter thereof,

such obligations shall be deemed and construed to be reduced to the maximum scope, duration or subject matter allowable by law.

14. **Counterparts.** This agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this agreement, but all the counterparts shall together constitute the same agreement. No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, this Non-Disclosure Agreement is executed as of the date first above written:

Zidware, Inc.                        *Trevor Graw*
722 Chestnut Court                          Recipient (print)
Bartlett, IL  60103

By: _____      By: _____
    John A. Popadiuk, Jr.              Name: *Trevor Graw*
    President                          Title:

Rev4.28.12

## <u>PURCHASE AGREEMENT — CONFIDENTIAL</u>



BHZA – Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:    Trevor Graw (BHZA#43)
164 Royal Oak Manor NW
Calgary AB T3G 0A6
CANADA

 

# READ ME!

 **SIGN & RETURN AGREEMENT - NDA**
FRONT AND BACK PAGES OK!

 **NOTE YOUR SERIAL NUMBER!**

 **SEND BACK YOUR PAYMENT**
$3000 TOTAL ($750 DEPOSIT + $2250 P1)

 **GET ON THE BHZA DEV BLOG!**
BENHECKPINBALL.POSTEROUS.COM



VISIT US TOO!
IN OUR CHICAGO STUDIO

**ZIDWARE INC**
**722 CHESTNUT COURT**
**BARTLETT IL 60103**



**QUESTIONS@ZIDWARE.COM**
**JOHN › 224-532-0639**

bhza_readme_new.pdf



3oz     1.063"d

May 1, 2012

Welcome to "Ben Heck's Zombie Adventureland™"

Pinball is back! Wow! You have made the choice to be part of a unique experience to keep this part of Americana strong by supporting new game creation. Pinball has a firm tradition in Chicago as a hand built marvel that touches many disciplines, senses or emotions. Being made of painted wood, with glamorous hand drawn art, electric gadgets immersed within wonderful kinetic illuminated parts, pinball has been manufactured in similar fashion since the 1930's. The mystical 1-1/16" chrome steel ball is still pinball's focus of abstract appeal as is the functional scale and mechanical play. It has not changed much really, but still captivates many.

My pinball career has spanned from humble beginnings at Bally Manufacturing and then moving onto WMS creating powerful games for Williams. I have been lucky to work alongside great designers on the way who have all influenced my working style. This hyper-distilled pinball insight and creative spirit has allowed me to lead talented teams inventing classic games. Being a vintage pinball collector affords a wide understanding of past innovations, sensibilities and pinball curios that have been lost and need to be re-introduced in games again.

The selection of a theme is the first huge step in thinking about what to actually design. In this case I have always wanted to make a amusement park type game, a pinball tradition, coupled with the retro 1960's, atomic power, neon, coffee, girls and of course all flavors of zombies. This is how we make a really great "original" theme for pinball. What the heck?

This is the jumping off point that I begin to work to build pinball in a style, vision and technique that I think is the best. Working with new groups of young designers like Team Heck, gives pinball a new bolt of passion it needs to move into the future. Building custom games in studio is a rewarding, but slow process and not for everyone. Pinball has always been really challenging to make, as you will see, but eventually comes together into a beautiful game, a work of playable art.

Welcome!

*John Popadiuk*

John A. Popadiuk, Jr
Chicago, IL USA
(224) 532-0639

**PINBALLINVENTOR.ORG/BENHECK**

# Reinventing Pinball

• from the desk of JOHN A POPADIUK JR

# The Toronto-Dominion Bank

No. —9194260

0017 — 09194260

Date
December 31, 2012

Pay to the
Order of:        ZIZMARE INC.

CANADA TRUST **3,000.00** U.S. $

United States Dollars

To    Wells Fargo Bank, N.A.
115 Hospital Drive
Van Wert, OH 45891

In reimbursement charge account of The Toronto-Dominion Bank, Toronto
Authorized signature required for amounts over U.S. $5,000.00

Authorized Officer
Countersigned

Number

THE BACK OF THIS DOCUMENT CONTAINS A TELELOGO WATERMARK • DOCUMENT VOID IF MISSING





WELLS
FARGO

## Wells Fargo Online®

| Accounts | Bill Pay | Transfers | Brokerage | Account Services | Messages |

| Bill Pay Overview | Payments | Payees | eBills | Reports | Notices | User Pro |

# Reports

Report Title

Zidware ▼    **Generate Report**    Customize Reports

**Report: Zidware (01/01/2008 – 04/05/2015)**

| Payment Sent | Payee | Amount | Payment Account | Status |
|---|---|---|---|---|
| 03/15/2012 | ZIDWARE INC. | $750.00 | ▇▇▇▇▇ Checking | Paid |
| 06/07/2012 | ZIDWARE INC.. | $2,250.00 | Checking | Paid |
| 03/04/2013 | ZIDWARE INC. | $1,500.00 | Checking | Paid |
| 07/22/2013 | ZIDWARE INC.. | $2,000.00 | ▇▇▇▇▇ Checking | Paid |
| 11/13/2013 | ZIDWARE INC. | $7,600.00 | ▇▇▇▇▇ Checking | Paid |



EXHIBIT
19

# Purchase Order



## Buyer

Justin Kelly
4417 Winje Dr
Antelope, CA
95843

(1) Magic Girl™ Standard Custom Pinball                    $15,995. (USD)

BASIC GAME DESCRIPTION

- USA Made Arcade Pinball Machine - 110v - 60Hz
- Custom designed by John A. Popadiuk, Jr.
- Comes Boxed and Ready to Ship
- 1 Year Warranty - Parts & Labor

DEPOSIT DUE TODAY (10/28)
Due 1/30/2014                                              $7595.
Due 3/30/2014                                              $4500.
                                                          $3900.

*Sales Tax and Shipping Not Included
*Subject to Change
* 5% Discount for Full Payment



ZIDWARE INC
39 SANGRA COURT
STREAMWOOD IL 60107

PINBALLINVENTOR.ORG

## PURCHASE AGREEMENT — CONFIDENTIAL



BHZA - Custom Pinball Machine Design

Date    May 1, 2012

Prepared by:    Zidware Inc. (the Company)

John A. Popadiuk, Jr., President

c/o 722 Chestnut Court

Bartlett, IL 60103

(224) 532-0639

pop@zidware.com

Prepared for:

Justin Kelly (BHZA#27)
4417 Winje Dr
Antelope, CA 95843
United States

### Agreement

This Purchase Agreement was prepared to describe certain features or aspects of the Ben Heck's Zombie Adventureland™ pinball machine project, and to specify certain terms and conditions relating to the purchase of the game from Zidware, Inc. (the Company) by the Purchaser. By signing this agreement, you, the Purchaser, acknowledge the terms and conditions contained herein and agree to abide by them.

### Project Overview

The project involves the creation of a full-sized custom pinball machine called Ben Heck's Zombie Adventureland™, including both a Limited Edition and a Special Cointaker Edition (collectively, "BHZA") made in a 1990's style of form, fit and function. The pinball machine will have gameplay that will be simple, fun and built with a combination of new ideas and components re-styled by the clever hand of professional pinball designer, John A. Popadiuk, Jr., with the added creativity and hackspertise of Ben Heckendorn.

### The Pinball Team

John A. Popadiuk, Jr. is a celebrated pinball designer, vintage pinball collector, mobile software developer and bagatelle historian with many years immersed in the world of pinball. Some of his designs include: Bally's Theatre of Magic, Marvel Heroes vs. Villains, World Cup Soccer, Star Wars: Episode I, and Cirqus Voltaire.

John has a thorough knowledge of pin-game mechanics, construction, traditional pinball ideals and team building philosophies. His retro style and hands-on approach to creation allows for a unique merging of the old and new to be explored and incorporated into the BHZA pinball game alongside fellow modding genius and pin-geek Ben Heck and other talented designers, artists and creative engineers required to create a quality custom. pinball.

### The Timeline

Ben Heck's Zombie Adventureland™ pinball will follow a normal pinball development schedule of approximately 14 months at a minimum. You are invited to visit the design team in the studio, when appropriate, to view the progress and see the current full-size hand-made pinball mockups, mechanisms, art, and designs that have been created to date. The Company will use its reasonable best efforts to complete this custom project in a reasonable amount of time as stated herein. Any compressions, delays or extensions to the planned schedule, will be communicated in a timely manner.

### Art Direction & Theme

The Ben Heck's Zombie Adventureland™ pinball machine will have a classic pinball look and play similar to the pinball machines created in the 1990s by John A. Popadiuk, Jr., with specific emphasis on hip atomic 1960's retro zombie amusement park theme. The online trailer was created to capture the "verve" or general game concept.

### Pinball Game Features

The Ben Heck's Zombie Adventureland™ pinball machine will have an innovative feature list presented in a ground-up pinball design, including many never-before-seen pinball designs. Some of the basic features planned to be included at this time are located here on the website:

**http://pinballinventor.org/benheck/**

Other details will be finalized as the game design process progresses, and all such details are subject to modification or change at the sole discretion of the Company.

© 2012 - Zidware, Inc. – CONFIDENTIAL

**Construction Techniques and Components**

This custom pinball machine will employ newly-created part designs, OEM remanufactured parts, and construction materials and methods similar to those used in 1990s pinball machines. This custom game will use hand-built construction techniques, performed or supervised by the design team similar to those that were employed in a typical 1990s pinball factory setting. Dedicated proprietary or innovative components may be designed and manufactured specifically for the BHZA pinball machine based on specifications to be determined by the Company.

**Usage and Operation**

The Ben Heck's Zombie Adventureland™ pinball machine is designed for HOME USE ONLY and is NOT intended for rigorous commercial installation, tournaments, or public display and play. The BHZA pinball machine will be setup for 110-120 V, 60 Hz electrical operation for the USA, and 220 V, 50Hz settings are planned at this time.

**Basic Development Cost Schedule**

The initial pre-order cost of a custom-designed limited-edition BHZA pinball machine (FOB Chicago IL) is $9,995.00 (USD). All taxes, shipping, customs certifications, or delivery charges will be additional. The price for the Do-It-Yourself ("DIY") option for any BHZA edition is $10,995.00 (USD).

You, the Purchaser, must send back—or deliver personally—this signed Purchase Agreement by June 30, 2012, along with the second refundable deposit of $2,250.00. This will reserve your serial number and get the custom pinball development and production rolling. This deposit (along with the initial $750.00 deposit, or $3,000.00 in total) will be fully refundable within 45 days of receipt of the second deposit by the Company, if you so desire.

The remaining balance due of $6,995 (or $7,995 for the DIY option) will follow in easy-stepped payments during the development cycle. All scheduled payments (except for the second refundable deposit of $2,250.00), will be spread out over the expected development cycle and must be submitted to the Company by the Purchaser within 45 days of their indicated due dates as outlined below. Payment in full will be due on or before the shipment date of your machine.

The basic payment schedule with certain milestones, subject to modification as noted above, is as follows:

| DATE | ITEM/MILESTONE | AMOUNT |
|---|---|---|
| 3/1/2012 | Pre-Order Deposit (100% refundable) | $750 |
| 5/1/2012 | Owner Packages Mailed | |
| 6/1/2012 | Installment One (100% refundable) | $2,250 |
| 11/1/2012 | Installment Two Design Phase | $1,250 |
| 12/1/2012 | Game Review & Refinement | |
| 3/1/2013 | Installment Three Engineering Phase | $2,250 |
| 5/1/2013 | Final Game Evaluation Phase | |
| 6/1/2013 | Prototype Start Estimate | $3,000 |
| 9/1/2013 | Build Node Phase | $495 |
| 10/1/2013 | Build Node Phase 2 | |
| 11/1/2013 | DIY Surcharge (or due on Delivery if earlier) | $1,000 |

**TOTAL:** $9,995.00 (or $10,995.00 for the DIY Option)

© 2012 - Zidware, Inc. – CONFIDENTIAL

John A. Popadiuk, Jr. and the Purchaser both agree to act honestly and with good faith in all respects and matters regarding the design, development, and sale/purchase of the BHZA pinball machine, including: communication, quality, timeliness, and overall transparency, as set forth in this Purchase Agreement.

### Production Run

The production run of the Ben Heck's Zombie Adventureland™ pinball machine will be limited to a total of 99 numbered Limited Editions and 25 numbered Special Cointaker Editions that will be offered for sale by the Company to the public.  The games will be constructed in nodes of a minimum 25 games at a time.

### Non-Disclosure

An **optional** Non-Disclosure Agreement ("NDA") accompanies this Purchase Agreement.  Purchasers who sign this NDA and return it along with this signed Purchase Agreement and second refundable deposit will be granted limited access to the Company's internal design process. You will be able to visit the Company's design studio, see the various stages of the project, and work with the design team as available.  **Please note that Purchasers who do not sign the NDA will not be granted this "behind-the-scenes" access and will only receive general information regarding progress, along with other details as they are revealed to the general public.**  The Company may, at its sole discretion, allow individual Purchasers to sign the NDA at a future date and gain this access to the development information, if they choose not sign and return the NDA along with this Purchase Agreement.

**For Purchasers who sign the NDA and submit it to the Company:** Please note that the Ben Heck's Zombie Adventureland™ pinball machine, its features, design, and associated intellectual property are to be held in strict confidence and not to be disclosed or discussed in any public forum, blog or internet bulletin board, in accordance with the terms and conditions of the Non-Disclosure Agreement ("NDA") that accompanies this Purchase Agreement.  Certain information expressly identified as being for public dissemination may be provided by the Company at its sole discretion.  The Purchaser acknowledges that all material and information provided, disclosed, or shared by John A. Popadiuk, Jr. and the Company is "Confidential Information" as specified in the accompanying NDA.  The Purchaser agrees to abide by all terms and conditions of the Agreements.  The Purchaser further agrees not to disclose this Confidential Information to any third party (including other Purchasers who have not signed the NDA) or use it for any purpose unrelated to this Purchase Agreement without prior express written permission of the Company.  Purchasers who breach any of the terms and conditions of the Agreements will forfeit their serial number and this Purchase Agreement will be canceled (although the terms and conditions of the NDA will continue to remain in effect).  The Company may, at its reasonable discretion, retain some or all of the cumulative monetary deposits made by the breaching party as of the date of the breach.

### Customization

The Ben Heck's Zombie Adventureland™ pinball machines will be manufactured as special custom-made games, and not mass-produced. You, the Purchaser, will have an opportunity in the design process to create, select and/or change certain features, decorative parts, mechanics and/or artwork to make your game unique. These options will be presented to you by the Company as the development schedule proceeds.  John Popadiuk and Ben Heck also encourage you, the Purchaser, to suggest options and take part in the design process (subject to receipt of a signed NDA as described above).

### Development Collectibles

The game development process creates an extraordinary amount of collateral sketches, designs, paperwork, models, test fixtures, art, samples and playfield mechanisms. These items will be made available at the end of the project to buyers at the discretion of the Company.

© 2012 – Zidware, Inc. – CONFIDENTIAL